Case No. 14-11795-AA

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT
_____

### MALIBU MEDIA, LLC

Plaintiff-Appellee,

v.

### LEO PELIZZO

Defendant-Appellant.

_____

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
_____

## APPELLEE'S SUPPLEMENTAL APPENDIX
_____

M. Keith Lipscomb (429554)
Emilie Kennedy (92808)
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd., Suite 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
klipscomb@lebfirm.com
ekennedy@lebfirm.com
*Counsel for Appellee*

CASE NO. 14-11795-AA

SUPPLEMENTAL APPENDIX INDEX

| Description of Item | District Ct. Document No. |
|---|---|

### VOLUME I

| | |
|---|---|
| Defendant's Motion to Dismiss Plaintiff's Complaint (09/21/2012) | Doc. 7 |
| Order Denying Plaintiff's Motion to Dismiss (12/21/2012) | Doc. 16 |
| Joint Motion to Enlarge the Time Within Which Defendant has to Respond to Plaintiff's Complaint (12/21/2012) | Doc. 17 |
| Stipulated Motion to Enlarge all Pending Deadlines (02/19/2013) | Doc. 22 |
| Plaintiff's Motion to Dismiss the Case with Prejudice (04/26/2013) | Doc. 37 |
| Defendant's Verified Motion for Attorneys' Fees and Costs Against Plaintiff and Lipscomb, Eisenberg & Baker, P.L. (07/01/2013) | Doc. 41 |
| Plaintiff's Memorandum in Opposition to Defendant's Motion for Attorneys' Fees (07/24/2013) | Doc. 47 |
| Exhibit A – Declaration of Colette Field | Doc. 47-1 |
| Exhibit B – Audio Files | Doc. 47-2 |
| Exhibit C – Declaration of Patrick Paige | Doc. 47-3 |
| Exhibit D – Declaration of Tobias Fieser | Doc. 47-4 |

| **Description of Item** | **District Ct. Document No.** |
|---|---|
| Exhibit E – Declaration of Michael Patzer | Doc. 47-5 |
| Exhibit F – Declaration of M. Keith Lipscomb, Esq. | Doc. 47-6 |
| Exhibit G – Deposition of Laurie M. Murphy Excerpt | Doc. 47-7 |
| Exhibit H – Hotwire Information | Doc. 47-8 |
| Exhibit I – Order Granting Motion for Internet Service Providers to Disclose Identifying Information of Unknown Defendants | Doc. 47-9 |
| Exhibit J – Deposition of Laurie M. Murphy Excerpt | Doc. 47-10 |
| Exhibit L – Email from Keith Lipscomb to Francisco Ferreiro (10/11/2012) | Doc. 47-12 |
| Exhibit M – Email from Keith Lipscomb to Francisco Ferreiro (10/23/2012) | Doc. 47-13 |
| Exhibit N – Email from Francisco Ferreiro to Keith Lipscomb (3/21/2013) | Doc. 47-14 |
| Exhibit O – Email from Keith Lipscomb to Francisco Ferreiro (4/11/2013) | Doc. 47-15 |
| Exhibit P – Email from Francisco Ferreiro to Keith Lipscomb (4/11/2013) | Doc. 47-16 |
| Exhibit Q – Email from Francisco Ferreiro to Keith Lipscomb (4/8/2013) | Doc. 47-17 |
| Exhibit R – Email from Francisco Ferreiro to Emilie Kennedy (4/17/2013) | Doc. 47-18 |
| Reply in Support of Defendant's Verified Motion for Attorney's Fees and Costs (08/05/2013) | Doc. 49 |

| **Description of Item** | **District Ct. Document No.** |
|---|---|
| Plaintiff's Motion for Leave to File Sur-Reply (08/13/2013)............................................................... | Doc. 50 |
| Exhibit A – Plaintiff's Sur-Reply in Further Support of its Opposition to Defendant's Motion for Attorneys' Fees ................................................................. | Doc. 50-1 |
| Plaintiff's Sur-Reply in Further Support of its Opposition to Defendant's Motion for Attorneys' Fees (10/24/2013)............................................................... | Doc. 52 |
| Certificate of Service | |

# TAB 7

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION
### Case No. 1:12-CV-22768-CIV-SEITZ/SIMONTON

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LEO PELIZZO, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

### DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, Leo Pelizzo ("Defendant"), by and through undersigned counsel and pursuant to Fed.R.Civ.P 12(b)(6), hereby moves to dismiss Malibu Media, LLC's ("Plaintiff's") Complaint in its entirety. In support thereof, Defendant states as follows:

### I.    INTRODUCTION.

Plaintiff's Complaint alleges that Plaintiff's materials were reproduced and distributed through a series of BitTorrent transactions conducted using a computer accessing an Internet Protocol ("IP") address assigned to the Defendant.  These claims hinge upon Plaintiff's speculative conclusion that "[a]s the subscriber of the Internet service being used to distribute Plaintiff's copyrighted movies, Defendant is the *most likely* infringer." [Complaint ¶23].  This conclusion is prefaced exclusively on a boilerplate declaration executed by the employee of "a company organized and existing under the laws of Germany." [Complaint, Exhibit C at ¶4] (hereinafter "the Feiser Declaration".)  The Feiser Declaration, however, provides no information or details whatsoever as to how Plaintiff concluded that Defendant is the "subscriber of the Internet Service."  In fact, neither the Feiser Declaration nor Plaintiff's Complaint indicate that *any* Internet Service Provider was ever contacted prior to the Plaintiff's decision to file a highly

embarrassing lawsuit against a 61-year old, married man who resides and works in Venezuela. See Affidavit of Leo Pelizzo (hereinafter "Pelizzo Affidavit")  ¶¶ 3 and 16.  This is particularly unnerving as the IP address associated with Defendant's internet account does not, in fact, match the IP address specified in Plaintiff's Complaint.  Compare Pelizzo Affidavit at ¶17 and corresponding Exhibit B with [Complaint, Exhibit B].   As discussed below, dismissal of this action is warranted as Plaintiff's allegations fail to include any factual basis connecting the Defendant with the IP address at issue and, therefore, do not state a plausible claim for relief against Defendant. See, e.g., Mamani v. Berzaín, 654 F.3d 1148, 1153 (11th Cir. 2011)(noting that "[s]tating a plausible claim for relief requires pleading 'factual content that allows the court to draw the  reasonable inference that the defendant is liable for the misconduct alleged' . . . and requires 'more than a sheer possibility that a defendant has acted unlawfully.'")

## II.   **LEGAL STANDARD.**

A complaint may be dismissed for failure to state a claim if the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory. See, e.g., Aruanno v. Martin County Sheriff, 343 Fed.Appx. 535, 536 (11th Cir. 2009) (stating that dismissal is warranted under Rule 12(b)(6) when a plaintiff "makes clearly baseless allegations or relies on legal theories that are indisputably meritless.") Generally, a court must accept the plaintiff's allegations as true and construe the complaint in the light most favorable to the plaintiff. See, e.g., United States v. Pemco Aeroplex, Inc., 195 F.3d 1234, 1236 (11th Cir. 1999).  However, if allegations are more conclusory than factual, then the court does not have to assume their truth. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)(noting that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (noting that a complaint providing "labels and conclusions" cannot survive a Rule 12(b)(6) motion to dismiss); Mamani,

2

654 F.3d at 1153 (stating that "[l]egal conclusions without adequate factual support are entitled to no assumption of truth.")  While Rule 8's pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Consequently, to survive a motion for dismissal, a "complaint's allegations must plausibly suggest that the plaintiff has a right to relief [and raise] the possibility above a 'speculative level'." James River Ins. Co. v. Ground Down Engineering Inc., 540 F.3d 1270, 1274 (11th Cir. 2008); Mamani, 654 F.3d at 1153 (noting that "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'")

## III.  ARGUMENT.

### A.  Background.

Determining whether a complaint states a plausible claim is a context-specific inquiry requiring a court to draw on its experience and common sense. Twombly, 550 U.S. at 556. Recent decisions have expressed strong concerns about the coercive nature of copyright claims prefaced upon purported rights in pornographic films.  Specifically, the shame associated with merely being named as a defendant in such actions "gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading [pornography]." Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239 at 242 (S.D.N.Y. 2012). Accordingly, courts are increasingly refusing to "facilitate such coercive settlements by casting such an unnecessarily wide net [around defendants.]" See, e.g., Next Phase Distrib., Inc. v. Does 1-27, 2012 U.S. Dist. LEXIS 107648 at *4 (S.D.N.Y. July 31, 2012); (also questioning the use of judicial resources to promote the creation pornographic material); see also Liberty Media

Holdings, LLC v. Swarm Sharing Hash File and Does 1-38, 821 F. Supp. 2d 444, 447 n.2 (D. Mass. 2011)(noting that it is "unsettled in many circuits, whether pornography is in fact entitled to protection against copyright infringement.")

Further, even in cases where an IP Address has been correctly traced to an individual, courts have acknowledged the disconnect between establishing the subscriber of an IP Address and the identify of a copyright infringer. See Digital Sin, Inc., 279 F.R.D. at 242 ("Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material.") This is especially so given the widespread use of wireless internet routers.  See VPR Internationale v. Does 1-1017, 2011 U.S. Dist. LEXIS 64656 (C.D. Ill. Apr. 29, 2011) (noting that "[t]he infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.") As the Plaintiff's Complaint includes no allegation that any ISP has traced the IP Address at issue to the Defendant, the plausibility of Defendant's alleged connection to the infringing acts is even more attenuated here.

Plaintiff's failure to include any factual support for its allegations appears to be part of a calculated strategy to expend the minimum effort needed to shame an individual into paying out a settlement.  This is particularly disconcerting as the Defendant is a 61 year old, married man who, as it turns out, was in Venezuela from January 8, 2012 to August 20, 2012. See Pelizzo Affidavit, ¶5 and corresponding Exhibit.  To emphasize, Plaintiff's Complaint alleges that the IP Address at issue was traced to a physical address in Miami, Florida and that the infringing acts occurred between January 3, 2012 and May 29, 2012. See Exhibit B to Complaint.  Thus, the Defendant was abroad for all but a few days of this relevant time period.  Further, the "physical address" referenced in the Complaint is a 700-unit building with a condominium association that handles all communications with and payments to Internet Service Providers on behalf of

individual unit owners. See Pelizzo Affidavit, ¶¶6, 7-12.  Plaintiff's Complaint, however, provides no information whatsoever clarifying how Defendant's unit was specifically associated with the IP address at issue.  Given the haphazard nature of Plaintiff's allegations, it should come as no surprise that the IP Address identified in Plaintiff's Complaint is not, in fact, the Defendant's IP Address.  Pelizzo Affidavit ¶17.

### B. Plaintiff's Failure to Properly State a Claim Against Defendant

Dismissal of this action is warranted as Plaintiff has failed to plead any factual content allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Mamani, 654 F.3d at 1153 (noting that "this obligation requires 'more than a sheer possibility that a defendant has acted unlawfully.'")  Specifically, Plaintiff's Complaint consists of a series of conclusory statements arranged to support the already speculative conclusion that "Defendant is the most likely infringer." [Complaint ¶23.]  As noted above, these claims find sole support in a boilerplate declaration that does not specifically identify the Defendant, the Defendant's Internet Service Provider ("ISP"), or even the IP address at issue.  While it generally describes the procedure for matching an IP address with an individual, the Feiser Declaration includes no assertion that such steps were taken in this matter. See Feiser Declaration at ¶22.  For example, despite acknowledging that "ISPs keep track of the IP addresses assigned to their subscribers", the Feiser Declaration does not state that any ISP was ever contacted regarding this matter.  In short, the Feiser Declaration provides no basis whatsoever to support the Plaintiff's conclusion that Defendant is the "subscriber of the IP address" used in connection with committing the allegedly infringing acts.

The allegations within Plaintiff's Complaint are equally vague.  While Plaintiff alleges that the IP address at issue "was traced to a physical address located within this District", the only physical address that the Defendant has occupied within this district is an investment

5

property located in a condominium building that "consists of nearly 700 total units." <u>See</u> Pelizzo Affidavit at ¶¶7, 8, and 14.  As noted above, if Plaintiff had bothered to investigate the facts before filing suit based on the unsupported conclusion that "Defendant is the most likely infringer", it would have learned that Defendant Leo Pelizzo was in Venezuela from January 8, 2012 to August 20, 2012 and, therefore, was out of the country for the *vast* majority of the time period that the alleged infringement occurred.  <u>See</u> Pelizzo Affidavit, ¶5.  Plaintiff would also have discovered that Leo Pelizzo is a 61 year old, married man who, prior to the filing of this lawsuit, had never used or even heard of "BitTorrent".  <u>See</u> Pelizzo Affidavit, ¶6 and 12.

In fact, the "physical address" apparently referenced in Plaintiff's Complaint is the 700-unit Quantum On The Bay Condo North.  <u>See</u> Pelizzo Affidavit, ¶6.  This building's condominium association ("the Association") handles all communications with and payments to Internet Service Providers on behalf of each unit and it is the Association, and not the Defendant, that subscribes to the Internet Service on behalf of unit owners.  <u>See</u> Pelizzo Affidavit, ¶¶6, 7-12. Thus, any such investigation by the Plaintiff would have revealed what Defendant was able to discern after contacting the internet service provider referenced in Plaintiff's Complaint, namely, that Defendant's IP address does not match the IP address specified in Plaintiff's Complaint. <u>See</u> Pelizzo Affidavit ¶17 and corresponding Exhibit B.  Given the foregoing, dismissal under Rule 12(b)(6) is appropriate, as Plaintiff's key allegations are conclusory and fail to plausibly suggest that the Plaintiff has a right to relief.

## IV.  <u>CONCLUSION</u>.

As discussed above, Plaintiff has failed to provide any factual basis permitting this Court to draw the reasonable inference that Defendant is liable for the allegedly infringing acts.  For these reasons, Plaintiff's Complaint should be dismissed for failure to state a cause of action and for failure to state a claim upon which relief can be granted.  Defendant further requests that the

Court retain jurisdiction as to the issue of awarding attorneys fees and costs, including imposition of sanctions under Fed.R.Civ.P. 11 and other bases.

WHEREFORE, Defendant respectfully requests that the Court grant the instant motion and such other and further relief as is just and proper.

Respectfully submitted,

Dated: September 20, 2012                    By:s/Francisco J. Ferreiro
        Miami, Florida                          John Cyril Malloy, III
                                                Florida Bar No. 964,220
                                                jcmalloy@malloylaw.com
                                                Francisco J. Ferreiro
                                                Florida Bar No. 37,464
                                                fferreiro@malloylaw.com
                                                MALLOY & MALLOY, P.A.
                                                2800 S.W. Third Avenue
                                                Miami, Florida  33129
                                                Telephone (305) 858-8000
                                                Facsimile (305) 858-0008

                                                Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

                                            s/ Francisco J. Ferreiro
                                               Francisco J. Ferreiro
                                               Florida Bar No. 37,464

<u>**SERVICE LIST**</u>

**Case No. 1:12-CV-22768-CIV-SEITZ/SIMONTON**

M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229


*Counsel for Plaintiff*
Notices of Electronic Filing
Generated by CM/ECF

# TAB 16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 12-22768-CIV-SEITZ/SIMONTON

MALIBU MEDIA, LLC,
              Plaintiff,

vs.

LEO PELIZZO,
              Defendant.
_____/

## ORDER DENYING PLAINTIFF'S MOTION TO DISMISS

THIS MATTER comes before the Court on Defendant's Motion to Dismiss the

Complaint for Failure to State a Claim [DE-7]. This is an action under federal copyright law

wherein plaintiff Mailibu Media LLC ("Plaintiff") alleges that defendant Leo Pelizzo

("Defendant") improperly copied Plaintiff's copyrighted movies and distributed them via the

internet without Plaintiff's permission. Defendant disputes the allegations and moves to dismiss

Plaintiff's single-count Complaint on the grounds that it is inadequately pled. Plaintiff has

responded to the Motion [DE-13] and Defendant has replied [DE-14]. Having carefully

reviewed the allegations in the Complaint and the applicable authorities, the Court will deny the

Motion because the Complaint adequately states a claim for copyright infringement.

I.      **Factual Allegations**[1]

        A.      <u>Background</u>

        Plaintiff, Malibu Media, LLC, is the owner of the copyrights *sub judice*, each of which

_____

[1] Unless otherwise noted, the factual background is derived from Plaintiff's Complaint
[DE-1] and the exhibits accompanying it, as the Court must accept all factual allegations as true
and construe them in the light most favorable to the Plaintiff. *See American Dental Ass 'n v.
Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010).

covers an original, ostensibly pornographic, work of authorship complete with a Copyright Registration Number.  (*See* Compl. ¶¶19, 28.)  Defendant is purportedly a Florida resident who, according to Internet Service Provider Hotwire Communications, was assigned Internet Protocol address ("IP address") 24.238.22.207.[2]  (Compl. ¶¶8-9, Ex. A.)  Between January 3, 2012 and May 29, 2012, Defendant copied and distributed, via the BitTorrent protocol, the constituent elements of each of the films identified in Exhibits A and B to the Complaint without permission.  (Compl. ¶¶29-30, Ex. B.)

On July 27, 2012, Plaintiff brought this action alleging a single count of copyright infringement.  Defendant moves to dismiss the Complaint, arguing that Plaintiff has failed to adequately state a claim for infringement principally because the Complaint sets forth an insufficient basis for identifying Plaintiff as the infringer responsible for using the device assigned IP address 24.238.22.207 during the relevant period.

   B.   BitTorrent Protocol

BitTorrent is a modern "peer-to-peer" file sharing tool used for distributing data via the internet.  Unlike traditional file transfer protocols that involve a central server and the transfer of whole files between users, the BitTorrent protocol provides a decentralized method of distributing data.  BitTorrent breaks an individual file into small pieces that individual users then distribute among themselves.  This facilitates faster file transfers than traditional file sharing software that requires users to transfer whole files from a central server.  (*See* Compl. ¶¶10-13.)

The BitTorrent protocol operates as follows.  The process begins with one user, the

---

[2] An IP address is a unique number automatically assigned to devices connected to the internet, e.g., a computer, by an Internet Service Provider ("ISP").  (Decl. of Tobias Fieser ¶7) (Compl. Ex. C).

"seed" who makes the file available via a BitTorrent client. *Liberty Media Holdings v. Bittorrent Swarm et al.*, 277 F.R.D. 672, 674 (S.D.Fla. 201 1). The seed then creates a "torrent" file that contains a road map to the IP addresses of other users who are sharing the file. *Id.* Each piece of the torrent file is assigned a unique cryptographic hash value. (Compl. ¶¶14, 18.) That value acts as a "unique digital fingerprint" that ensures a piece of data belongs in a particular torrent file. (Compl. ¶15.)

Other users, or "peers," then download the torrent file, which allows them to download from other peers who possess pieces of the file. *Id.* All of these peers are part of the same "swarm" because they are downloading pieces of the same file. *Liberty Media Holdings v. Swarm Sharing Hash File*, 821 F. Supp. 2d 444, 448 (D. Mass. 2011). (*See also* Compl. ¶11.) After downloading a piece of the file, each user automatically becomes a source for this piece. The various members of the swarm continue to exchange pieces with one another. *Id.* Finally, "once a peer has accumulated enough individual pieces of the file, the software allows the peer to reassemble the aggregate file." *Liberty Media Holdings*, 277 F.R.D. at 674.

C.     Plaintiff's Investigation to Identify the Alleged Infringer

Plaintiff alleges that Defendant, without Plaintiff's authorization, intentionally copied and distributed, in a piecemeal fashion, the works listed in Exhibits A and B. (Compl. ¶29.) Defendant purportedly did so via the BitTorrent protocol on various dates between January 23, 2012 and May 5, 2012, although the alleged infringement is not necessarily limited to that time period.

To determine who allegedly infringed its copyrights, Plaintiff retained investigator Tobias Fieser via his employer, IPP Limited ("IPP"). According to a declaration submitted by Mr.

3

Fieser, Defendant's IP address was discovered using "INTERNATIONAL IPTRACKER v1.2.1

and related technology" that enables "the scanning of peer-to-peer networks for the presence of

infringing transactions."[3]  (Fieser Decl. ¶14.)  The tables contained in Exhibits A and B set forth

the "hit dates" (and times) when a device using IP address 24.238.22.207 connected with the

investigator's server "and transmitted a full copy, or portion thereof, of a digital media [f]ile

identified by the Unique Hash Numbers that correlate to [the copyrighted works at issue]."[4]

(Fieser Decl. ¶19; Compl. ¶16.)  Based on these hash values and a side-by-side viewing of the

downloaded works and original works, the investigator concluded that each piece of data

received from IP address 24.238.22.207 was part of a file containing a copy of a movie protected

by a copyright at issue here.  (Compl. ¶20.)

   Using the IP address "plus the date and time of the detected and documented infringing

activity," the ISP can use its subscriber log to identify the name, address, billing address, email

---

[3] Notably, these software tools identify a suspected infringer only by IP address, and do not provide identifying information such as names, street addresses, telephone numbers, or email addresses.  Apparently, Plaintiff used the IP address as the basis for a subpoena compelling Defendant's ISP to provide the identifying information via a Pure Bill of Discovery proceeding in Florida state court.  (Opp'n at 2.)  In reply, Defendant contends that this use of Florida discovery "lowered the bar for obtaining pre-trial information."  (Reply at 5.)  Without citing any authority, Defendant suggests that "the legality of using a state court decision to obtain discovery for a claim over which Federal courts have exclusive jurisdiction is a question that merits additional legal analysis."  *Id.*  Since Defendant's argument on this point ends there, so does the Court's analysis of it.

[4] Although Plaintiff's Opposition brief cites Exhibit A for the proposition that the investigator recorded 398 instances of a device with IP address 24.238.22.207 distributing twenty different copyrighted films, that exhibit in fact identifies only 14 films and does not provide an IP address.  A supplemental exhibit [DE-13-3] accompanying Plaintiff's opposition brief indicates that infringement of these films occurred after this case was filed.  Exhibit B is more comprehensive and notes that IP address, but neither that exhibit nor the investigator's declaration identifies 398 instances.  The Court expects counsel to make sure that its representations to the Court are accurate and supported by the record.

address and phone number of the subscriber using that IP address at the relevant time(s).  (Fieser Decl. ¶22.)  Neither the Complaint nor the investigator's declaration specifies how Plaintiff identified Mr. Pelizzo as an infringer connected at the relevant times with IP address 24.238.22.207, however.

## II.   Legal Standard: Motion To Dismiss Pursuant to Rule 12(b)(6)

The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint.  The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted.  It should be read alongside Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Once a court "identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  A complaint can only survive a 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true."  *Twombly*, 550 U.S. at 555.  However, a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Twombly*, 550 U.S. at 556.

**III.    Discussion**

      A.    <u>The Complaint Sufficiently Alleges a Plausible Link Between Defendant and the IP Address Associated With Infringement</u>

To establish copyright infringement, Plaintiff must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *McCaskill v. Ray*, 279 Fed. Appx. 913, 916 (11th Cir. 2008); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1540 (11th Cir. 1996); *TracFone Wireless, Inc. v. Technopark Co., Ltd.*, 281 F.R.D. 683, 688 (S.D. Fla. 2012). Defendant does not contend that the Complaint fails to allege these elements. Rather, Defendant argues that the allegations are too speculative and conclusory to adequately allege a plausible copyright infringement claim against an individual person, specifically Defendant. Defendant takes issue with paragraphs 23-24 of the Complaint, in particular:

> As the subscriber of the Internet service being used to distribute Plaintiff's copyrighted movies, Defendant is the *most likely* infringer. Consequently, Plaintiff hereby alleges Defendant is the infringer. . . . Defendant is the only person who can be identified as the infringer *at this time*."

Compl. ¶¶23-24 (emphases added).

Defendant argues that these allegations are insufficient because they do not explain how his condominium unit was associated with the IP address at issue. More specifically, Defendant contends that the allegations are implausible because the Complaint does not specify the times and dates that Defendant was assigned the infringing IP address. Plaintiff has simply alleged that a computer using the IP address assigned to Defendant participated in the alleged infringing activity. Although the Complaint could be clearer (e.g., by defining terms such as "subscriber," and specifically describing the link between the IP address and the individual Defendant), it

references Exhibit A in identifying the IP address at issue as belonging to Defendant, such that it may be fairly read to reference the dates and times contained in the investigator's log submitted as Exhibit A. (*See* Compl. ¶8 ("As set forth in Exhibit A, Defendant's IP address is 24.238.22.207.").)

Defendant also complains that the investigator's declaration does not state that any ISP was contacted nor that the procedure for identifying an IP address described therein was actually followed in this case. Plaintiff responds by arguing that there is no requirement that a plaintiff specifically allege that a defendant's ISP identified him as the subscriber assigned the relevant IP address. As Defendant provides no authority to the contrary, the Court agrees.[5]

B.    Defendant's Factual Disputes Are Not Cognizable at This Stage

Defendant also contends that the physical address listed in the Complaint is a 700-unit building with a condominium association that handles all communications with and payments to Internet Service Providers on behalf of individual unit owners. Defendant also claims that the IP address assigned to his unit does not match the one discovered by the investigator. Moreover, Plaintiff provides evidence that he was outside of Florida for all but five days of the investigatory period, when the alleged infringing activity took place. Such evidence might pave the way for an early summary judgment motion, but it cannot form the basis for dismissal at this stage.[6]

---

[5] Defendant's arguments concerning the adequacy of Plaintiff's investigation may be relevant to a later Rule 11 motion, depending on the circumstances, as they are principally arguments about whether Plaintiff's (or Plaintiff's counsel's) inquiry was reasonable under the circumstances.

[6] In support of his Motion, Defendant posits that the shame associated with being a named defendant in an action alleging unlawful downloading of pornography leaves innocent people who wish to avoid embarrassment vulnerable to copyright holders aiming to coerce them into settlements. (Mot. at 3 (citing *Digital Sin, Inc. v. Does 1-76*, 279 F.R.D. 239, 242 (S.D.N.Y.

While the Court acknowledges the potentially embarrassing predicament posed by this action, it must deny Defendant's Motion because, taking the allegations in the light most favorable to Plaintiff, the Complaint adequately states a claim of copyright infringement. Accordingly, it is

ORDERED THAT

(1) Defendant's Motion To Dismiss the Complaint [DE-7] is DENIED; and

(2) Defendant Shall File an Answer to the Complaint by **December 31, 2012.**

DONE and ORDERED in Miami, Florida this 20th day of December, 2012

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:     Counsel of Record

---

2012).)  To the extent that Defendant seeks a special procedure or rule to protect the privacy of such defendants or otherwise discourage such coercion, such arguments are best directed to the political branches of government.

**TAB 17**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No.: 1:12-cv-22768-PAS |
| | ) | |
| v. | ) | |
| | ) | |
| LEO PELIZZO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## JOINT MOTION TO ENLARGE THE TIME WITHIN
## WHICH DEFENDANT HAS TO RESPOND TO PLAINTIFF'S COMPLAINT

Plaintiff, Malibu Media, LLC, ("Plaintiff"), and Defendant, Leo Pelizzo ("Defendant"), by and through their respective counsel, hereby move for the entry of an order extending the time within which Defendant, Leo Pelizzo ("Defendant") may respond to Plaintiff's Complaint, and state:

1. On September 5, 2012, Plaintiff effectuated service of the summons and Complaint on Defendant, Leo Pelizzo.

2. On September 21, 2012, Defendant timely filed its Motion to Dismiss Plaintiff's Complaint [Dkt. 7].

3. On December 21, 2012, this Court entered an order denying Defendant's Motion to Dismiss and requiring Defendant to file its Answer to Plaintiff's Complaint by no later than December 31, 2012 [Dkt. 16].

4. Plaintiff intends to depose Hotwire Communications, Defendant's ISP, during the week of February 11, 2012. The parties are currently discussing the possibility of settlement contingent on the testimony received during the deposition of the ISP.

5.     Plaintiff has agreed to allow Defendant until February 22, 2013, for Defendant to respond to Plaintiff's Complaint.

6.     Good cause exists to grant this motion because doing so will further the interests of litigants and judicial economy.  It is therefore consistent with Fed. R. Civ. P. 1's instruction to judges to construe and administer the rules in such a way as to promote the "inexpensive" determination of every action.

7.     Neither party will be prejudiced by the Court granting this motion.

WHEREFORE, the parties respectfully request that the time within which Defendant may file its response to the Motion be extended until February 22, 2013.  A proposed order is attached for the Court's convenience.

Dated December 21, 2012

Respectfully submitted,

By: /s/ M. Keith Lipscomb               By: /s/ Francisco J. Ferreiro
M. Keith Lipscomb (429554)              John Cyril Malloy, III (964220)
klipscomb@lebfirm.com                   jcmalloy@malloylaw.com
LIPSCOMB EISENBERG & BAKER, PL          Francisco J. Ferreiro (37464)
One Biscayne Tower                      fferreiro@malloylaw.com
2 South Biscayne Blvd.                  MALLOY & MALLOY, P.A.
Penthouse 3800                          2800 S.W. Third Avenue
Miami, FL 33131                         Miami, Florida 33129
Telephone: (786) 431-2228               Telephone: (305) 858-8000
Facsimile:  (786) 431-2229              Facsimile (305) 858-0008
*Attorneys for Plaintiff*               *Attorneys for Defendant Leo Pelizzo*

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:  /s/ M. Keith Lipscomb

# TAB 22

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No.: <u>1:12-cv-22768-PAS</u> |
| | ) | |
| v. | ) | |
| | ) | |
| LEO PELIZZO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## STIPULATED MOTION TO ENLARGE ALL PENDING DEADLINES

Plaintiff, Malibu Media, LLC, ("Plaintiff"), and Defendant, Leo Pelizzo ("Defendant"), by and through their respective counsel, hereby move for the entry of an order enlarging all pending deadlines by sixty (60) days, and state:

1.     Pursuant to this Court's order dated January 2, 2013, Defendant's Answer to Plaintiff's Complaint is currently due this Friday, February 25, 2013.

2.     It was Plaintiff's intention to depose Hotwire Communications, Defendant's ISP, during the week of February 11, 2013.  Hotwire is located in Philadelphia, PA.

3.     On February 7, 2013, Plaintiff cancelled the deposition of February 11, 2013 and advised that it would be rescheduled for some time in March, during which time undersigned will be in Philadelphia conducting a number of other depositions.

4.     At this time, the parties are currently discussing the possibility of settlement. However, the parties' settlement is contingent on the testimony received during the deposition of the ISP.  Plaintiff believes that settlement is likely after the deposition takes place.

5.      In order to minimize attorneys' fees, Plaintiff has agreed to allow Defendant an additional sixty (60) days within which to respond to the Complaint, or until April 23, 2013, and to extend all pending deadlines by sixty days.

6.      Good cause exists to grant this motion because doing so will further the interests of litigants and judicial economy.  It is therefore consistent with Fed. R. Civ. P. 1's instruction to judges to construe and administer the rules in such a way as to promote the "inexpensive" determination of every action.

7.      Neither party will be prejudiced by the Court granting this motion.

WHEREFORE, the parties respectfully request that this Court enter an order enlarging the time within which Defendant may file its response to the Complaint until April 23, 2013, and extending all pending deadlines by an additional sixty days.  A proposed order is attached for the Court's convenience.

Dated February 19, 2013

Respectfully submitted,

By: /s/ M. Keith Lipscomb           
M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
One Biscayne Tower
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
*Attorneys for Plaintiff*

By: /s/ Francisco J. Ferreiro   
John Cyril Malloy, III (964220)
jcmalloy@malloylaw.com
Francisco J. Ferreiro (37464)
fferreiro@malloylaw.com
MALLOY & MALLOY, P.A.
2800 S.W. Third Avenue
Miami, Florida 33129
Telephone (305) 858-8000
Facsimile (305) 858-0008
*Attorneys for Defendant Leo Pelizzo*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:  /s/ *M. Keith Lipscomb*

**TAB 37**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No.: <u>1:12-cv-22768-PAS</u> |
| | ) | |
| v. | ) | |
| | ) | |
| LEO PELIZZO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S MOTION TO DISMISS THE CASE WITH PREJUDICE

Plaintiff, Malibu Media, LLC ("Plaintiff"), hereby moves for the entry of an order dismissing the case with prejudice, and states:

Pursuant to Fed. R. Civ. P. 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."   "The basic purpose of Rule 41(a)(2) is to freely permit the plaintiff, with court approval, to voluntarily dismiss an action so long as no other party will be prejudiced." *Versa Products, Inc. v. Home Depot, USA, Inc.*, 387 F.3d 1325, 1327 (11th Cir. 2004).   "[I]n most cases a dismissal should be granted unless the defendant will suffer clear legal prejudice, *other than the mere prospect of a subsequent lawsuit,* as a result.*"  McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 856-57 (11th Cir. 1986).   "The Court is charged with preventing prejudice to the defendants that may arise *from the dismissal,* not from the suit having been filed in the first place." *Etute v. Elkins*, CIVA 108-CV-0149-JEC, 2009 WL 728548 (N.D. Ga. Mar. 19, 2009).   "The crucial question to be determined is, would the defendant lose any substantial right by the dismissal." *McBride v. JLG Indus., Inc.*, 189 F. App'x 876, 877 (11th Cir. 2006).

Here, Defendant will not face any legal prejudice.  Indeed, following the entry of an order dismissing this case with prejudice, Defendant will be deemed the prevailing party.  There are no counterclaims.  Consequently, there is no possible way Defendant can be harmed by the entry of an order dismissing Plaintiff's claim against him.  Despite this obvious fact, Defendant would not stipulate to a dismissal with prejudice.  This motion follows.

WHEREFORE, Plaintiff respectfully requests that the Court enter an order dismissing Plaintiff's claims against Defendant Pelizzo with prejudice.

Dated: April 26, 2013

Respectfully submitted,

By: /s/ M. Keith Lipscomb
M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
*Attorneys for Plaintiff*

## CERTIFICATE OF CONFERRAL

Pursuant to L. R. Civ. P. 7.1(a)(3), undersigned counsel certifies that he has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

By: /s/ M. Keith Lipscomb

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ M. Keith Lipscomb

# TAB 41

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Case No. 1:12-CV-22768-CIV-SEITZ/SIMONTON**

MALIBU MEDIA, LLC,                          )
                                            )
      Plaintiff,                       )
                                            )
v.                                          )
                                            )
LEO PELIZZO,                                )
                                            )
      Defendant.                       )
_____ )

### DEFENDANT'S VERIFIED MOTION FOR ATTORNEYS' FEES AND COSTS AGAINST PLAINTIFF AND LIPSCOMB, EISENBERG & BAKER, P.L.

Defendant Leo Pelizzo ("Defendant" or "Mr. Pelizzo"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 54(d)(2), Local Rule 7.3, 17 U.S.C. §505, and 28 U.S.C. §1920, §1927, hereby moves this Court for entry of an order awarding attorney's fees against Plaintiff and Lipscomb, Eisenberg & Baker, P.L.  In support thereof, Defendant states as follows:

## I.  BACKGROUND.

### A.  Plaintiff's Suit.

On July, 27, 2012, Plaintiff filed a boilerplate copyright infringement complaint alleging that Mr. Pelizzo had reproduced and distributed fourteen (14) pornographic works between January 3, 2012 and May 29, 2012. [Complaint, ¶2].  These allegations were prefaced upon the declaration of an unlicensed investigator located in Germany who – using proprietary software – had allegedly traced these activities to an Internet Protocol address ("IP Address") assigned to a Hotwire Communications' ("Hotwire") internet subscriber.  [Complaint, Exhibit C at ¶4].

1

Plaintiff then obtained a document from Hotwire correlating this IP Address to an apartment unit owned by Mr. Pelizzo.  This document failed to include the specific time of day – or even date – during which the IP Address had been assigned to Mr. Pelizzo's unit.  Plaintiff did not, however, follow-up with Hotwire regarding this ambiguity prior to bringing suit.  Plaintiff also filed suit before speaking to Mr. Pelizzo or any other individual associated with the 700-unit "physical address" referenced in its Complaint.

**B.  Defendant's Response.**

 On August 20, 2012, Mr. Pelizzo – a 61-year old married man who had been out of the country since January 8, 2012 -- returned to the United States to find himself the subject of a public lawsuit identifying him as an unlawful consumer and distributor of films such as "*Pretty Back Door Baby*" and "*Anneli Leila Menage A Trois*".  Publicly humiliated, Mr. Pelizzo retained the undersigned law firm and expressed an ardent desire to clear his name in an equally public manner.  Accordingly, on September 21, 2012, Defendant filed a Motion to Dismiss Plaintiff's Complaint incorporating evidence that Mr. Pelizzo had been of the country from January 8, 2012 to August 20, 2012.[1]   This Motion also noted that Mr. Pelizzo's condominium association was the subscriber of the internet service in question and that Mr. Pelizzo had never dealt with Hotwire.  See [DE #7] and corresponding Affidavit of Leo Pelizzo (hereinafter "Pelizzo Affidavit").

On October 9, 2012, Plaintiff filed a response opposing Defendant's Motion to Dismiss.  Plaintiff did not express any desire to discuss this action prior to filing this response.  Two days later, however, Plaintiff's counsel emailed the undersigned and acknowledged the possibility that

---

[1]     Only one of the fourteen (14) works referenced in Plaintiff's Complaint was downloaded prior to January 8, 2012 and only two (2) of these works were registered with the Copyright Office prior to this date.

"(a) Hotwire gave us bad information; (b) someone was stealing your client's internet; or (c) your client is lying." [DE#39, Exhibit A].  Despite this uncertainty, Plaintiff subsequently filed a revised response unequivocally (1) asserting that the infringing activity was on-going; and (2) accusing Mr. Pelizzo of downloading six (6) additional pornographic works.

### C.  __The Hotwire Deposition.__

On October 23, 2012, Plaintiff's counsel sent the undersigned an email noting that "[o]ddly, the infringements are continuing on the same IP Address which was __previously__ assigned to your client." See DE #39, p. 3 and Exhibit B.   This acknowledged Defendant's evidence that the infringing IP Address was not, at least as of September 10, 2012, assigned to Mr. Pelizzo's unit. See [DE #7, and Pelizzo Affidavit at ¶17.]   Plaintiff's counsel did not – despite this "oddity" – offer to dismiss the action.   He did, however, relay his intent to depose Hotwire to determine how Mr. Pelizzo had come to be associated with the infringing IP Address.

On December 21, 2012, Plaintiff provided Hotwire with notice of a 30(b)(6) deposition to be conducted on February 11, 2013.   On February 1, 2013, Plaintiff received -- unbeknownst to Defendant -- a document from Hotwire on February 1, 2013 stating (1) that "the current user of the IP in question is not Mr. Pelizzo"; and (2) that "if Mr. Pelizzo's PC or router is offline for more than 24 hours, the lease [of the IP Address] expires and may be assigned to another subscriber.[2]  [DE #38, Exhibit A.]   Five (5) days later, Plaintiff cancelled the deposition scheduled for February 11, 2013.

Hotwire's corporate designee, Laurie M. Murphy, Esq. was finally deposed on March 12, 2013.  By this date, nearly five (5) months had elapsed since Plaintiff's concession that the infringing activities were continuing vis-à-vis an IP Address no longer associated with Mr.

---

[2]       Plaintiff was provided with this documentation on February 1, 2013 and did not provide the undersigned with these documents until March 12, 2013.

Pelizzo's unit.   Nevertheless, Plaintiff does not appear to have used this time to determine the identity of the actual infringer or otherwise substantively inquire about the information upon which his allegations relied.

As previously discussed in Defendant's Response to Plaintiff's Motion to Dismiss [DE#38], Ms. Murphy's testimony revealed a disconcerting number of holes in Hotwire's internal investigation and recordkeeping practices.  See [DE #38, Exhibit A] Deposition of Laurie M. Murphy (hereinafter "Murphy Deposition").  Ms. Murphy, for example, testified:

> (1) that "*Hotwire cannot definitively identify a subscriber*";[3]
>
> (2) that the IP addresses allocated to Mr. Pelizzo's 700+ unit condominium building are assigned to the "*entire building*" – not individual units – and kept "*in a constant sort of mixing pod*";[4]
>
> (3) that IP addresses not used for 24 hours – such as if "*someone goes on vacation*"[5] – "*just go back into the mix*";[6]
>
> (4) that Hotwire's search had been limited to identifying the subscriber associated with the infringing IP Address on February 6th, 2012[7] (and, therefore, twenty-nine (29) days after Mr. Pelizzo had already been out of the country and not using his internet connection);
>
> (5) that the aforementioned search was conducted without supervision by a "technician" that is no longer employed by Hotwire;[8]
>
> (6) that Hotwire has no records or logs of this search and, therefore, cannot verify that the technician inputted the correct IP Address or hit dates;[9]
>
> (7) that Hotwire's subscriber information is provided by the

---

[3]       Murphy Deposition, p. 25, lns 5-17
[4]       Murphy Deposition, p. 24, lns 3-12; p. 41 lns 14-19.
[5]       Murphy Deposition, p. 24, lns 5-16, p. 31, lns 16-19, p.32, lns 4-24
[6]       Murphy Deposition, p. 24, lns 5-16.
[7]       Murphy Deposition, p. 45, lns 4-8.  It also bears noting that this date and time – even if accurately inputted – corresponded to download associated with only one of the works referenced in Plaintiff's Complaint.
[8]       Murphy Deposition, p. 55, lns 13-15; p. 57, lns 8-10
[9]       Murphy Deposition, p. 68, lns 11-23; p. 69, lns 11-18.

condominium building but that the accuracy of this information is not verified as "*individual details are not that important*";[10] and

(8) that, while internet ports assigned to individual units can be mislabeled, that Hotwire never made an effort to verify that Mr. Pelizzo's internet port had been correctly labeled[11]

Given the frequency and fervency with which Plaintiff has pursued legal action against individuals based upon information provided to it by Hotwire and other ISPs, it was surprising to notice that Plaintiff's counsel seemed to be asking these questions for the first time.

### D.  Subsequent Developments.

Plaintiff's counsel *now* concedes that the Hotwire deposition made it apparent "that *the error* very likely occurred from Defendant's building misreporting to Hotwire the condominium unit to which the subject IP address was assigned" [DE #39], p. 4.   Given the obviousness of this "error", the undersigned emailed Plaintiff's counsel on March 21, 2013 – nine (9) days after the deposition –with a request that Plaintiff (1) dismiss this action with prejudice; (2) file a statement publicly acknowledging that Mr. Pelizzo was incorrectly identified as an infringer of pornography; and (3) reimburse Mr. Pelizzo for the legal fees incurred as of that date.   Though he now concedes the existence of an "error", Plaintiff's counsel was in a far less conciliatory mood when he received the foregoing offer.   Specifically, only minutes after receiving Defendant's offer, Plaintiff's counsel -- incensed that a wrongfully-sued individual was requesting reimbursement of his legal fees -- lashed out with the following emails:

Sent March 21, 2013, 11:42 AM

Francisco,

---

[10]        Murphy Deposition, P.60, lns 3-5, 15-19, lns 20-23; P. 62, lns 11-19..
[11]        Murphy Deposition, p. 33, lns 21-25, p. 34, lns 2-5; P. 59 lns 15-18

Your offer is rejected.  I will see at you trial.

Best regards,
Keith

<u>Sent March 21, 2013, 12:18 PM</u>

Francisco,

I would like to depose Mr. Pelizzo during the first two weeks of April.  Please provide me with deposition dates.  If you do not, I will unilaterally set it . . . .  Respectfully, you should counsel [your client] that when he loses, he will lose everything he owns and owe my clients hundreds of thousands of dollars.  Mark these words, your client's decision to reject a walk away will be the worst decision he will ever make. . . .

Thanks,
Keith

<u>See</u> Exhibit A.

On March 22, 2013, Plaintiff's counsel made good on his threat to continue prosecuting this action against an innocent party by serving Defendant with Interrogatories and Requests for Production. <u>See</u> Exhibits B and C.  Mr. Pelizzo, thereafter, travelled to the United States and incurred the costs associated with a mediation scheduled for April 4, 2013.  Though this mediation failed to result in a settlement, Plaintiff eventually moved to dismiss its action on April 26, 2013.

## II.    <u>LEGAL ANALYSIS</u>

As discussed above, Plaintiff blindly relied on a string of numbers in branding Mr. Pelizzo a distributor of pornographer.  Plaintiff continued pursuing this action seven months after (1) receiving visa and passport documentation evidencing Mr. Pelizzo's absence from the country; and (2) learning that the complained-of infringing activities were continuing under an IP address that did not match Defendant's IP address.  Following testimony that -- in his own words

-- revealed the source of "*the erro*r",[12] Plaintiff initiated a strategic effort to ratchet up Mr. Pelizzo's prior to a scheduled mediation by serving discovery and threatening to pursue the action and leave Mr. Pelizzo destitute.   As a result, the undersigned firm was required to prepare and file several motions and an answer, review Plaintiff's discovery requests, attend a deposition, prepare a mediation report and attend a mediation conference.

Despite the foregoing, Plaintiff boldly concludes that this "case should not have required Defendant's counsel to bill more than $2,000."  [DE #39, p. 5.]   Plaintiff supports this position by contending that "at no time during this litigation did Plaintiff ever make a monitory *[sic]* demand to Mr. Pelizzo." [DE #39, p.5]  This statement ostensibly excludes the monetary demand made within Plaintiff's Complaint.  It also, presumably, discounts Plaintiff's March 21st email in which he respectfully advised the undersigned to "counsel [Mr. Pelizzo] that when he loses, he will lose everything he owns and owe my clients hundreds of thousands of dollars."  See Exhibit A.

In order to absolve himself of blame, Plaintiff's counsel weaves a revisionist narrative in which he reluctantly and half-heartedly pursued legal action against Mr. Pelizzo.  In a statement that exhibits a small child's sense of entitlement, Plaintiff suggests – without a trace of irony -- that this misunderstanding could have been avoided had Mr. Pelizzo simply contacted the Plaintiff to inform him that he had been out of the country.  See DE #39, p.5.   No mention, however, is made of the possibility of Plaintiff's counsel waiting to speak to an individual prior relying on a string of numbers to file an individual suit.  Nor of how this could have turned out differently considering Plaintiff's decision to pursue this action seven (7) months after learning these very facts.      Accordingly,  as discussed  below,  Defendant  respectfully  submits  that

---

[12][DE #39], p. 4.

Plaintiff's actions entitle Defendant to an award of attorneys' fees and expenses, in addition to any other sanctions the Court may deem appropriate.

## A. The Legal Standard for Granting Fees Pursuant to 17 U.S.C. § 505

While litigants must generally bear their own attorney's fees, Section 505 of the Copyright Act provides an exception for the prevailing party in a copyright action. Specifically, Title 17 U.S.C. § 505 provides that:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

The Defendant, in light of Plaintiff's voluntary dismissal with prejudice, is considered the prevailing party in this action. See Mathews v. Crosby, 480 F.3d 1265, 1276 (11th Cir. Fla. 2007); see also Riviera Distribs. v. Jones, 517 F.3d 926, 928 (7th Cir. Ill. 2008). Awards of attorney's fees in the copyright context – while discretionary –"are the rule rather than the exception and should be awarded routinely.'" Arista Records, Inc. v. Beker Enterprises, Inc., 298 F. Supp. 2d 1310, 1316 (S.D. Fla. 2003) (quotations and citations omitted)). This is true regardless of whether the prevailing party is the defendant or the plaintiff. Fogerty v. Fantasy, Inc., 510 U.S. 517, 523 (1986) (noting that there is "no support for treating prevailing plaintiffs and defendants differently with respect to the recovery of attorney's fees.")

The Eleventh Circuit has, in this respect, emphasized that the "only preconditions to an award of fees is that the party receiving the fee be the 'prevailing party' and that the fee be reasonable.'" Mitek Holdings, Inc. v. Arce Engineering Co., 198 F. 3d 840, 842 (11th Cir. 1999) (citing Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 832 (11th Cir. 1982)). However, the Supreme Court has enumerated four non-exclusive factors relevant to a

8

§505 analysis, namely: (1) frivolousness; (2) objective unreasonableness; (3) motivation; and (4) the need in particular circumstances to advance considerations of compensation and deterrence. Fogerty., 510 U.S. at 534.

### 1. Frivolousness and Objective Reasonableness of Plaintiff's Arguments

Determining whether a case is frivolous is made on a case by case basis. See Baby Buddies, Inc. v. Toys "R" Us, Inc., 2011 U.S. Dist. LEXIS 106678 (M.D. Fla. Sept. 20, 2011). In determining whether a case is frivolous, the Court considers: (1) whether plaintiff established a prima facie case; (2) whether defendant offered to settle; (3) whether the court dismissed the case prior to trial or held a full-blown trial on the merits. Bruce v. City of Gainesville, Ga., 177 F.3d 949 (11th Cir. 1999). In order to prove its direct copyright infringement claim, Plaintiff was required to prove that Defendant copied constituent elements of the alleged work that were original. Calhoun v. Lillenas Publ'g, 298 F.3d 1228, 1232 (11th Cir. 2002). A plaintiff must also prove that a defendant engaged in volitional conduct - specifically, the act constituting infringement - to be considered a direct infringer. See Disney Enters. v. Hotfile Corp., 798 F. Supp. 2d 1303, 1306 (S.D. Fla. 2011).

Plaintiff's claim of direct copyright infringement was based upon the allegation that "[a]s the subscriber of the Internet service being used to distribute Plaintiff's copyrighted movies, Defendant is the most likely infringer." [Complaint, ¶23]. Plaintiff itself has acknowledged that "IP addresses are routinely assigned to different people [which] is why Plaintiff provides ISPs with the exact time that the infringement occurred." See [DE #13, p.6.] Nevertheless, Plaintiff filed suit against Mr. Pelizzo based upon a communication containing no details as to (1) the specific date(s) and time(s) that Mr. Pelizzo's account was correlated to the IP Address; or (2)

the specific date(s) and time(s) inputted as part of the search query. See DE # 13, Exhibit B.

Despite the ambiguity of Hotwire's response, and despite Plaintiff's knowledge that IP

Addresses are routinely assigned to different accounts, Plaintiff made no effort to contact

Hotwire to verify that the search had targeted the relevant dates of infringement.   If he had, he

would have learned (1) that Hotwire's general counsel had never, despite signing the response to

Plaintiff's subpoena, known the date or time used to trace the infringing IP Address; and (2) that

Hotwire maintained no records of or details about search. See Murphy Deposition, p. 68, lns 11-

23; p. 69, lns 11-18.   Moreover, despite claiming that fourteen (14) pornographic works were

allegedly infringed between January 3, 2012 and May 29, 2012, Plaintiff's subpoena to Hotwire

limited the requested search to February 6th, 2012, a date (1) corresponding to the infringement

of only one of the works; (2) that took place nearly a month after Mr. Pelizzo left the country.

See [DE #1, Exhibit B] and the *Murphy Deposition,* Exhibit F.

    In short, Plaintiff filed its action despite any evidence that Defendant had taken "direct

volitional steps" to copy Plaintiff's works. See Disney Enters. v. Hotfile Corp, 798 F. Supp. 2d at

1308.   Plaintiff also does not appear to have taken any steps to verify that its unlicensed

investigator in Germany entered the correct data, tracked the correct torrent file(s), or did not

otherwise err in compiling his search results.   Similarly, there is no information available as to

the reliability or accuracy of the "proprietary software" that was used to obtain the allegedly

infringing IP address.   See, e.g., Celestial Inc. v. Swarm Sharing Hash, 2012 U.S. Dist. LEXIS

61058 (C.D. Cal. May 1, 2012) (noting that Plaintiff failed to "make any representations as to the

reliability or level of accuracy of IP address geo-location tools" and provided no "details

regarding the tools used or the results.").

Defendant was amenable to – and repeatedly offered to – settle this matter upon (1) the filing of a public statement acknowledging that Mr. Pelizzo had been incorrectly identified; and (2) the reimbursement of Mr. Pelizzo's legal fees.  Alternatively, Plaintiff could have minimized Defendant's expenses by dismissing its action voluntarily at any time prior to the filing of Defendant's Answer on February 22, 2013.  Instead, Plaintiff brought this suit and continued to pursue it (1) without receiving or, thereafter, requesting the specific dates and times that Hotwire traced the infringing IP Address to Mr. Pelizzo's unit; (2) without requesting any information as to the internet usage activity associated with Mr. Pelizzo's unit; (3) without any knowledge of or inquiry into Hotwire's subscriber model or distribution of IP Addresses; (4) without ever speaking to Mr. Pelizzo; and (5) without ever speaking to a representative of the actual internet subscriber at issue, namely, the Quantum of the Bay condominium association.

### 2.  *Objective Reasonableness*

Plaintiff also continued aggressively pursuing this action well after it was objectively reasonable to do so. See Oravec v. Sunny Isles Luxury Ventures, L.C., 2010 U.S. Dist. LEXIS 32390 at *23 (11th Cir. 2010) (noting the "objective reasonableness" analysis considers the "reasonableness of Plaintiff's claims at the time [it] 'took the stance at issue' or at the time [it] 'pressed' his arguments.")  Plaintiff could have dismissed its action after learning, on September 21, 2012, that Defendant had been out of the country for nearly all the relevant dates of infringement or, on March 12, 2013, when it learned that Hotwire made a practice of re-assigning IP Addresses assigned to a user once that user had been inactive for over twenty-four (24) hours.  See Murphy Deposition, p. 45, lns. 4-8; See Pelizzo Affidavit, ¶5.  Instead, despite the overwhelming gaps of evidence discussed above, Plaintiff continued to pressing forward in an attempt to coerce a settlement agreement from an innocent party.

11

### 3. Plaintiff's Subjective Motivation

The fact Plaintiff's behavior was motivated by a desire for commercial gain also weighs in favor of a fee and cost award to the Defendant. See Sherry Mfg. Co. v. Towel King of Florida, Inc., 822 F.2d 1031, 1035 (11th Cir. 1987) (finding the plaintiff had "initiated a predatory lawsuit for commercial gain."). An allegation that an individual has illegally downloading obscene films (these films have titles such as "Angel Seaside Romp" and "Pretty Back Door Baby") will, whether true or not, irreversibly tarnish an individual's reputation. In addition to straining relationships with family and friends, the public filing of such an allegation – even if never proven – will adversely affect an individual's career, business, and reputation. Consequently, it is not surprising that many individuals – innocent or not – often opt to pay a few thousand dollars rather than risk the filing of a public suit.

Given the foregoing, it comes as no surprise that Plaintiff has gained notoriety for its aggressive litigation strategies and that an Internet search for "Malibu Media" garners results consisting almost exclusively of references to Plaintiff's litigious nature. Last year, for example, the Eastern District of New York denounced Malibu's use of "federal district courts as small claims collection agencies [to put] economic pressure on individuals who do not have substantive liability." See In re BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765 (E.D.N.Y. May 1, 2012). The Central District of California echoed similar misgivings when it stated that "the Court will not idly watch what is essentially an extortion scheme." See Malibu Media, LLC v. John Does 1-10, No. 12-3623, 2012 WL 5382304, at 4 (C.D. Cal. June 27, 2012).

Plaintiff's counsel attempts to absolve himself and shift blame to the Defendant by providing this Court with a series of self-serving emails containing half-truths and outright

misrepresentations.   Plaintiff's counsel, for example, falsely claims that he contacted the undersigned firm prior to the filing of Defendant's Motion to Dismiss (and, therefore, before the undersigned firm ever entered an appearance in this action.) See [DE #39], p. 3.   In reality, Plaintiff's first communication to the undersigned was a last-minute request, sent October 8, 2012, that the undersigned consent to an extension Plaintiff's deadline to file a Response to Defendant's Motion to Dismiss. See Exhibit D.  The email relayed an overwrought story about a burst water pipe that had decimated walls, ruined carpets, "destroyed the entire top four floors of our building," and – *ten days earlier*-- forced Plaintiff's counsel to "unplug" his work computer. See Exhibit D.  It did not, however, make any mention of the facts set forth in Defendant's Motion or express any interest in discussing this case.

On October 16, 2012, Plaintiff filed a response stating that that "Defense counsel refuses to take Plaintiff's call or return voice messages." [DE #13, p.2].  Amusingly, Plaintiff's counsel had – a day earlier –forgotten to attend a telephone conference he had scheduled for October 15th with the undersigned.  See Exhibit E.   Further, several hours before Plaintiff's filing of this statement, the undersigned had sent an email to Plaintiff's counsel attempting to re-schedule the call.  See Exhibit E.   Plaintiff's counsel failed to respond to this email prior to filing its Response and, in fact, failed to respond until October 22nd when the undersigned once again followed up about the matter.

Throughout this proceeding, Plaintiff continued to drag its feet.  Plaintiff cancelled and postponed the Hotwire deposition for eight (8) months after it filed its Complaint and does not, at any point prior to this time, appear to have conducted any investigation or inquiry into the discrepancy between the infringing IP Address and Mr. Pelizzo's account.  Plaintiff's behavior, in sum, consistently "indicate[d] a motivation to enlarge … profits to increase [the] potential

13

recovery for copyright infringement." <u>Oravec v. Sunny Isles Luxury Ventures, L.C.</u>, 2010 U.S. Dist. LEXIS 32390 at *18 (11th Cir. 2010)(citations omitted).

### 4. *Considerations of Compensation and Deterrence.*

"A party that asserts unreasonable or bad faith arguments should be deterred from doing so by paying the fees and costs the prevailing party incurred."  <u>Oravec</u>, 2010 U.S. Dist. LEXIS 32390 at *33 (citing <u>Luken v. International Yacht Council, Ltd.</u>, 581 F. Supp. 2d 1226, 1239-40. This is particularly true here, where Defendant's defense involved circumstances that, at least within this Circuit, are "composed on a virtually blank slate." <u>Oravec</u>, 2010 U.S. Dist. LEXIS 32390 at *34; <u>see</u> <u>Collins v. Doe 1</u>, 2013 U.S. Dist. LEXIS 71122, 11-13 (E.D.N.Y. May 18, 2013)(stating that "[b]efore the Court embarks on its analysis, it is important to understand that this case is not being litigated in a vacuum. Indeed, the issue presented here has been the subject of a lively debate in many respects, both in the judicial system and across the internet.")

Plaintiff filed this suit by blindly relying on an IP Address that —alone— was incapable of identifying the infringing party. <u>See</u> <u>Ingenuity 13 LLC</u>, 2013 U.S. Dist. LEXIS 64564 at *10 ("Plaintiffs can only show that someone, using an IP address belonging to the subscriber, was seen online in a torrent swarm.")  It bears noting that Plaintiff could have asked Hotwire for the media access control address ("MAC Address") associated with the infringement.  A MAC Address is a unique identifier capable of identifying a physical device and, therefore, tying an IP address to a device in an account holder's possession. <u>See, e.g.,</u> "MAC Addressing", About.Com,   http://compnetworking.about.com/od/networkprotocolsip/l/aa062202a.htm   (last accessed June 27, 2013).  Hotwire has testified that it would have provided Plaintiff with this information had it been requested.   <u>See</u> *Deposition of Laurie M. Murphy*, P. 73, lns. 7-25; p.74 1-9.  Despite Plaintiff's knowledge that the infringing IP Address could have been used by any

number of wireless and mobile devices located in the 700-unit "physical address" referenced in Plaintiff's Complaint, it never sought this information. See *Deposition of Laurie M. Murphy*, P. 73, lns. 7-25; p.74 1-9; see also Digital Sin, Inc., 279 F.R.D. at 242 (noting that "Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material.")

Plaintiff's unreasonable claims, coupled with its pecuniary motivation, warrant the impositions of fees and costs as a deterrent measure to future litigants. Specifically, "future copyright holders should be deterred from initiating costly litigation without first attempting non-judicial resolution . . . [and from] pursuing causes of action . . . after discovery has proved them unreasonable." Oravec, 2010 U.S. Dist. LEXIS 32390 at *35. This is particularly true here where Plaintiff and its ilk have taken advantage of the complexity and novelty of internet technology in order to profit from tenuous legal claims. Accordingly, Defendant respectfully requests compensation of "expenses incurred in this vexatious lawsuit." See Ingenuity 13 LLC, 2013 U.S. Dist. LEXIS 64564 at *15 (also doubling defendants award and noting "[t]his punitive multiplier is justified by Plaintiffs' brazen misconduct.")

### B.  The Legal Standard for Granting Fees Pursuant to 28 U.S.C. § 1927

For the reasons discussed above, Defendant also seeks an award of attorney's fees against Plaintiff's counsel, Lipscomb Eisenberg & Baker, PL, pursuant to 28 U.S.C. § 1927. Specifically, 28 U.S.C. §1927 provides that:

> An attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

An attorney is considered to have "multiplied proceedings" where "the attorney's conduct

15

is so egregious that it is tantamount to bad faith." Amlong & Amlong , P.A. v. Denny's Inc., 457 F.3d 1180, 1190 (11th Cir. 2006) (noting that the attorney's actions should be compared with the conduct of a reasonable attorney.)   This standard is met where an attorney must knowingly or recklessly pursues a frivolous claim. Id at 1193; see also Avirgan v. Hull, 932 F.2d 1572 (11th Cir. 1991) (noting that the attorney's conduct must be tantamount to bad faith).   The Eleventh Circuit has stated that "[t]he obligation to answer for one's act accompanies the act; a lawyer cannot absolve himself of responsibility by dismissing his client's suit." Matthews v. Gaither, 902 F.2d 877, 880 (11th Cir. 1990)(retaining jurisdiction to sanction a plaintiff that filed an action in bad faith, misrepresented material facts to the court, and then filed a notice of voluntary dismissal to evade sanctions.)

As discussed above, Plaintiff filed its action against Mr. Pelizzo without conducting a reasonable pretrial investigation and without any factual basis supporting its conclusory legal claims.   Plaintiff, thereafter, continued to actively pursue its claims against Mr. Pelizzo well after tacitly acknowledging that Mr. Pelizzo was not the infringing party.   See Torres v. City of Orlando, 264 F. Supp. 2d 1046, 1053 (M.D. Fla. 2003) (finding a lawyer engaged in bad faith by filing and prosecuting claims lacking any plausible legal or factual support).   Plaintiff has, in a few short years, achieved a level of notoriety that has prompted various courts to express concerns about its tactics.   See, e.g., Malibu Media, LLC v. Doe, 2012 U.S. Dist. LEXIS 110668, at *6-7 (M.D. Fla. Aug. 7, 2012) (requiring Plaintiff to "inform each John Doe defendant of the potential for sanctions under Rule 11, Fed. R. Civ. P., if the John Doe defendant is incorrectly identified."); In re BitTorrent Adult Film Copyright Infringement Cases, 2012 U.S. Dist. LEXIS 61447, at *9 (E.D.N.Y. 2012) (unambiguously expressing concerns to Malibu Media, LLC and its counsel "that many of the names and addresses produced in response to

Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2.")   Consequently, for the reasons discussed above, Defendant submits that Plaintiff's egregious conduct warrants an award of fees pursuant to 28 U.S.C. § 1927.

### C.   The Legal Standard for Determining Attorney's Fee Awards

The Eleventh Circuit's current standards for measuring attorney's fees are set out in Norman v. Housing Auth. of the City of Montgomery, 836 F.2d 1292, 1298-1301 (11th Cir. 1988) (reiterating that a fee award should be based upon a multiplication of a reasonably hourly rate by the number of reasonable hours billed.)   A reasonable hourly rate may be calculated by "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." See Id. at 1299.  Multiplying this rate by the number of "reasonable hours" expended on the matter results in a "lodestar" that can, thereafter, be increased or decreased based on factors such as the quality of the representation and the results obtained. Id. at 1299-1302.

### 1.   Establishing A Reasonable Hourly Rate and Number of Hours

The "going rate" in the legal community is the most critical factor in determining a reasonable fee. Martin v. University of South Alabama, 91 F.2d 604, 610 (11th Cir. 1990); Brooks v. Georgia State Bd. of Elections, 997 F.2d 857, 868-69 (11th Cir. 1993)(defining the pertinent "legal community" as the city where the moving attorney has its office.). "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." Id.

The prevailing party need only submit evidence indicating what the hours worked were. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).   The attached documentation of Defense counsel's time records indicate that the total fees incurred by Mr. Pelizzo between August 23,

2012 and May 31, 2013 were $22,261.25. See Exhibit F    The vast majority of this figure, $18,877, corresponds to work conducted by the undersigned at an hourly rate of $215.00 per hour.[13] The fees incurred since May 31, 2013, including the time spent preparing this Motion, amount to $6,931.50. See Thompson v. Pharmacy Corp. of Am., Inc., 334 F.3d 1242, 1244-46 (11th Cir. 2003)(noting that fees attributable to time spent litigating the issue of attorneys' fees are also fully compensable.)

Undersigned counsel has, since May 2007, concentrated his practice exclusively on intellectual property litigation and intellectual property matters before the United States Patent & Trademark Office Trademark Trial and Appeal Board. See Exhibit G, *Affidavit of Francisco Ferreiro*.   By way of comparison, the most recent "Report of Economic Survey" by the American Intellectual Property Law Association indicates $306.00 as the average rate for an associate with 5-6 years of intellectual property experience in private counsel.  See Exhibit H. Accordingly, the majority of billing in this matter was performed at an hourly rate nearly $100.00 lower than the average charged by similarly qualified attorneys. The reasonableness of the lodestar figure of $29,192.75 is further evidenced by considering the complexity and novelty of the issues involved and the fact that Mr. Pelizzo's defense required the preparation of several motions, attendance of a deposition, and attendance of a mediation conference. See Exhibit I, *Affidavit of Stephen J. Kolski, Esq.*

### 2.   *Adjusting the Lodestar*

The Court may adjust the lodestar upward or downward to reflect a number of different factors, including, (1) the novelty and difficulty of the legal question involved; (2) the skill required to perform the legal services properly; and (3) the amount involved and the results

---

[13] The remaining fees are primarily attributable to John Cyril Malloy, III  ($945 at a rate of $450.00 per hour); and Tony Guo, Esq. ($2,008.00 at a rate of $195.00 per hour). See Exhibit G.

obtained. <u>See</u> <u>Manriquez v. Manuel Diaz Farms, Inc.</u>, 2002 WL 105033 1, * 10 (S. D. Fla. 2002)

(citing <u>Kay</u>, 176 F.3d at 1327).   In order to properly perform its duties, Defendant's counsel was

required to familiarize itself with fairly complex and novel technologies and legal issues that, at

least within this Circuit, are "composed on a virtually blank slate." <u>Oravec</u>, 2010 U.S. Dist.

LEXIS 32390 at *34.     Given the foregoing, Defendant submits that the circumstances

surrounding this action warrant an upwards adjustment of the lodestar figure, as well as an award

of interest accrued on Defendants' attorneys fees since the date of judgment.   <u>See</u>, e.g., <u>Copper</u>

<u>Liquor, Inc. v. Adolph Coors Co.</u>, 701 F.2d 542 (5th Cir. 1983) (interest awarded on fees from

date of original judgment); and <u>Finkelstein v. Bergua</u>, 804 F. Supp. 1235, 1240 (N.D. Cal. 1992).

## IV.   <u>CONCLUSION</u>.

For the reasons discussed above, Defendant hereby moves for entry of an Order awarding

Defendant his reasonable attorneys' fees and expenses incurred in defending this action.

Respectfully submitted,

Dated: July 1, 2013                    By: <u>s/Francisco J. Ferreiro</u>
    Miami, Florida                          Francisco J. Ferreiro
                                      Florida Bar No. 37,464
                                      fferreiro@malloylaw.com
                                      MALLOY & MALLOY, P.A.
                                      2800 S.W. Third Avenue
                                      Miami, Florida  33129
                                      Telephone (305) 858-8000
                                      Facsimile (305) 858-0008

                                       Attorneys for Defendant

## CERTIFICATE OF GOOD FAITH CONFERENCE

On June 10, 2013, the undersigned served Plaintiff's counsel with a copy of billing statements reflecting the fees incurred by Defendant through May 31, 2013. Pursuant to Rule 7.3, the parties have discussed the relief sought herein but have been unable to resolve the matter by agreement.

s/ Francisco J. Ferreiro
Francisco J. Ferreiro
Florida Bar No. 37,464

## VERIFICATION OF COUNSEL

In accordance with Southern District of Florida Local Rule 7.3, I verify under penalty of perjury that the foregoing is true and correct. Executed on July 1, 2013.

s/ Francisco J. Ferreiro
Francisco J. Ferreiro
Florida Bar No. 37,464

## CERTIFICATE OF SERVICE

I hereby certify that on July 1st, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

s/ Francisco J. Ferreiro
Francisco J. Ferreiro
Florida Bar No. 37,464

## <u>SERVICE LIST</u>

### Case No. 1:12-CV-22768-CIV-SEITZ/SIMONTON

M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229


*Counsel for Plaintiff*
Notices of Electronic Filing
Generated by CM/ECF

**TAB 47**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MALIBU MEDIA, LLC,                          )
                                            )
      Plaintiff,                      )    Civil Action Case No.: <u>1:12-cv-22768-PAS</u>
                                            )
v.                                          )
                                            )
LEO PELIZZO,                                )
                                            )
      Defendant.                      )
_____)


**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**<u>TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................................. 1

II.   ISSUES FOR ADJUDICATION ........................................................................................... 1

III.  FACTUAL BACKGROUND ................................................................................................ 1

   A.   Malibu Media Filed This Suit in Good Faith and With a Proper Purpose ...................... 1

      1.   Malibu Is Being Damaged By BitTorrent Copyright Infringement ............................ 1

      2.   Malibu Makes Substantially All of Its Money Through Subscription Sales ............... 2

      3.   IPP, Ltd.'s Technology Has Been Independently Tested And Works ......................... 2

      4.   The Subject IP Address Was Used By A Serial Infringer ........................................... 3

      5.   ISPs' Correlations Are Almost Always Accurate ....................................................... 3

      6.   Hotwire Communications Said It Assigned the Subject IP Address to Defendant ..... 3

      7.   Prior to Filing Suit, Plaintiff Attempted to Contact Defendant Numerous Times ...... 4

      8.   Plaintiff Had a Proper Purpose to File Suit ................................................................ 4

   B.   Plaintiff Acted Reasonably And Defendant Acted Unreasonably .................................. 4

      1.   Without First Talking to Plaintiff, Defendant Drafted a Frivolous 12(b)(6) Motion .. 4

      2.   Right Away, Plaintiff Advised Defendant It Would Not Push For A Settlement ........ 5

      3.   Malibu Advised Defendant NOT to Spend Money On this Matter; And, That After Hotwire's
           Deposition Defendant Would Likely Be Dismissed ................................................... 5

      4.   Malibu Had a Proper Purpose For Deposing Hotwire ................................................ 5

      5.   To Reduce Defendants' Fees Plaintiff Did Defendants' Work .................................... 5

      6.   Plaintiff Scheduled Hotwire's Deposition To Coincide with Other Depositions ........ 5

      7.   Plaintiff Learned How and Why Hotwire Made a Correlation Error ........................... 6

      8.   Plaintiff Offered To Voluntarily Dismiss Defendant Immediately After the Hotwire Deposition
           ................................................................................................................................... 6

      9.   Defendant Unreasonably Demanded $17,500 In Attorneys' Fees ............................... 6

      10.  The Mediation Focused On How Much Plaintiff Would Pay in Fees ......................... 6

      11.  Malibu Offered $13,000 for Fees ............................................................................... 6

      12.  Defendant Would Not Stipulate to Being Voluntary Dismissed With Prejudice ........ 7

IV.   LEGAL STANDARD ........................................................................................................... 7

V.    ARGUMENT ........................................................................................................................ 8

   A.   Attorney Fees Should Not Be Awarded .......................................................................... 8

      1.   Deposing Hotwire Advanced Copyright's Interests In Accurate ISP Correlations ..... 8

2.     Deposing Hotwire Advanced Copyright's Interests In Deterring Infringement .......................... 8

3.     The Four *Fogerty* Factors Weigh Against Awarding Attorney's Fees ....................................... 9

   a.     Plaintiff's Claims Were Not Frivolous ................................................................. 9

   b.     Plaintiff's Motivation Was Proper....................................................................... 9

   c.     Plaintiff's Actions Were Reasonable ................................................................. 10

   d.     Compensating Defendant Will Not Further the Purposes of the Copyright Act .................. 11

   e.     Deterring Plaintiff Is Unnecessary..................................................................... 11

   f.     Other Considerations Make An Award of Fees Inequitable .................................................. 11

B.     Even If The Court Finds Defendant is Entitled To Some Fees, The Court Should Dramatically
       Reduce The Amount Requested ................................................................................ 12

   1.     Law Governing Proper Fee Petitions.................................................................... 12

   2.     Explanation For A Reasonable Fee for The Necessary Work In this Matter ............................ 12

   3.     Summary of Defendant's Unreasonable Fees ........................................................... 13

   4.     The Overwhelming Majority of Defendant's Fees Were Unnecessary, Excessive, Duplicative or
          Fraudulent ............................................................................................ 14

      a.     Defendant's 12(b)(6) Was Unnecessary, Frivolous And Inconsistent With the Purposes of the
             Copyright Act ........................................................................................ 14

      b.     Defendant's Opposition To Plaintiff's Motion to Strike Was Unreasonable ......................... 15

      c.     Defendant's Opposition to Plaintiff's Motion to Dismiss Him Was Unreasonable .............. 15

      d.     The 1st Year Associate's Services Were Unnecessary And His Rate Excessive .................. 15

      e.     Defense Counsel Spent An Unreasonable Amount of Time Preparing for Mediation ........... 16

      f.     Staffing Four Attorneys (Including One Unidentified Attorney) on this Matter Was
             Unreasonable.......................................................................................... 16

      g.     The Invoices Demonstrably Establish Fraudulent Overbilling ............................................. 17

   5.     Defense Counsel Charge For Clerical Work At Attorney Rates and Seek To Recover For
          "Block Entries" Commingling Attorney and Clerical Work..................................................... 17

   6.     Defendant Should Not Be Awarded Any Fees Following Malibu's $13,000 Offer .................. 18

   7.     Defendant Improperly Seeks Reimbursement of Expenses ....................................................... 18

C.     Defendant's Request for Sanctions Under 28 U.S.C. § 1927 Is Frivolous.................................... 19

VI.    CONCLUSION......................................................................................... 20

## TABLE OF AUTHORITIES

*A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir. 2001) ...................19

*Abbott Laboratories v. Granite State Ins. Co.,* 104 F.R.D. 42, 43 (N.D. Ill. 1984) ...................23

*Abreu v. Alutiiq-Mele, LLC,* 2012 WL 4369734 at *15 (S.D. Fla. 2012) ...................24

*Accord MiTek Holdings, Inc. v. Arce Eng'g Co., Inc.,* 198 F.3d 840, 842-43 (11th Cir. 1999)....12

*AF Holdings, LLC v. Does 1-1,058* 286 FR.D 39, 47 (D.D.C. 2012)...........................13

*Alexander v. Chesapeake,* 60 F.Supp.2d 544 (E.D. Va. 1999)........................................16

*Am. Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999)................17

*Amlong & Amlong, P.A. v. Denny's, Inc.,* 500 F.3d 1230, 1239 (11th Cir. 2007).....................24

*Arista Records, Inc. v. Beker Enterprises, Inc.,* 298 F.Supp.2d 1310 (S.D. Fla. 2003)...............12

*Arista Records, LLC. v. Doe 3,* 604 F.3d 110 (2d Cir. 2010).........................................19

*Corsair Asset Mgmt., Inc. v. Moskovitz,* 142 F.R.D. 347, 353 (N.D. Ga. 1992) .........................24

*Dillard v. City of Greensboro,* 213 F.3d 1347, 1353, 1356 (11th Cir. 2000).......................17

*Doria v. Class Action Servs., LLC,* 261 F.R.D. 678, 686 (S.D. Fla. 2009) .................................24

*Dream Custom Homes, Inc. v. Modern Day Const., Inc.,* 8:08-CV-1189-T-17AEP, 2011 WL 7764999 (M.D. Fla. July 12, 2011).............................................................................23

*Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 535 n. 19 (1994)..............................................12

*Fogerty,* 510 U.S. at 534 n. 19, 114 S.Ct. at 1033 n. 19 ..............................................12

*Gilfand v. Planey,* 2012 WL 5845530, at *16 (N.D. Ill. 2012)........................................23

*In re Aimster Copyright Litigation,* 334 F.3d 643 (7th Cir. 2003) ...................................19

*In re BitTorrent Adult Film Copyright Infringement Cases,* 2012 WL 1570765 (E.D.N.Y. 2012) ...............................................................................................................15

*In re Charter Communications, Inc. Subpoena Enforcement Matter,* 393 F.3d 771, 774 (8th Cir. 2005)........................................................................................................19

*Kearney v. Auto-Owners Ins. Co.,* 713 F. Supp. 2d 1369, 1375, 1377 (M.D. Fla. 2010)............21

*Luken v. International Yacht Council, Ltd.,* 581 F.Supp.2d 1226, 1239 (S.D. Fla. 2008)............12

*Luken v. Int'l Yacht Council, Ltd.,* 581 F. Supp. 2d 1226, 1245 (S.D. Fla. 2008) .......................14

*Machado v. Da Vittorio, LLC,* 2010 WL 2949618 (S.D. Fla. July 26, 2010) ..............................22

*Malibu Media, LLC v. John Doe,* Civil Action No. 13-CV-00307, CM/ECF 36 at p. 5, (Colo. 2013) ................................................................................................................7, 16

*Malibu Media, LLC v. John Does 1, 6, 13, 14,* 2013 WL 3038025 (E.D. Pa. 2013)................7, 14

*Malibu Media, LLC v. John Does 1-10,* 2012 WL 5382304, at 4 (C.D. Cal. 2012)....................15

*Malibu Media, LLC v. John Does 1-48,* 2012 WL 6867308 (M.D. Fla. 2012).............................15

*Malibu Media, LLC v. John Does 1-5,* 2012 WL 3641291 (S.D. N.Y. 2012) ................................15

*Malibu Media, LLC v. John Does 1-6, 2013 WL 2150679 (N.D. Ill. 2013)*................................15

*Malibu Media, LLC v. Pelizzo,* 2012 WL 6680387 (S.D. Fla. 2012) ..........................................14

*Mannings v. Sch. Bd. of Hillsborough Cnty., Fla.,* 826 F. Supp. 1404, 1411 (M.D. Fla. 1993)...19

*Manriquez v. Manuel Diaz Farms, Inc.,* 2002 WL 1050331 (S.D. Fla. May 23, 2002)...............22

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.* 545 U.S. 913, 125 S.Ct. 2764 (2005).......19

*Moriarty v. Svec,* 233 F.3d 955, 967 (7th Cir. 2000) .................................................23

*Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) .............17

*Oravec v. Sunny Isles Luxury Ventures, L.C.*, 2010 WL 1302914, *3 (S.D. Fla. 2010) .............12

*Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir.1997)...........................................24

*Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks*
*Statement of Marybeth Peters The Register of Copyrights before the Committee on the*
*Judiciary*, 108th Cong. (2003) ...............................................................................................14

*Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1293, 1294, 1295-96 (S.D. Fla. 2008) *aff'd,* 323
F. App'x 829 (11th Cir. 2009) ..........................................................................................20, 22

*R.L. v. Miami-Dade Cnty. Sch. Bd.*, 07-20321-CIV, 2013 WL 2157156 (S.D. Fla. May 17, 2013)
....................................................................................................................................................24

*RIAA v. Verizon Internet Services, Inc.,* 351 F.3d 1229, 1238 (D.C. Cir. 2003)...........................20

*Rodriguez v. Super Shine & Detailing, Inc.*, 09-23051-CIV, 2012 WL 2119865 (S.D. Fla. June
11, 2012) ..................................................................................................................................19

*Smith v. Reliance Standard Life Ins. Co.*, 03-61274-CUV-ZLOCH, 2004 WL 2980683 (S.D. Fla.
Nov. 10, 2004)..........................................................................................................................24

*Sony v. Tennenbaum*, 2011 WL 4133920 at *11 (1st Cir. 2011).................................................13

*Sony v. Tennenbaum,* 660 F.3d 487 (1st Cir. 2011)....................................................................19

*State, Dep't of Transp. v. Skidmore*, 720 So. 2d 1125, 1131 (Fla. Dist. Ct. App. 1998) .............24

*Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 727 (5th Cir. 2008)................................15

I.     **INTRODUCTION**

For the reasons set forth below, awarding fees would not be consistent with the interests of the Copyright Act or equitable.  Accordingly, Plaintiff respectfully requests that the Court deny Defendant's motion.

II.    **ISSUES FOR ADJUDICATION**

This case raises an important issue of first impression regarding the award of attorneys' fees in peer-to-peer copyright cases.  Specifically, when it appears very likely that an internet service provider ("ISP") made a correlation error, does allowing the copyright owner to depose the ISP further the interest of the Copyright Act?  If permitting the deposition *does* further the interest of the Copyright Act, then attorney fees' should not be permitted.  If permitting the deposition *does not* further the interests of the Copyright Act, then *reasonable* attorneys' fees should be permitted.   If the Court addresses the reasonability of Defendant's fees, it should, *inter alia,* decide:  (1) the value of the quantum of work that was reasonably necessary to achieve Defendant's desired result; (2) if it furthers the interest of the Copyright Act to award fees for preparing a frivolous 12(b)(6) motion to dismiss a well pled peer-to-peer copyright infringement complaint; (3) if Defendant reasonably opposed Plaintiff's motion to strike its erroneously filed draft of attorneys' notes; (4) how much to reduce Defendant's invoice for fraudulent billing; (5) if staffing four attorneys on this matter was reasonable, and how much to reduce Defendant's invoices for overstaffing; (6) how much to reduce Defendant's invoices for work performed by an unidentified attorney; (7) how much to reduce Defendant's invoices for the performance of clerical work, including clerical work contained in "block billing";  (8) if Defendant is entitled to *any* fees for work performed after it rejected Plaintiff's offer to pay $13,000; and (9) are any of Defendant's putative  "costs"  recoverable under  28  U.S.C.  §1920,  or  are  these  merely unrecoverable "expenses."

III.   **FACTUAL BACKGROUND**

   **A.  Malibu Media Filed This Suit in Good Faith and With a Proper Purpose**

      1.    Malibu Is Being Damaged By BitTorrent Copyright Infringement

According to GQ Magazine, Malibu produces "perhaps the world's most sophisticated cinema erotica."[1]   To do so, it spends over two million dollars a year producing content, and

---

[1]    *See*   http://www.gq-magazine.co.uk/girls/articles/2013-03/13/brigham-colette-field-x-art-sex-scene

millions more each year to run its business.  *Declaration of Colette Field* at ¶ 14, attached hereto as Exhibit A.  *Id.*  Malibu cannot compete against free copies of its works.  So, on June 10, 2013, Malibu became the first Plaintiff to ever try a BitTorrent copyright infringement case.[2]  *Id.* at ¶ 33.  The "Bellwether" case ended with final judgments in Plaintiff's favor against all three defendants.  *Id.* at ¶ 34.  "The evidence . . . Malibu presented was persuasive that it had suffered real damages . . . [from] BitTorrent infringement."  *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 2013 WL 3038025, *8 (E.D. Pa. June 18, 2013).  Each month, approximately 80,000 U.S. residents use BitTorrent to steal Malibu's movies.  *Field* at ¶ 16.

2.  <u>Malibu Makes Substantially All of Its Money Through Subscription Sales</u>

Malibu distributes its product through a subscription based website, www.x-art.com.  *Id.* at ¶ 9.  It makes the *overwhelming* majority of its revenue and profit from subscription sales.  *Id.* at ¶13.  Its litigation efforts are aimed at deterring infringement and obtaining reasonable compensation *from infringers*.  *Id.* at ¶ 22.  Malibu has no desire to settle with innocent subscribers.  *Id.* at ¶ 23.  Courts notice: "moreover, the Court has personally observed Plaintiff's willingness to settle and/or dismiss cases without payment of *any damages* where the defendant has come forward with exculpatory evidence."  *Malibu Media, LLC v. John Doe*, Civil Action No. 13-CV-00307, CM/ECF 36, at p. 5, (D. Colo. 2013), emphasis in the original.  "I emphasize that Malibu is not what has been referred to in the media and legal publications, and in the internet blogosphere, as a 'copyright troll'."  *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 2013 WL 3038025, *1 (E.D. Pa. 2013).  Further, "many internet blogs commenting on this and related cases ignore the rights of copyright owners to sue for infringement, and inappropriately belittle efforts of copyright owners to seek injunctions and damages."  *Id.* at n.1.

3.  <u>IPP, Ltd.'s Technology Has Been Independently Tested And Works</u>

A computer investigations expert, Patrick Paige, independently tested IPP, Ltd.'s IP Address detection method and concluded that it works.  *See* Declaration of Patrick Paige ("Paige Decl."), Ex. C.  A summary of how IPP, Ltd.'s people, software and hardware work is set forth in the declarations of Tobias Feiser and Michael Patzer, attached as Ex. D and E.    Countless

---

[2] *See* Exhibit B for instructions to download the audio recording of the trial.  The testimony contained in the audio recording is hereby made a part of the record.

defendants have admitted liability. From the above, Malibu knows IPP, Ltd. correctly identifies infringers' IP Addresses.

### 4. The Subject IP Address Was Used By A Serial Infringer

At the time Plaintiff filed this case IPP, Ltd. detected the infringer stealing 14 movies a total of 337 times. *See* Declaration of M. Keith Lipscomb ("Lipscomb Decl."), Ex F, at ¶ 2. By January 2013, when the infringement stopped, the infringer had stolen 25 movies and been detected a total of 549 times.[3] *Id.*, at ¶ 3. From Plaintiff's perspective, this suit was aimed at one of its worst infringers.

### 5. ISPs' Correlations Are Almost Always Accurate

This is the first and only case where Malibu's counsel believes an ISP made a correlation error. *Id.*, at ¶ 5. Undersigned has personally been assured by *numerous* ISPs that their lookups are accurate and reliable. *Id.*, at ¶ 6. Comcast which, like Hotwire, is a major ISP, testified through its 30(b)(6) representative that it was "absolutely certain" that its correlation was correct. In another matter, Hotwire testified that it takes its responsibility to correlate an IP Address to a subscriber seriously and that it uses the same procedure to perform a correlation for Malibu that it uses in a criminal case. *See* Ex. G. In the approximately 200 instances where former Palm Beach Detective Patrick Paige supervised or directly performed the investigation of a criminal matter involving a computer and the Internet, he never encountered an ISP correlation error. Paige Decl., at ¶ 20. And, after executing the search warrants based upon the ISPs' correlations, in all but one instance, the police officers found the evidence.[4] *Id.*, at ¶ 21. In short, prior to filing suit there was no reason to suspect a correlation error because they are exceedingly rare anomalies.

### 6. Hotwire Communications Said It Assigned the Subject IP Address to Defendant

In response to a subpoena, Hotwire identified Mr. Pelizzo as the subscriber of the internet being used to infringe. *See* Ex. H. The subpoena was authorized after a hearing in a Pure Bill of Discovery proceeding. *See* Ex. I. Hotwire complied with the Cable Communications Act by

---

[3] The infringer likely moved. Indeed, in 2013, after the infringement stopped, Plaintiff could not find another Miami Hotwire subscriber committing as much infringement. *Id.*, at ¶ 4.

[4] In that one instance, a next door neighbor was using the subscriber's open WiFi.

notifying Defendant of the subpoena. [5] *See* Deposition of Laurie M. Murphy ("Murphy Depo"), Ex. J, at 79:15-19. Upon receipt, Defendant did not – but could have – called Hotwire to advise that his condo was unoccupied. Had he done so, Hotwire may have investigated or refrained from disclosing his identity.

       7.    <u>Prior to Filing Suit, Plaintiff Attempted to Contact Defendant Numerous Times</u>

      Prior to filing this suit, during the pendency of the Bill of Discovery suit, Plaintiff attempted to contact Defendant on April 6, 2012, April 10, 2012, April 17, 2012, May 21, 2012, June 4, 2012, and August 14, 2012 via telephone. Lipscomb Decl., at ¶ 7. Defendant did not respond and the subject IP Address continued to infringe at an alarming rate. Had Defendant responded, Plaintiff would have deposed Hotwire and Defendant's building in the Bill of Discovery suit. Significantly, Defendant hired Malloy & Malloy, PA prior to being served. *See* Ex. K and CM/ECF 6. This raises the presumption Defendant was unreasonably ignoring the dispute.

       8.    <u>Plaintiff Had a Proper Purpose to File Suit</u>

      Malibu sued to: (a) enjoin the *infringer*; (b) seek compensation from the *infringer*; and (c) deter future infringement by others. These are reasonable and justifiable bases to sue.

    **B.  Plaintiff Acted Reasonably And Defendant Acted Unreasonably**

       1.    <u>Without First Talking to Plaintiff, Defendant Drafted a Frivolous 12(b)(6) Motion</u>

      Instead of calling undersigned to say: "You've got the wrong guy. My client was out of the country and his condo was empty" – which is what a reasonable and cost-conscious lawyer's first move would be – on September 21, 2012, Defendant filed a frivolous 12(b)(6) Motion. It was unnecessary because a simple verified answer and defenses would have communicated that Defendant was out of the country and his condo was empty. [6] It was frivolous because scores of identical Rule 12(b)(6) motions have been *universally* rejected.

---

[5] Hotwire's Subpoena Response noted: "Leo Pelizzo is an Account Holder. Hotwire does not maintain [records of] individual users of Internet." *Id*. All this means is that Hotwire does not know who used its subscriber's Internet service. No ISP can know that.

[6] Defendant also could have asked Plaintiff to stipulate to a motion to amend the Complaint and allow him to proceed anonymously. Plaintiff would have agreed. Lipscomb Decl., at ¶ 8. Indeed, Plaintiff has allowed other defendants to proceed anonymously even after naming them. *Id*.

2.    <u>Right Away, Plaintiff Advised Defendant It Would Not Push For A Settlement</u>

Based on Defendant's declaration, it appeared likely that Hotwire had made a correlation error.  So, on October 11, 2012, undersigned sent defense counsel an e-mail advising him that "we do not want to push this case against a person who was not the downloader nor do we expect a non-infringer to settle.  .  .  .  Figuring this out [what happened] as inexpensively and expeditiously as is possible is in both of our clients' best interests.  I would like to teleconference with you toward this end."  *See* Exhibit L.

3.    <u>Malibu Advised Defendant NOT to Spend Money On this Matter; And, That After Hotwire's Deposition Defendant Would Likely Be Dismissed</u>

During counsels' *first* teleconference, on October 23, 2012, undersigned urged opposing counsel <u>NOT</u> to spend money, and advised that Malibu did not intend to proceed after the Hotwire deposition:

> During our conversation, I urged you to advise your client not to spend money on this process.  Presently, we do not intend to pursue this matter past the deposition of Hotwire unless we get confirmation from Hotwire that your client is the correct subscriber.  And, thereafter we will only pursue it if we can explain why infringements occurred when he was out of town.

*See* Exhibit M.

4.    <u>Malibu Had a Proper Purpose For Deposing Hotwire</u>

Malibu deposed Hotwire for two reasons: (a) to ascertain if and how the correlation error occurred; and (b) to determine if it would be possible to identify the infringer.  Lipscomb Decl., at ¶ 9.

5.    <u>To Reduce Defendants' Fees Plaintiff Did Defendants' Work</u>

To reduce Defendant's fees, Plaintiff drafted the Rule 26(f) Report.  And, both motions to enlarge the time within which *Defendant* had to respond to the Complaint.  *Id.*, at ¶ 10.

6.    <u>Plaintiff Scheduled Hotwire's Deposition To Coincide with Other Depositions</u>

Hotwire's deposition was rescheduled for March 13, 2013 to coincide with four other depositions undersigned took in another matter near Philadelphia.  *Id.*, at ¶ 11.

7.     Plaintiff Learned How and Why Hotwire Made a Correlation Error

Hotwire's 30(b)(6) deponent testified that the *only* way she was aware that a correlation error could occur was if a port on the group modem on Defendant's floor was mislabeled. Murphy Depo., pp. 39-50.[7]

8.     Plaintiff Offered To Voluntarily Dismiss Defendant Immediately After the Hotwire Deposition

Immediately after the Hotwire deposition, undersigned offered to voluntarily dismiss his client with prejudice.  Lipscomb Decl., at ¶ 12.  The offer was contingent on mutual releases.  *Id.*

9.     Defendant Unreasonably Demanded $17,500 In Attorneys' Fees

On March 21, 2013, in response to the walk-away offer, Defendant demanded $17,500 for attorneys' fees.  *See* Ex. N.  *Shocked* by the clearly excessive fees and admittedly peeved, within a half hour, undersigned replied with two knee-jerk e-mails: (a) rejecting the demand and (b) indicating Plaintiff would pursue the case.  *Id.*  Simultaneously, paralegals were instructed to propound discovery.  *Id.*  Undersigned cooled quickly.  And, at the mediation less than two weeks later, undersigned again advised Defendant that Malibu would be dismissing the case. Lipscomb Decl., at ¶ 14.

10.     The Mediation Focused On How Much Plaintiff Would Pay in Fees

On April 4, 2013, the parties attended mediation.  Lipscomb Decl., at ¶ 13.  The focus of all the negotiations was on how much Plaintiff would pay in fees.  *Id.,* at ¶ 16.  Significantly, undersigned did not and does not believe Defendant is entitled to *any* fees, but Malibu made offers genuinely attempting to compromise.  *Id.,* at ¶ 17.  Significantly, Malibu *never* demanded money from Defendant.  *Id.*, at ¶ 18.

11.     Malibu Offered $13,000 for Fees

Shortly after the mediation, on April 11, 2013, Malibu offered $13,000 for fees.  *See* Ex. O.  The offer was orally conditioned on Defendant allowing Plaintiff to take the 30(b)(6) of the building so that Plaintiff could identify the infringer.   Defendant responded that he would not

---

[7] To explain, the individual units in Defendant's building do not have modems provided by Hotwire.  Instead, the modem for a floor is in a utility closet for that floor.  And, wires from that modem's ports are run to the resident's individual units.  A "mislabeled port" would cause Hotwire to identify Defendant instead of the infringing neighbor on his floor.  *See* p. 39, lines 3-12.  *See also* p. 49, line 7 through p. 50, line 7.

take anything less than full reimbursement of fees and costs.  *See* Ex. P.   At that time, Defendant had advised Plaintiff that his fees and costs equaled $24,000.  *See* Ex. Q.

      12.   <u>Defendant Would Not Stipulate to Being Voluntary Dismissed With Prejudice</u>

Resolved to fighting clearly excessive fees, Malibu requested that Defendant stipulate to being dismissed with prejudice.  *See* Ex. R.   Defendant refused and drafted a significant opposition to Plaintiff's motion to voluntarily dismiss him with prejudice.  Significantly, Plaintiff had indicated Defendant would be the prevailing party and would have so stipulated.  CM/ECF No. 37.

## IV.   <u>LEGAL STANDARD</u>

In a copyright case, "courts should not simply award attorney's fees to the prevailing party as a matter of course."  *Luken v. International Yacht Council, Ltd.*, 581 F.Supp.2d 1226, 1239 (S.D. Fla. 2008).[8]   Instead, "courts must be careful to award fees *only* where such an award is 'faithful to the purposes of the Copyright Act.'"  *Id.*, citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n.19 (1994) (emphasis added).  *Accord MiTek Holdings, Inc. v. Arce Eng'g Co., Inc.*, 198 F.3d 840, 842-43 (11th Cir. 1999) (reversing court for not considering the interests of the Copyright Act.)  "To guide district courts in the exercise of their discretion, the Supreme Court has enumerated four non-exclusive factors under a §505 analysis: (1) frivolousness; (2) motivation (3) objective unreasonableness (both in factual and legal components of the case); and (4) the need in particular circumstances to advance considerations of compensation and deterrence."  *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 2010 WL 1302914, *3 (S.D. Fla. 2010) (Seitz, J.), *citing Fogerty,* 510 U.S. at 534 n.19, 114 S.Ct. at 1033 n.19; *MiTek,* 198 F.3d at 842 (same).  "The imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act."  *Luken*, 581 F.Supp.2d at 1240.  In *Donald Fredrick Evans and Associates v. Continental Homes, Inc.*, 785 F.2d 897 (11th Cir. 1986), the Court affirmed the denial of attorneys' fees to a prevailing defendant and advised district courts that a losing plaintiff's good faith "*likely* would justify a denial of fees" to a prevailing defendant.  *Id.* at 916 (emphasis added).  Significantly, in

---

[8] *Cf. Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F.Supp.2d 1310, 1316 (S.D. Fla. 2003) (opining that in the context of a default judgment awarding fees to the prevailing plaintiff is "the rule rather than the exception," which makes sense because presumably the suit furthered the Copyright Act's interest of deterring infringement.  The *Arista* dicta does not make sense when, as here, a Plaintiff lost because of a rare third party mistake.)

*Oravec*, Your Honor cited *Donald Fredrick Evans* and applied its rationale to *only* award attorneys' fees to the prevailing defendant for work done after "the *latest* date on which [it was] objectively [] reasonable" to proceed. *Oravec*, 2010 WL 1302914, *9 (emphasis added).

## V.   ARGUMENT

### A.   Attorney Fees Should Not Be Awarded

"The touchstone of attorney's fees under § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act, i.e., by encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure that 'the boundaries of copyright law [are] demarcated as clearly as possible' in order to maximize the public exposure to valuable works." *Mitek* at 842.

1.   Deposing Hotwire Advanced Copyright's Interests In Accurate ISP Correlations

"Senator Patrick Leahy, co-sponsor of the DMCA (Digital Millennium Copyright Act) stated that Title II of the DMCA 'is intended to preserve incentives for online service providers and copyright owners to cooperate to detect and address copyright infringements that occur in the digital networked environment.'" *AF Holdings, LLC v. Does 1-1,058*, 286 F.R.D 39, 48 (D.D.C. 2012), *citing* H.R.Rep. No. 105-796, Comm. on Conf., 72 (1998), 1998 U.S.C.C.A.N. 639, 649. To detect and address digital infringements internet service providers, like Hotwire, must be able to accurately correlate an IP Address to a subscriber. Penalizing a Plaintiff for deposing an ISP who likely made a correlation error would deny the ISP the ability to take the necessary corrective measures brought to light by a deposition. Since the DOJ and civil plaintiffs rely on IP address correlation in copyright cases, an ISP's ability to correctly correlate is *clearly* in the interest of the Copyright Act.

2.   Deposing Hotwire Advanced Copyright's Interests In Deterring Infringement

One of Malibu's purposes for taking Hotwire's deposition was to ascertain whether it could identify the serial infringer. Through the "Digital Theft Deterrence and Copyright Damages Improvement Act of 1999" Congress . . . amended the Copyright Act . . . to increase the minimum and maximum awards available under § 504(c)." *Sony v. Tennenbaum*, 2011 WL 4133920 at *11 (1st Cir. 2011). Congress found on-line piracy results in "lost U.S. jobs, lost wages, lower tax revenue, and higher prices for honest purchasers." *See* Legislative History, p.3, Ex. S. "The general purpose of the amendments is to strengthen the deterrent effect of statutory damages." *Id.* at p. 6. And, "[n]otwithstanding the [current] statutory penalities . . .

enforcement has been minimal." *Id.* at p. 3.  First, appreciating how an ISP may err assists plaintiffs and defendants' to analyze peer-to-peer copyright cases.  Indeed, it may color a party's desire to proceed, enable plaintiffs and defendants to focus on discovery, or both.  This furthers the Copyright Act's interests in identifying and deterring *infringers*.  Second, Fed. R. Civ. P. 26(b)(1), permits discovery if "if it appears reasonably calculated to lead to the discovery of admissible evidence."  Here, Hotwire's deposition was reasonably calculated to identify the infringer.  Accordingly, awarding fees would undermine the Copyright Act's purpose of deterring infringement because, as the Register of Copyrights correctly opined, "for many people, the best form of education about copyright in the internet world is the threat of litigation."[9]  Here, a fee award will dissuade copyright owners from investigating possible ISP errors who are doing so for the purpose of identifying the infringer.  Copyright law is interested in identifying serial infringers, not in letting them remain unidentified.

      3.    The Four *Fogerty* Factors Weigh Against Awarding Attorney's Fees

          a.   Plaintiff's Claims Were Not Frivolous

      This Court held that the Complaint states a claim for copyright infringement.  *Malibu Media, LLC v. Pelizzo*, 2012 WL 6680387 (S.D. Fla. 2012).  Had Hotwire identified the correct subscriber, Plaintiff would likely have prevailed.  Indeed, in the Bellwether case, the court found all three defendants liable.  *See Malibu Media, LLC v. John Does 1, 6, 13, 14*, 2013 WL 3038025 (E.D. Pa. 2013).  Malibu's likely success is bolstered by former Detective Patrick Paige's experience conducting approximately 200 searches.  *See supra* at p. 3.

          b.   Plaintiff's Motivation Was Proper

      "It goes without saying that protection of one's copyright constitutes a permissible motivation in filing a copyright infringement case . . . .  Of course, the Copyright Act was designed to enable such conduct."  *Luken v. Int'l Yacht Council, Ltd.*, 581 F. Supp. 2d 1226, 1245 (S.D. Fla. 2008).  As explained above, Plaintiff's motivation for deposing Hotwire was also proper.  And, Plaintiff advised Defendant he would likely be dismissed following the deposition.[10]

---

[9] *Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary*, 108th Cong. (2003), *available at* http://www.copyright.gov/docs/regstat090903.html.
[10] Defendant's attempt to impute an improper motivation through *ad hominem* attacks is revisionist history that should fall on deaf ears in light of undersigned's first e-mail advising

c. <u>Plaintiff's Actions Were Reasonable</u>

Filing suit was clearly reasonable. For the above reasons, taking Hotwire's deposition was reasonable. Thereafter, Malibu reasonably offered to dismiss Defendant. Next, Malibu reasonably refused to pay clearly excessive attorneys' fees. Malibu negotiated in good faith at mediation. After mediation, Plaintiff made a more than reasonable settlement offer of $13,000. With no compromise possible, Malibu requested Defendant to stipulate to a dismissal with prejudice. When the request was denied Plaintiff moved to dismiss Defendant with prejudice. This motion follows.

(i)     The Fifth Circuit Court Held Pressing Forward With Discovery for the Purpose of Identifying The Infringer Even When the Copyright Owner Knows The <u>Defendant Is Not the Infringer Is Reasonable and Does Not Warrant Fees</u>

The Fifth Circuit's opinion in *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 727 (5th Cir. 2008) is directly on point. In *Virgin*, the copyright owner subpoenaed an ISP to identify the subscriber. Thereafter, the copyright owner, just like here, attempted to contact the defendant for six months. Just like here, Defendant declared he was innocent. In *Virgin*, the Defendant asserted the infringer may have been his adult daughter but he did not provide her name. *Id.* Here, Defendant also asserted it must have been someone else. Virgin pressed on with discovery and immediately moved to dismiss Defendant after identifying the infringer as defendant's adult daughter. *Id.* The underlying rationale in *Virgin* is equally applicable here. Namely, even when a copyright owner has a strong reason to suspect the Defendant is not the infringer, fees are not

---

Defendant that Plaintiff would not seek a settlement, and undersigned's second e-mail urging Defendant not to spend any money and that he would likely be dismissed. Further, Plaintiff did not intend to embarrass Defendant. Defendant could have asked for a protective order removing his name from pleadings. Malibu would have consented. At least ten courts have documented Malibu's policy of consent. *See e.g., Malibu Media, LLC v. John Does 1-48*, 2012 WL 6867308 (M.D. Fla. 2012).

Defendant cites *In re BitTorrent Adult Film Copyright Infringement Cases,* 2012 WL 1570765 (E.D.N.Y. 2012) and *Malibu Media, LLC v. John Does 1-10,* 2012 WL 5382304, at 4 (C.D. Cal. 2012) for the proposition that courts have criticized Plaintiff. Significantly, the Orders in both cases were issued s*ua sponte* at the inception of the case, prior to giving Malibu the opportunity to address any concerns about its litigation processes or purpose. No court has ever criticized Malibu's purpose after hearing from it. And, numerous courts have held that Malibu does not engage in "harassing" or "bad faith" behavior. *See e.g., Malibu Media, LLC v. John Does 1-6,* 2013 WL 2150679 (N.D. Ill. 2013)*; Malibu Media, LLC v. John Does 1-5,* 2012 WL 3641291 (S.D.N.Y. 2012).

warranted when a copyright owner reasonably presses forward for the purpose of identifying the infringer. That is all Virgin and Malibu did. And, in both cases fees are not warranted.

    d. <u>Compensating Defendant Will Not Further the Purposes of the Copyright Act</u>

   Undersigned has not found one case where considerations of compensation *alone* were sufficient to justify an award of attorneys' fees to a defendant. *See Alexander v. Chesapeake*, 60 F.Supp.2d 544 (E.D. Va. 1999) ("Consideration of compensation and deterrence does not suggest that attorneys' fees are appropriate. . . . [Indeed], the Defense of reasonable legal claims, under the so-called 'American Rule,' is in most instances a cost of business.") Moreover, here, very little work was necessary to defend this action. Had Defense counsel done nothing but call, file a verified answer and 26(a) disclosure he would have obtained the same result. Accordingly, Defendant's fees are almost entirely a self-inflicted wound.[11]

    e. <u>Deterring Plaintiff Is Unnecessary</u>

   For the reasons stated above, plaintiffs should not be deterred from investigating ISP correlation errors. Deterring Malibu from pursuing innocent defendants is not necessary. *See* undersigned's first two e-mails and *Malibu Media, LLC v. John Doe*, Civil Action No. 13-CV-00307, CM/ECF 36, at p. 5 (D. Colo. 2013) ("moreover, the Court has personally observed Plaintiff's willingness to settle and/or dismiss cases without payment of *any damages* where the defendant has come forward with exculpatory evidence.")

    f. <u>Other Considerations Make An Award of Fees Inequitable</u>

   Plaintiff has also suffered from Hotwire's mistake. First, Hotwire's mistake enabled a serial infringer to continue his tortious conduct. Second, Plaintiff has also incurred fees and costs. Significantly, however, almost all of the fees Plaintiff incurred were caused by

---

[11] This Court could create a rule wherein it awards a peer-to-peer copyright defendant reasonable fees from the latest point in time that it was reasonable to believe that the defendant committed the infringement if Defendant: (1) has not unreasonably refused to identify the infringer, and (2) could not have ascertained the infringer's identity through a reasonable investigation. To incentivize cooperation, any such award should be reduced by an amount equal to the value of the work a defendant unreasonably causes a plaintiff. This would promote the interests of the Copyright Act by incentivizing cooperation during the process of identifying an infringer. From experience, undersigned knows that incentivizing cooperation would be beneficial for all concerned. If the Court adopts this rule, it should make clear that it is not retreating from *Oravek, infra*, because this rule does not apply to situations where it is reasonable to believe the defendant committed the infringement; and that it is consistent with *Virgin, infra*, because in that case, the Defendant unreasonably refused to provide the identity of his daughter.

Defendant's unnecessary work and unreasonable positions.  Under these circumstances, Plaintiff respectfully submits that the scales of equity do not tip in Defendant's favor.

### B.  Even If The Court Finds Defendant is Entitled To Some Fees, The Court Should Dramatically Reduce The Amount Requested

#### 1.   Law Governing Proper Fee Petitions

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates."  *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).   To do so, "fee counsel . . . [must] supply[] the court with specific and detailed evidence from which the court can determine the reasonable hourly rate."  *Id.* "[T]ime expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity."  *Id.*  And, unlike Defendant's motion, "[a] well prepared fee petition also would include a summary, grouping time entries by the nature of the activity or stage of the case."  *Id.*  Generally, thereafter, "the court calculates the 'lodestar,' which is the number of hours (tempered by billing judgment) spent in the legal work on the case, multiplied by a reasonable market rate in the local area."  *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000) (internal citations omitted).   According to the "Supreme Court . . . 'billing judgment' . . . means [fee applicants] must exclude from their fee applications 'excessive, redundant, or otherwise unnecessary [hours].'"  *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (internal citations omitted).

"The retrospective futility of work . . . cast[s] doubt on the reasonableness of requiring the other side to pay for it."  *Dillard v. City of Greensboro*, 213 F.3d 1347, 1356 (11th Cir. 2000).   "Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded."  *Am. Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999).  Unfortunately, like here, "courts are often faced with inadequate fee applications or with claims for hours or fee rates which seem excessive."  *Norman at* 1303. In such instances courts are not required to use the loadstar method; instead, "where [as here] the time or fees claimed seem expanded or there is a lack of documentation or testimonial support the court may make the award on its own experience."  *Id.*

#### 2.   Explanation For A Reasonable Fee for The Necessary Work In this Matter

Where, as here, Defendant's invoices are clearly excessive, the easiest method to calculate a reasonable fee is to determine what was necessary to accomplish Defendant's goal of

being dismissed with prejudice, estimate the amount of time it would take to do that work, and calculate the value. Plaintiff respectfully submits the following time entries would be reasonable and necessary: (a) Teleconference with client to discuss matter, (1.3); (b) Review client's documents confirming the statement that he was out of the country and no one was living in his condo, (.7); (c) Review complaint, (1.1); (d) Teleconference with opposing counsel, (.4); Review and forward e-mail to client from Malibu advising that Malibu merely wants to take Hotwire's deposition and then plans on dismissing him, review client's response, (.2); (e) Draft 26(a) disclosures, (.2); (f) Review and approve 26(f) report drafted by opposing counsel, (.3); (g) Review motion to enlarge time within which to answer drafted by opposing counsel, (.2); (h) Review CM/ECF e-mail granting motion to enlarge, (.1); (i) Review motion to enlarge time within which to answer drafted by opposing counsel, (.2); (j) Review CM/ECF e-mail denying motion to enlarge, (.1); (k) E-mail correspondence between counsel re: necessity to answer, (.2); (l) Draft verified answer and affirmative defenses, (2.3); (m) Prepare for and attend Hotwire deposition, talk with adverse counsel and client re: dismissal, (4.6); (n) Review stipulation of dismissal, (.2); (o) approximately 20 miscellaneous short e-mails between undersigned and adverse counsel or client, (2.1). Total Hours: 14.2. –x– Hourly Rate: $215 = Total invoice of $3,053.

     3.   <u>Summary of Defendant's Unreasonable Fees</u>

     Malibu analyzed every entry on Defendant's invoices. Through Ex. T, Plaintiff accepts or objects to each entry. In total, Plaintiff objects to 155 entries equaling $28,803.23. Specifically, Defense counsel had 89 entries involving either drafting e-mails or receiving and reviewing e-mails which amounted to 20.2 hours and $4,386.00. *See* Ex. U. Additionally, Defense counsel had 26 entries for "internal conferencing" amounting to 5.8 hours and $1,719.50. *See* Ex. U. Defense counsel improperly combined 19 entries through block billing which totaled $8,263.25. *See* Ex. U. Many of those entries improperly contained clerical work. Indeed, Defense counsel had 23 entries totaling 17.3 hours and $3,719.50 containing tasks that should not be billed by an attorney. *See* Ex. U. In terms of unnecessary motion work, Defense counsel billed 35.9 hours and $7,780 for their pleading motions. *See* Ex. U. This includes their motion to dismiss, unreasonably opposing Plaintiff's motion to strike, and unreasonably opposing Plaintiff's motion to dismiss the case. Defense counsel spent 36.2 hours and $7,669.00 preparing their unnecessary attorneys' fee motion and $3,871.25 on attorneys' fees for

mediation.  *See* Ex. U.  This is in stark contrast to Defense counsel's time spent on their initial case review (3.9 hours amounting to $979.50); legal research (3.8 hours amounting to $808.00); answer (4.1 hours amounting to $881.50) and discovery (15.7 hours amounting to $3,386.50, including 26(a) disclosures and the 26(f) report).  *See* Ex. U.  While Defense counsels' time spent on reasonable work was dramatically less than the time spent on frivolous or unnecessary work, Plaintiff still objects to the majority of these time entries because of continuous overbilling and inflating (such as on Dec. 21, 2012 billing .40 and $86.00 for reading a short extension motion prepared by Plaintiff and informing Plaintiff of a one word typo).

      4.   The Overwhelming Majority of Defendant's Fees Were Unnecessary, Excessive, Duplicative or Fraudulent

          a.  Defendant's 12(b)(6) Was Unnecessary, Frivolous And Inconsistent With the Purposes of the Copyright Act

Defendant's 12(b)(6) was unnecessary because a verified answer would have communicated that Defendant was out of the country and that his condo was empty during the relevant period.  It was also unreasonable to draft it without first speaking with Plaintiff to ascertain Plaintiff's intention in light of the facts.  *See Powell v. Carey Int'l, Inc.*, 547 F.Supp.2d 1281, 1294 (S.D. Fla. 2008) *aff'd*, 323 F. App'x 829 (11th Cir. 2009) (eliminating hours spent on motions that could have been avoided through "professional communication with each other"); *Mannings v. Sch. Bd. of Hillsborough Cnty., Fla.*, 826 F. Supp. 1404, 1411 (M.D. Fla. 1993) ("The district court has the discretion to exclude excessive or unnecessary work."); *Rodriguez v. Super Shine & Detailing, Inc.*, 2012 WL 2119865, *6 (S.D. Fla. 2012) ("[A]n award of attorney's fees can be reduced for raising unsupported claims that prolong litigation and prevent settlement negotiations.")

The 12(b)(6) Motion was frivolous because it was based on a denial and the Complaint pled the elements of infringement.  Further, the Supreme Court, Five Circuit Courts, and at least twenty district courts have all held peer-to-peer infringement is actionable.  See *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.* 545 U.S. 913, 125 S.Ct. 2764 (2005); *Sony v. Tennenbaum*, 660 F.3d 487 (1st Cir. 2011); *Arista Records, LLC. v. Doe 3*, 604 F.3d 110 (2d Cir. 2010); *In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003); *In re Charter Communications, Inc. Subpoena Enforcement Matter*, 393 F.3d 771, 774 (8th Cir. 2005); *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir. 2001); *RIAA v. Verizon Internet Services, Inc.,* 351 F.3d 1229,

1238 (D.C. Cir. 2003); and Ex. V for a partial list of district court cases denying 12(b)(6) motions in peer-to-peer cases where IP Addresses were used to identify the defendant.

In short, the "'the boundaries of copyright law [with respect to this issue have already been] demarcated as clearly as possible.'" *Mitek*, 198 F.3d at 842. Accordingly, awarding fees for the 12(b)(6) Motion would only encourage other peer-to-peer defendants, and there are many across the country, to file the frivolous 12(b)(6) motions causing parties and courts to needlessly expend labor and resources litigating (and again adjudicating) a well settled issue.

Defendant spent approximately 22 hours of work on the 12(b)(6) Motion, which equates to $4,730, which for the foregoing reasons, should not be awarded.

### b.   Defendant's Opposition To Plaintiff's Motion to Strike Was Unreasonable

Defendant's Memorandum in Opposition to Plaintiff's Motion To Withdraw and Strike Plaintiff's Memorandum in Opposition to Motion to Dismiss was unreasonable.[12]   Defendant spent $752.50 on this opposition. It should not recover for preparing an opposition aimed at preventing Malibu from striking erroneously filed attorneys' notes. *See* FL ST BAR Rule 4-4.4(b), *Powell, Rodriquez and Mannings, supra*.

### c.   Defendant's Opposition to Plaintiff's Motion to Dismiss Him Was Unreasonable

Defendant's goal should have been to be dismissed with prejudice. Plaintiff would have stipulated he was the prevailing party. Refusing to stipulate and drafting an opposition to Plaintiff's motion was unreasonable. Defendant spent $2,236 on this opposition. He should not recover. *See Powell, Rodriquez and Mannings, supra* at p. 14.

### d.   The 1st Year Associate's Services Were Unnecessary And His Rate Excessive

Defense attorney Tony Guo, who was hired in March 2013 as a first-year associate, contributed nothing useful to this case and Plaintiff should not be charged for his training. *See Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1293 (S.D. Fla. 2008) *aff'd*, 323 F. App'x 829 (11th Cir. 2009) (The Court cannot award a fee for their time, however, because their participation did not further the prosecution of this action or effectively aid in resolving this dispute." At a minimum, Defendant should not be awarded a rate of $195.00 for Mr. Guo. *See*

---

[12] Undersigned drafted the opposition and sent it to attorney Emilie Kennedy for proof reading and filing. Lipscomb Dec., at ¶ 19. Ms. Kennedy could not do it and erroneously sent a draft of the notes she had given undersigned to prepare the opposition to attorney Jason Cooper for filing, instead of the completed opposition. *See* Declaration of Emilie Kennedy, Ex. W. Mr. Cooper put the caption on and sent it to a paralegal for filing. *Id.*

*Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1377 (M.D. Fla. 2010)  (reducing fees for a "freshly minted lawyer.")

As for not contributing, Mr. Guo billed five hours for research and writing an interoffice memorandum for "identification based on an IP address" on March 26, 2013 and March 28, 2013.  First, the description is not specific enough to identify what he actually researched. Second, for purposes of a copyright infringement suit, Plaintiff has never contested that it had to identify the actual infringer.   Other unnecessary work includes conducting "research case background" and researching potential claims against Hotwire which do not advance Defendant's defense of *Plaintiff's* claim.    In total he billed $3,013, and Defendant should not recover for his time.

e.   Defense Counsel Spent An Unreasonable Amount of Time Preparing for Mediation

Excluding the mediator's fees, Defense counsel spent $3,871.25 on the mediation.  This includes eight hours for drafting a mediation statement that should not have been more than a one or two page letter, which should have taken no longer than hour, and travel time to the mediation.  The mediation lasted approximately five hours. Lipscomb Decl., at ¶ 15.  Even if he spent three hours to prepare, the fees would only have been $1,720.  Anything more than that is unreasonable and should be denied.

f.   Staffing Four Attorneys (Including One Unidentified Attorney) on this Matter Was Unreasonable

Staffing four lawyers on a case where the parties' first communication was "do not spend money, your client will likely be dismissed" is unreasonable.  One of those four attorneys is not even identified in Defendant's motion for fees.  Therefore, at a minimum, their rate should be reduced to that of an entry level attorney.[13]  *See Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1375 (M.D. Fla. 2010) (reducing rate of unidentified paralegal to entry level paralegals).  Respectfully, a competent sixth year attorney should not have needed assistance on this case.  As examples, this includes conferencing on Oct. 8, 2012 over whether to grant an extension and on Nov. 16, 2012 conferencing over a simple joint scheduling report.  Therefore,

---

[13] See Invoice 9, entry on April 4, 2013, for $431.25.  Entry level attorneys charge $125.  The entry should be reduced to $156.25.

Malibu respectfully requests that the Court write off all but Fernando Ferriero's time.  *See Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1293 (S.D. Fla. 2008) *aff'd*, 323 F. App'x 829 (11th Cir. 2009) (writing off unnecessary lawyer's time.)  Lawyers other than Mr. Ferriero billed $4,501.75.

g.   The Invoices Demonstrably Establish Fraudulent Overbilling

Defense counsel fraudulently overbills by 100% for each small task.  Indeed, despite 178 different billing entries, the bulk of which consist of reviewing and drafting e-mails, Defendant never billed 1/10th for anything.  *See e.g.* Dec. 11, 2012 "Draft e-mail to opposing counsel inquiring into whether any additional information received from Hotwire", .20 hours, $43.00.  The e-mail states: "Keith: Please advise if you have received any additional information from Hotwire regarding the above-referenced matter."  This e-mail could not have taken more than thirty seconds to draft.  Billing .2 is fraudulent.  There are *innumerable* other examples.  *See e.g.*, Dec. 21, 2012 "Receipt and review of e-mail from opposing counsel consenting to extension of deadline to Answer", .20 hours, $43.00.[14]   The e-mail was one paragraph.  Considering each 1/10 equates to $24.00, overbilling by 1/10th for each small task adds up to a lot of money.  Moreover, since Defense counsel automatically overbills by 100% for each small task, it casts serious doubt about the veracity of larger entries all of which appear to be grossly inflated.

Here, Defendant spent $4,386 on routine e-mails the time for which were all grossly inflated.  He should not recover the great bulk of this money.  *See Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1295-96 (S.D. Fla. 2008) *aff'd*, 323 F. App'x 829 (11th Cir. 2009) (reducing fees when "Plaintiffs' counsel's time sheet [was] replete with entries of .1 hour or .2 hours for tasks that could not possibly take that amount of time. . . . [e.g.,]  twelve minute billing periods for such things as reviewing an Order.")

5.   Defense Counsel Charge For Clerical Work At Attorney Rates and Seek To Recover For "Block Entries" Commingling Attorney and Clerical Work

Defense counsel routinely bills for clerical work.  These billings should be deducted.  *See Machado v. Da Vittorio, LLC*, 2010 WL 2949618 (S.D. Fla. July 26, 2010) ("where the work performed was purely clerical … those hours have been excluded from any fee award"); *Manriquez v. Manuel Diaz Farms, Inc.*, 2002 WL 1050331 (S.D. Fla. May 23, 2002) (same).

---

[14] *See* E-mail as Exhibit X which consisted of a paragraph.

17

Examples include: Aug. 23, 2012: "attend to scheduling a client meeting"; Sept. 21, 2012 "attend to filling"; on Oct. 16, 2012 "attend to filing"; on Oct. 22, 2012 "Draft followup E-mail confirming time to discuss case status"; on Oct. 26, 2012 "Attend to filing"; Dec. 12, 2012 "Receipt and review e-mail from client Re deposition dates; Draft follow up E-mail to client re same"; on Jan. 7, 2013 "Draft e-mail to client re Motion to Dismiss status and scheduling of deposition"; on Feb. 20, 2013 "Attend to filing Answer"; etc.  These objections are fully set forth on Exhibit T and total $3,719.50.

      6.   <u>Defendant Should Not Be Awarded Any Fees Following Malibu's $13,000 Offer</u>

Despite believing Defendant was not entitled to *any* fees, on April 11, 2013 Plaintiff offered Defendant $13,000 to settle the fee dispute.  After deducting unreasonable and fraudulent billing, it is highly unlikely Defendant's bill would have reached $13,000 at that time.  If the Court determines, as Plaintiff respectfully suggests that it should, that Defendant was not entitled to more than $13,000 on April 11, 2013 then it should not award Defendant any fees for time spent after that.  To explain, "'[s]ubstantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees, even where Rule 68 does not apply.'"  *Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000) (citation omitted.)  "Attorney's fees accumulated after a party rejects a substantial offer provide minimal benefit to the prevailing party, and thus a reasonable attorney's fee may be less than the lodestar calculation."  *Id.*  "An offer is substantial if, as in this case, the offered amount appears to be roughly equal to or more than the total [amount due to the] prevailing party."  *Id.*  "In such circumstances, a district court should reflect on whether to award only a percentage (including zero percent) of the attorney's fees that were incurred after the date of the settlement offer."  *See also Gilfand v. Planey*, 2012 WL 5845530, *16 (N.D. Ill. 2012) ("Reducing the award is especially warranted here because the rejected offer would have settled the fee litigation. . . . At some point, the time attorneys expend to unsuccessfully advocate a higher award must be borne by the attorneys themselves.")

      7.   <u>Defendant Improperly Seeks Reimbursement of Expenses</u>

"'Costs' are not to be equated with expenses. They are (with limited exceptions) a term of art defined by 28 U.S.C. § 1920."  *Abbott Laboratories v. Granite State Ins. Co.*, 104 F.R.D. 42, 43 (N.D. Ill. 1984).  The Federal Costs statute specifically identifies recoverable costs.  *See* 28 U.S.C. § 1920 (Exhibit Y); see also *Dream Custom Homes, Inc. v. Modern Day Const., Inc.*, 8:08-CV-1189-T-17AEP, 2011 WL 7764999 (M.D. Fla. July 12, 2011) (noting costs under the

Copyright Act should be analyzed by 28 U.S.C. § 1920). Defendant has not identified any costs recoverable under this statute.[15] Instead, at the end of each of Defense counsel's invoices is an "[a]dministrative charge of 5% of total fees for long distance telephone charges, facsimiles, standard postage, photocopies, etc." Defendant should not be awarded these expenses. *See State, Dep't of Transp. v. Skidmore*, 720 So. 2d 1125, 1131 (Fla. Dist. Ct. App. 1998) (Fixed % cost surcharge is not recoverable). Defendant also impermissibly seeks to recover expenses for mediation, parking; and legal research. *See Smith v. Reliance Standard Life Ins. Co.*, 2004 WL 2980683, *3 (S.D. Fla. 2004) ("Mediation is not compensable under 28 U.S.C. § 1920"); *R.L. v. Miami-Dade Cnty. Sch. Bd.*, 07-20321-CIV, 2013 WL 2157156, *13 (S.D. Fla. May 17, 2013) ("there is no statutory authority for taxing the costs of … 'parking,'"); *Corsair Asset Mgmt., Inc. v. Moskovitz*, 142 F.R.D. 347, 353 (N.D. Ga. 1992) (disallowing legal research costs). In total, Defendant seeks to recover $2,930.48 for expenses which are not defined as costs by 28 U.S.C. § 1920.

### C. **Defendant's Request for Sanctions Under 28 U.S.C. § 1927 Is Frivolous**

Defendant's assertion that attorney's fees against Plaintiff's counsel are proper under 28 U.S.C. § 1927 is frivolous. The 11th Circuit has stated that "the plain language of the statute imposes three essential requirements for an award of sanctions under § 1927[.]" *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).

> First, the attorney must engage in "unreasonable and vexatious" conduct. Second, that "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings." Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.,* the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

*Id. citing Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir.1997). "The provisions of § 1927 are strictly construed." *Abreu v. Alutiiq-Mele, LLC*, 2012 WL 4369734 at *15 (S.D. Fla. 2012). *See also Doria v. Class Action Servs., LLC*, 261 F.R.D. 678, 686 (S.D. Fla. 2009) (denying motion for sanctions under § 1927 where the court was "cognizant of the high standard for an award of sanctions . . . [and unable to] conclude that the conduct of Plaintiffs' counsel are so egregious and in bad faith as to warrant the imposition of Section 1927 sanctions."). "To merit § 1927 sanctions, something more than a lack of merit is required." *Abreu supra*, 2012 WL

---

[15] Pursuant to L.R. 7.3(c) Defendant also failed to follow proper procedure for an award of costs and, as such, should not be awarded any costs.

4369734 at at *16.  Here, Malibu reasonably wanted to take one deposition for proper purposes. This was not egregious or done in bad faith but to the contrary furthered in the interests of the Copyright Act.  Everything following that deposition was aimed at resolving this fee dispute, and at all times Malibu has acted in good faith.

## VI.   CONCLUSION

For the reasons set forth above, awarding fees would not be consistent with the interests of the Copyright Act or equitable.  Accordingly, Plaintiff respectfully requests that the Court deny Defendant's motion.

Dated: July 24, 2013

Respectfully submitted,

By: /s/ M. Keith Lipscomb
M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd., Suite 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ M. Keith Lipscomb

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No.: <u>1:12-cv-22768-PAS</u> |
| | ) | |
| v. | ) | |
| | ) | |
| LEO PELIZZO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>**DECLARATION OF COLETTE FIELD**</u>

**I, COLETTE FIELD, DO HEREBY DECLARE:**

1.      I am over the age of eighteen (18) and otherwise competent to make this declaration.

2.      The facts stated in this declaration are based upon my personal knowledge and, if called upon to do so, I will testify that the facts stated herein are true and accurate.

3.      My husband Brigham Field and I own Malibu Media d/b/a as X-Art.com.  We began our business from scratch.

4.      I was a real estate agent and my husband was a photographer.

5.      When the real estate market started heading south I knew we needed to start a business together.

6.      Brigham and I both felt that there was a lack of adult content that was beautiful and acceptable for women and couples.  We wanted to create this type of content to satisfy what we hoped was an unfulfilled demand.

7.      Our goal was to create erotica that is artistic and beautiful.

1

**EXHIBIT A**

8.     We chose the name 'X-Art' to reflect our artistic aspirations, and began investing all of our available money and resources into the production of content – particularly erotic movies with high production value and a cinematic quality.

9.     We distribute our product through a subscription based website, www.x-art.com.

10.     No other person or entity has or can claim an ownership interest in the copyrights.

11.     Brigham and I are currently and always have been the sole owners of Malibu Media, LLC and its predecessor, our partnership.

12.     Our customers can pay us a monthly recurring subscription fee of $24.95, or an annual subscription fee of $99.95 to access our entire library of HD Video content.

13.     The overwhelming majority of our revenue and profits from X-Art.com is from subscription sales.

14.     As our business has grown our production value has also grown. We spend over two million dollars a year producing content, and millions more each year to run our business.

15.     Currently we have tens of thousands of members, but we are finding it hard to grow and maintain the memberships as so many people are finding our films for free.

16.     Each month, approximately 80,000 U.S. residents use BitTorrent to steal our movies.

17.     For the first 3 years (when our site was not as popular) we didn't have as many issues with piracy. Now, that our videos are highly desirable, more people steal our videos than pay for a subscription.

18.    We are even getting many complaints from our members (asking why they should pay when they are available for free on the torrents).

19.    We feel people are unlawfully using valuable bandwidth (therefore money) from all people who use the Internet for lawful purposes, while making it harder for film producers, photographers, musicians, writers, designers (the kind of people our business depends on) to make a living.

20.    We must protect our copyrights in order to survive and to hope for any growth.

21.    Brigham and I have gone over our options many times and we realize that the only way we can protect our business and our ability to sell subscriptions is to go after the people who are stealing from us.

22.    Our litigation efforts are aimed at deterring infringement and obtaining reasonable compensation from infringers.

23.    We have no desire to settle with innocent subscribers.

24.    Our intention is not to cause financial hardship (this is very important to us); however, we want to deter infringement and be compensated for the intentional theft of our videos.

25.    Brigham and I have repeatedly asked our attorneys to listen to exculpatory evidence and be prudent and use caution when pursuing our claims. And, I believe our attorneys are doing their best to enforce our copyrights in a lawful and appropriate manner.

26.    We do not pursue our claims against all Doe Defendants. For example, once receiving discovery, we may learn that some Doe Defendants are on active duty in the

3

military, a coffee shop with open wireless, or have some other circumstance that would prevent us from pursuing our claims.

27.   We invest significant resources into pursuing all types of anti-piracy enforcement, such as Digital Millennium Copyright Act ("DMCA") takedown notices and direct efforts aimed at infringing websites.

28.   Despite sending thousands of DMCA notices per week, the infringement continues.   And, if one searches for "X-Art" on a torrent website the site will reveal thousands of unauthorized torrents available for free.

29.   We have _never_ authorized anyone to put our works on a torrent website.

30.   I firmly believe that we must exercise our rights under the Copyright Act to prevent infringement.   Otherwise, we face an immediate and serious risk.   We cannot compete against free copies of our works.

31.   We do not seek to use the Court system to profit from the infringement like some have suggested.   As previously stated, revenues from subscriptions to X-Art.com are by far and away the dominant driver of Malibu Media's business.   We want the infringement to stop.   Accordingly, the purpose of these lawsuits is to motivate people to pay for subscriptions by deterring infringement and seek some reasonable compensation for the massive amount of infringement of our copyrights.

32.   Without these suits, I believe infringers would feel free to steal our movies without consequence.

33.   On June 10, 2013, we became the first Plaintiff to ever try a BitTorrent copyright infringement case.   It was termed the "Bellwether" case.

34.   The Bellwether case ended with final judgments in our favor against all three

defendants.

35.    In conclusion, we want the courts to know that we are a small business and we need the law to be enforced to ensure our survival. It is getting more difficult for us every day and we hope that in the future there will be a better way to protect our copyrights.

36.    We are passionate about our work and our business.  For us, this is the American Dream!

37.    It is our hope that by upholding the law, the courts will protect our ability to continue with our dream and allow all creative people the ability to make a living by distributing their work in this fast-paced digital age.

38.    Thank you in advance for your time and consideration of this matter, please do not hesitate to ask if we can clarify any further questions.


**FURTHER DECLARANT SAYETH NAUGHT.**

**DECLARATION**

PURSUANT TO 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


**COLETTE FIELD**

By: _____

# EXHIBIT B

The audio files for the Bellwether Trial may be found on the docket for case *Malibu Media, LLC v. John Does 1, 13, 14, and 16*, Case No. 2012-2078, at CM/ECF Nos. 195 and 196.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No.: <u>1:12-cv-22768-PAS</u> |
| | ) | |
| v. | ) | |
| | ) | |
| LEO PELIZZO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>DECLARATION OF PATRICK PAIGE</u>

**I, PATRICK PAIGE, DO HEREBY DECLARE:**

1.     I am over the age of eighteen (18) and otherwise competent to make this declaration. The facts stated in this declaration are based upon my personal knowledge.

2.     I was a police officer from 1989 until 2011 for the Palm Beach County Sherriff's Department. And, from 2000-2011, I was a detective in the computer crimes unit.

3.     As a detective in the computer crimes unit, I investigated internet child pornography and computer crime cases.

4.     I have conducted forensic computer examinations for:

   (a)     Broward County Sheriff's Office (BSO);

   (b)     Federal Bureau of Investigation (FBI);

   (c)     U.S. Customs and Border Protection (CBP);

   (d)     Florida Department of Law Enforcement (FDLE);

   (e)     U.S. Secret Service;

   (f)     Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF); and

   (g)     Various municipalities in the jurisdiction of Palm Beach County.

1

5.       I was also previously assigned to a police unit working in conjunction with TLO Corp., which is a private company.

6.       When I worked with TLO Corp., I supervised the other detectives assigned to the unit, which was consisted of six online investigators and two computer forensic examiners.

7.       I am familiar with software programs used to investigate computers, including EnCase and Access Data.

8.       I have taken over 400 hours of courses designed to teach people how to investigate computers.

9.       Also, while working from 2003-2011 for Guidance Software, the makers of EnCase, I have taught over 375 hours of courses in computer forensics ranging from beginner to advanced levels.

10.      I have had students in my courses from various government branches, including: (a) sheriff's offices; (b) FBI agents; (c) ATF agents; (d) agents from the Central Intelligence Agency, and (e) individuals from other branches of government and the private sector.

11.      After leaving the Palm Beach County Sherriff's office, I founded Computer Forensics, LLC, where I am currently employed.

12.      I have received the following awards and commendations:

(a)      1991 – Deputy of the Year, awarded by the 100 Men's Club of Boca Raton & Rotary Club.

(b)      1997 – Deputy of the Month for June.

(c)      2001 – Detective of the Month for October.

(d)      2002 – Outstanding Law Enforcement Officer of the Year, awarded by the United States Justice Department for work in the *U.S. vs. Jerrold Levy* case.

(e)  2003 – U.S. Customs Service Unit Commendation Citation Award for computer forensic work in Operation Hamlet. Operation Hamlet was one of the largest rings in the history of U.S. Customs of individuals who were molesting their own children, and transmitting the images and video via the Internet.

(f)  2005 – Detective of the Month for December.

(g)  2007 – Outstanding Law Enforcement Officer of the Year, awarded by the United States Justice Department for work in the *U.S. vs. Jimmy Oliver* case.

(h)  2008 – Letter of Commendation issued by the FBI for outstanding computer forensic work in the *U.S. vs. Frank Grasso* case.

13.   I have been called to testify as a fact and expert witness on numerous occasions in the field of computer forensics in both trial-level and appellate proceedings before state, federal, and military courts in Florida, California, New Jersey, and New York.

14.   No court has ever refused to accept my testimony on the basis that I was not an expert in computer forensics. My skill set and my reputation are my most important assets in my current position with Computer Forensics, LLC.

15.   With regard to my experience investigating child pornography cases, I supervised police officers whose responsibility it was to establish a successful TCP/IP connection with persons who were sending pornographic images of children or other illegal content over the Internet.

16.   The offenders' IP addresses, as well as the dates and times of the illegal transmission were recorded.

17.   An officer would then request that the assistant state attorney subpoena the corresponding ISPs for the purpose of identifying the subscribers that were transmitting the illegal content.

18.     In these cases, the subscribers were not notified by the ISPs that their identity was being subpoenaed because they could have deleted the images and destroyed the data.

19.     After receiving the subscribers' identities, we would prepare a search warrant that would authorize us to enter the subscribers' dwelling and seize all of their computer devices.

20.     I was directly involved in approximately 200 search warrants either by way of managing the process or performing it personally.

21.     I can recall only one instance in all the times that we executed a search warrant and seized computers where we did not find the illegal content at the dwelling identified in the search warrant.

22.     In that one instance, the Wi-Fi connection was not password protected, and the offender was a neighbor behind the residence.

23.     I never came across a Wi-Fi hacker situation.

24.     In my opinion, a child pornographer has a greater incentive to hack someone's Wi-Fi connection than a BitTorrent user because transmission of child pornography is a very serious crime with heavy criminal penalties, and many offenders can face life sentences if convicted.

25.     I tested IPP Limited's IP detection process.

26.     To do so, I downloaded four public domain movies from the national archive.

27.     I then encoded text into the videos, so that I would know whether someone that downloaded that particular movie downloaded the version of the movie that I created.

28.     I then rented four virtual servers, each of which was connected to the Internet and used a unique IP addresses.

29.     I then configured the servers so that all of them were running Windows 2008 server edition, and I put a different BitTorrent client onto each server.

30.     A BitTorrent "client" is software that enables the BitTorrent protocol to work.

31.     After installing the BitTorrent clients, I also installed Wireshark onto each server. "Wireshark" is a program that captures network traffic and creates PCAPs, just as TCP Dump, which IPP Limited uses, does.   A PCAP is like a video recording of all the incoming and outgoing transactions of a computer.

32.     After installing Wireshark onto each of the servers, I transferred the movies from my local computer to the servers.

33.     I then used the BitTorrent clients on each of the servers to make .torrent files.  I uploaded these .torrent files onto various torrent websites.

34.     I then informed IPP of the movie names.  Thereafter, IPP sent me screen captures of the movies I had seeded.

35.     The screen captures sent by IPP had my codes on them; thus, I knew that IPP had caught the movies I had seeded.

36.     IPP also sent me additional data identifying the IP Address used by each of the four servers, and sent me PCAPs.

37.     I reviewed IPP's PCAPs vis-à-vis the PCAP log files created by each of my test servers, and determined that IPP's PCAPs match my PCAPs.  This could not have happened unless IPP's server was connected to the test server because the transactions would not match.

38.     From this test, I concluded that IPP's software worked, and had a subpoena been issued for my IP addresses, it would have revealed my identity.

**FURTHER DECLARANT SAYETH NAUGHT.**

## DECLARATION

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on this 24th day of July, 2013.

By: Patrick Paige

Digitally signed by Patrick Paige
DN: cn=Patrick Paige, o=Computer Forensics LLC,
ou, email=patrick@patrickpaige.com, c=US
Date: 2013.07.24 19:16:51 -04'00'

**PATRICK PAIGE**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MALIBU MEDIA, LLC,                    )
                                      )
      Plaintiff,                    )          Civil Case No.: <u>1:12-cv-22768-PAS</u>
                                      )
v.                                    )
                                      )
LEO PELIZZO,                          )
                                      )
      Defendant.                    )
_____)

## DECLARATION OF TOBIAS FIESER

### I, TOBIAS FIESER, DO HEREBY DECLARE:

1.      I am over the age of eighteen (18) and otherwise competent to make this declaration. The facts stated in this declaration are based upon my personal knowledge.

2.      I studied Business Infomatics, which is akin to information technology (IT), from 2007-2010 at Hochschule Karlsuhe in Germany.

3.      I am employed by IPP, Limited ("IPP"), a company organized and existing under the laws of Germany, in its litigation support department.

4.      Among other things, IPP is in the business of providing forensic investigation services to copyright owners.

5.      As part of my duties for IPP, I routinely identify the Internet Protocol ("IP") addresses that are being used by those people that are using the BitTorrent protocol to reproduce, distribute, display or perform copyrighted works.

6.      I have three primary functions at IPP:

      (a)      I verify that the movie files downloaded using the BitTorrent protocol are copies of the original works produced by our clients;

1

# EXHIBIT D

            (b)     I send our clients or the attorneys that represent them infringement data;
and

            (c)     I verify that the exhibits depicting infringing transactions that are created
by attorneys accurately reflect what is on IPP's servers.

       7.     Malibu Media retained IPP to identify the IP addresses that are being used by
those persons that are using the BitTorrent protocol and the internet to reproduce, distribute,
display or perform Malibu's copyrighted works.

       8.     IPP tasked me with implementing, monitoring, analyzing, reviewing and attesting
to the results of the investigation.

       9.     I viewed the movie files transmitted through BitTorrent that are covered by the
copyrights at issue (the "Copyrights-in-Suit") in this case.

       10.    During the performance of my duties, I used forensic software named
INTERNATIONAL IPTRACKER v1.2.1 and related technology enabling the scanning of peer-
to-peer networks for the presence of infringing transactions.

       11.    INTERNATIONAL IPTRACKER vl.2.1 was correctly installed and initiated on a
computer server.

       12.    I personally extracted the resulting data emanating from the investigation.

       13.    After reviewing the evidence logs, I isolated the transactions and the IP addresses
being used on the BitTorrent peer-to-peer network to reproduce, distribute, display or perform
Plaintiff's copyrighted works associated with the Unique Hash number.

       14.    As set forth on Exhibits "A" and "B" to the Complaint, IPP, Limited ("IPP")
established a TCP/IP connection with a computer (the "Infringer's Computer") using
Defendant's IP address.

15.     As further set forth on the above Exhibits, the Infringer's Computer sent IPP pieces of computer files that correlate (as evidenced by identical cryptographic hash values) to copies of the works covered by the Copyrights-in-Suit.

16.     IPP's software analyzed each BitTorrent "piece" distributed by Defendant's IP address and verified that reassembling the piece(s) using a specialized BitTorrent Client results in fully playable digital motion pictures.

17.     The primary and intended purpose of using BitTorrent is to obtain a complete and usable file.

18.     The nature of the BitTorrent protocol provides for continuous seeding and distributing of a file long after it has downloaded.  Without stopping the program by physically un-checking the automatic seeding, an alleged infringer will seed and distribute a movie for an extended period of time.

19.     I was provided with control copies of the works covered by the Copyrights-in-Suit.  I viewed the works side-by-side with the digital media files identified by those Unique Hash Numbers which correlate to the copies of the works covered by the Copyrights-In-Suit and determined that each of the digital media files contained a movie that is identical, strikingly similar or substantially similar to the works covered by the Copyrights-in-Suit.

20.     IPP employee Daniel Macek also verified that the digital media files sent from the Infringer's Computer correlated to copies of the works covered by the Copyrights-in-Suit. This was done pursuant to IPP policy, which does not allow for IPP to provide infringement data to clients unless and until a movie file has been verified as a copy by two different people.

21.     Daniel Macek and I are the employees of IPP that always verify that movies files are copies for Malibu Media.

3

22.     Before this suit was created, IPP sent Malibu Media's counsel, Lipscomb, Eisenberg & Baker, PL ("LEB"), infringement data.

23.     LEB then sent to me proposed declarations in support of this suit with attached exhibits.

24.     I then verified that the information contained on these exhibits was accurate by taking the Microsoft Word documents sent to me by LEB and cutting and pasting the information in them into a Microsoft Excel document, which I then uploaded into IPP's computer system.

25.     If all of the information was correct in the Microsoft Word document, IPP's program displays a green light on my computer screen, which occurred in this case with respect to Exhibits A and B to the Complaint.

**FURTHER DECLARANT SAYETH NAUGHT.**

**DECLARATION**

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 24th day of July, 2013.

By: _____
**TOBIAS FIESER**

4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| | ) |
| Plaintiff, | )  Civil Case No.: 1:12-cv-22768-PAS |
| | ) |
| v. | ) |
| | ) |
| LEO PELIZZO, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DECLARATION OF MICHAEL PATZER**

**I, MICHAEL PATZER, DO HEREBY DECLARE:**

1.     I am over the age of eighteen (18) and otherwise competent to make this declaration. The facts stated in this declaration are based upon my personal knowledge.

2.     I have worked in the information technology (IT) business since 1999.

3.     I have designed, created, implemented and now monitor the software and servers that IPP uses to detect infringers of intellectual property over the Internet.

4.     Plaintiff, Malibu Media, LLC ("Malibu Media") is a client of IPP.

5.     Malibu Media relied on IPP's software to detect the infringer in this case.

6.     It took over one year to develop the software used by IPP in this case.

7.     The process of using the software first begins when our clients provide IPP with the names of their copyrighted works.

8.     IPP's software then scans the index of torrent websites for possible matches using a lexical search.

9.     If IPP's servers find a possible match, the computer file associated with the .torrent file is downloaded, and the logging process begins.

1

# EXHIBIT E

10. During this process, IPP cannot distribute pieces of data back into the BitTorrent swarm because the software does not have the capability to upload or distribute data.

11. Although generally when using BitTorrent, a user must upload data in order to be able to download data, IPP is able to download data without uploading by constantly joining swarms as a new peer.

12. This works because when a peer first joins a swarm, the peer does not have any data to distribute. So, the BitTorrent Protocol requires that new peers in a swarm receive some data.

13. After a possible match is found through a lexical search, IPP immediately starts downloading the computer file associated with the .torrent file, and logging transactions

14. "Logging transactions" means that IPP's servers start requesting data from the possible infringers, and storing that information on a database server.

15. IPP also saves the transactions on a WORM tape drive. "WORM" stands for write-once-read-many, which means that one can only write to the tape drive once, but the tape drive can be read many times. In this manner, modification of what is written onto the WORM tape drive is impossible.

16. The transactions are saved in a type of computer file known as a PCAP file. "PCAP" stands for Packet Capture, and the type of "packet" being captured is a data packet.

17. IPP uses a program called TCP-Dump to create PCAPs. TCP-Dump records all of the network transactions that a server receives and transmits.

18. In this manner, TCP-Dump works like a video camera recording all of the ins-and-outs of transactions to and from IPP's servers.

2

19.     IPP also saves the downloaded computer files which correlate to the .torrent files onto the WORM tape drive.

20.     The WORM tape drives receive a time stamp issued by the German government. This time stamp is recorded on the WORM tape drive within twenty-four hours after a PCAP file is placed on the drive.

21.     This time stamp proves that the data was actually written at that time.

22.     IPP uses approximately 150 servers and two tape robots.

23.     In terms of security certifications, IPP fulfills the security standard used by companies for processing credit card data.

24.     It is important that IPP's servers have the correct time because ISPs use that data to correlate the alleged infringement to a subscriber.

25.     The clocks for IPP's servers are set using GPS time, as set by two dedicated GPS servers and by an atomic clock.

26.     If the time for IPP's servers is different from either the GPS time or the atomic time by any more than one hundredth (0.01) of one second, IPP does not log the transaction.

27.     The specific length of time IPP's system is set up to maintain a connection during each transaction with an alleged infringer is two seconds before and two seconds after data is transferred.

28.     Accordingly, since the time for IPP's servers is never inaccurate by more than a hundredth (0.01) of one second, and IPP maintains connections for more than four seconds, I am confident that with the information IPP provides to ISPs, the ISPs are able to accurately correlate the detected infringement to a particular subscriber.

3

29.    After IPP's WORM tape drives are filled with data, they are stored in a data security safe.

30.    A "hash value" is the finger print of a piece of data.  Every unique piece of data has a different hash value.

31.    With regard to how BitTorrent works generally, a .torrent file contains three main things: (a) the name that the initial seeder gave to the .torrent file; (b) an index of all of the pieces of data associated with the .torrent file; and (c) a description of where the tracker is located, if there is one, or a specification that the tracker is decentralized.

32.    The whole .torrent file has a hash value, and each piece of data associated with the .torrent file has a hash value.

33.    An "initial seeder" is the person who creates the .torrent file and uploads it to a torrent website, and that is the first person who shares all of the pieces of data associated with the .torrent file.

34.    In this manner, all the pieces of data which are transferred between or among peers in a BitTorrent swarm were first distributed by the initial seeder.  Put another way, all of the pieces trace directly back to the initial seeder.

**FURTHER DECLARANT SAYETH NAUGHT.**

## DECLARATION

**PURSUANT TO 28 U.S.C. § 1746,** I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 24th day of July, 2013.

By:_____

**MICHAEL PATZER**

4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No.: <u>1:12-cv-22768-PAS</u> |
| | ) | |
| v. | ) | |
| | ) | |
| LEO PELIZZO, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

<u>**DECLARATION OF M. KEITH LIPSCOMB, ESQ.**</u>

**I, M. KEITH LIPSCOMB, DO HEREBY DECLARE:**

1.      I am over the age of eighteen (18) and otherwise competent to make this declaration.  The facts stated in this declaration are based upon my personal knowledge.

2.      At the time Plaintiff filed this case, IPP, Ltd. Detected the infringer stealing 14 movies a total of 337 times.

3.      By January 2013, when the infringement stopped, the infringer had stolen 25 movies and been detected a total of 549 times.

4.      The infringer likely moved.  Indeed, in 2013, after the infringement stopped, Plaintiff could not find another Miami Hotwire subscriber committing as much infringement.

5.      This is the first and only case where Malibu's counsel believes an ISP made a correlation error.

6.      Undersigned has personally been assured by *numerous* ISPs that their lookups are accurate and reliable.

7.      LEB's records indicate that calls were placed to Defendant on April 6, 2012, April 10, 2012, April 17, 2012, May 21, 2012, June 4, 2012, and August 14, 2012.

# EXHIBIT F

8.     Defendant could have asked Malibu to stipulate to a motion to amend the Complaint and allow him to proceed anonymously.  Malibu would have agreed. Indeed, Plaintiff has allowed other defendants to proceed anonymously even after naming them.

9.     Malibu deposed Hotwire for two reasons: (a) to ascertain if and how the correlation error occurred; and (b) and to determine if it would be possible to identify the infringer.

10.     To reduce Defendant's fees, Plaintiff drafted the Rule 26(f) Report.  And, both motions to enlarge the time within which *Defendant* had to respond to the Complaint.

11.     Hotwire's deposition was rescheduled for March 13, 2013 to coincide with four other depositions I took in another matter near Philadelphia.

12.     Immediately after the Hotwire deposition, I offered to voluntarily dismiss Defendant with prejudice.  The offer was contingent on mutual releases.

13.     On April 4, 2013, the parties attended mediation.

14.     At the mediation, I again advised Defendant that Malibu would be dismissing the case.

15.     The mediation lasted approximately five hours.

16.     The focus of all the negotiations was on how much Malibu would pay in fees.

17.     Significantly, I did not and do not believe Defendant is entitled to *any* fees but Malibu made offers genuinely attempting to compromise.

18.     Malibu *never* demanded money from Defendant.

19.     I drafted the opposition to Defendant's motion to dismiss and sent it to attorney Emilie Kennedy for proof reading and filing.

**FURTHER DECLARANT SAYETH NAUGHT.**

## <u>DECLARATION</u>

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury under the

laws of the United States of America that the foregoing is true and correct.

Executed on this 24th day of July, 2013.


By:   _/s/ M. Keith Lipscomb_____

            **M. KEITH LIPSCOMB, ESQ.**

Page 1

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
- - -

MALIBU MEDIA, LLC,          :      Civil Action
                            :No. 1:12-cv-22768-PAS
              Plaintiff,    :
                            :
         vs.                :
                            :
MARK FITZPATRICK,           :      ORIGINAL
                            :
              Defendant     :

- - -

TUESDAY, JULY 9, 2013
PHILADELPHIA, PENNSYLVANIA

- - -

Virtual Videoconference Deposition of

LAURIE M. MURPHY, taken pursuant to Notice, at

Veritext Mid-Atlantic Region, 1801 Market

Street, Suite 1800, commencing at

approximately 11:45 p.m., on the above date,

before Rose A. Tamburri, RPR, CM,

CCR, CRR, USCRA Speed and Accuracy Champion

and Notary Public.

- - -

VERITEXT NATIONAL COURT REPORTING COMPANY

**EXHIBIT G**

Page 19

|   |   |   |
|---|---|---|
| 1 | LAURIE M. MURPHY - CROSS | |
| 2 | tracking that information. | 12:01:45 |
| 3 | BY MR. LIPSCOMB: | 12:01:54 |
| 4 | Q.   Does Hotwire respond to subpoenas in | 12:01:55 |
| 5 | criminal cases -- | 12:01:59 |
| 6 | A.   Yes. | 12:02:00 |
| 7 | Q.   -- seeking to correlate an IP address | 12:02:01 |
| 8 | to a human? | 12:02:03 |
| 9 | A.   Yes. | 12:02:03 |
| 10 | Q.   And those are very serious matters; | 12:02:06 |
| 11 | correct? | 12:02:10 |
| 12 | A.   Yes. | 12:02:10 |
| 13 | Q.   And so Hotwire takes its obligation | 12:02:11 |
| 14 | to perform this task and respond to lawful | 12:02:13 |
| 15 | subpoenas seriously; right? | 12:02:18 |
| 16 | A.   Of course. | 12:02:20 |
| 17 | MR. LIPSCOMB:  All right.  I have | 12:02:23 |
| 18 | no further questions at this time, but I might | 12:02:23 |
| 19 | have, after Kubs goes through his -- I guess | 12:02:26 |
| 20 | you can call it cross. | 12:02:32 |
| 21 | MR. LALCHANDANI:  Yeah. | 12:02:33 |
| 22 | MR. LIPSCOMB:  After my direct. | 12:02:34 |
| 23 | CROSS-EXAMINATION | |
| 24 | MR. LALCHANDANI:  Hi, Miss Murphy. | 12:02:35 |
| 25 | Thank you for being here.  I -- I know it's a | 12:02:37 |

Veritext Florida Reporting Co.



**Hotwire**
COMMUNICATIONS

VIA FAX: **786-431-2229**                    PAGE(S): ___1 OF 1___
                                            (including cover page)

DATE: April 5, 2012

TO:    Lipscomb Eisenberg & Baker, PL

     RE:    SUBPOENA for Identities of Certain IP Addresses
            Malibu Media, LLC v. John Does 1-347
            Case No. 12-01794 CA 13, Miami-Dade Circuit Court

Per the subpoena dated February 20, 2012, related to the above-entitled action, below is the
information Hotwire located for the following IP addresses:

IP address: 24.238.22.207

| | |
|---|---|
| Name: | Leo Pelizzo |
| Street Address | 1900 N. Bayshore Drive, Unit 2212 |
| City, State, ZIP: | Miami, FL  33132 |
| Primary Phone: | 786-543-9230 |
| email: | leopelizzo@gmail.com |
| Authorized Users: | Leo Pelizzo is Account Holder; Hotwire does not maintain individual records of users of Internet. |

| | |
|---|---|
| Name: | ████ |
| Street Address | ████ |
| City, State, ZIP: | ████ |
| Primary Phone: | ████ |
| email: | ████ |
| Authorized Users: | ████ |

IP address: ████
IP address: ████

COMMENTS:   This information is accurate to the best of Hotwire's ability to identify Hotwire
subscribers who use dynamic or wireless Internet connections at any particular time.

Please let me know if you have questions or require further information.

Best regards,

Laurie M. Murphy
Assistant General Counsel
Direct: 610-726-1192

300 E. Lancaster Avenue, Suite 208, Wynnewood, PA 19096 - Telephone: 800-355-5668

# EXHIBIT H

IN THE CIRCUIT COURT OF THE 11th
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO. **12-01794 CA 13**

MALIBU MEDIA, LLC, a California
corporation, and RAW FILMS, LTD.,

       Plaintiffs,

vs.

JOHN DOES 1-347,

       Defendants.

_____/

### ORDER GRANTING MOTION FOR INTERNET SERVICE PROVIDERS
### TO DISCLOSE IDENTIFYING INFORMATION OF UNKNOWN DEFENDANTS

This cause, having come before this Court on Plaintiff's Motion for Internet Service

Providers to Disclose Identifying Information of Unknown Defendants ("Motion"). The Court

has reviewed the Motion, the Memorandum of Law filed in support thereof, and being otherwise

duly advised in the premises, it is hereby,

       **ORDERED AND ADJUDGED** as follows:

    1.    The Motion is Granted.

    2.    Plaintiff may serve each of the ISPs listed on Exhibit A to the Complaint with a

subpoena commanding each ISP to provide Plaintiff with the true name, address, telephone

number, e-mail address and Media Access Control ("MAC") address of the Defendant to whom

the ISP assigned an IP address as set forth on Exhibit A of the Complaint. Plaintiff shall attach to

any such subpoena a copy of this Order.

    3.    Plaintiff may serve a subpoena in the same manner as above on any ISP that is

identified in response to a subpoena as a provider of internet services to one of the Defendants.

1

# EXHIBIT I

4.    Each of the ISPs that qualify as a "cable operator," as defined by 47 U.S.C.

§ 522(5), which states:

the term "cable operator" means any person or group of persons

(A)    who provides cable service over a cable system and directly or through
one or more affiliates owns a significant interest in such cable system, or

(B)    who otherwise controls or is responsible for, through any arrangement, the
management and operation of such a cable system.

shall comply with 47 U.S.C. § 551(c)(2)(B), which states:

A cable operator may disclose such [personal identifying] information if the
disclosure is . . . made pursuant to a court order authorizing such disclosure, if the
subscriber is notified of such order by the person to whom the order is directed.

by sending a copy of this Order to the Defendant.

5.    Plaintiff has explained due to data retention it is unlikely the original John Doe
Defendants will be identified. Consequently, Plaintiff dismisses them without prejudice and is
permitted to add new John Doe Defendants numbered 1-347 as set forth in the attached Exhibit
A to this order. The file of the case shall remain the same.

6.    Any pleading, motion or paper filed by a pro se litigant which fails to comply
with Fla. R. Jud. Admin., Rule 2.515(b) stating that "[a] party who is not represented by an
attorney shall sign any pleading or other paper and state the party's address and telephone
number, including area code" shall be stricken from the docket without the necessity of further
action by this Court. For the avoidance of doubt, any motion filed by a pro se litigant which fails
to comply Fla. R. Jud. Admin., Rule 2.515(b) need not be denied by separate order since it has
been stricken as set forth herein.

2

7.      If any particular Doe Defendant has been voluntarily dismissed then any motion filed by said Defendant objecting to the disclosure of his or her identifying information is hereby denied as moot. Notwithstanding the foregoing, the applicable ISP shall withhold the moving Defendant's identifying information from Plaintiff unless and until Plaintiff obtains a subsequent court order authorizing the disclosure.

8.      Veritext Inc. and its affiliate court reporters are hereby appointed as the Special Commissioner so that Plaintiff may domesticate this order in another state.

9.      Copyright infringement is a tortious act within the meaning of §48.193(10)(b). Foreign Imported Productions and Publishing, Inc. v. Group Industrial Hotelero, 2008 WL 4724495, *5 (S.D. Fla. 2008). By alleging each of the defendants sent a piece of the copyrighted work into Florida, Plaintiff properly pled this Court has personal jurisdiction over each of the Defendants. "A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of his position. The burden is then placed upon the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained." Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989). Any such affidavit must contain Defendant's name, address and telephone number so that Plaintiff may investigate the jurisdictional allegations. Any Defendant failing to submit such an affidavit along with a Motion to Quash the Subpoena or a Motion to Dismiss the Case shall have any such motion denied without the necessity of further proceedings by this Court.

10.     The Court has subject matter jurisdiction. Under Florida law, a pure bill of discovery is a separate and distinct cause of action and enables Plaintiff to determine the proper parties against whom, and the proper legal authorities under which, to proceed in a separate action for relief. See Sunbeam Television Corp. v. Columbia Broadcasting System, Inc., 694 F.

3

Supp. 889, 895 (S.D. Fla. 1988) (remanding a complaint sounding as a pure bill of discovery back to state court even when the future cause of action would be within the exclusive jurisdiction of the federal court).

11.     Plaintiff may only use the information disclosed in response to a subpoena served on an ISP for the purpose of protecting and enforcing Plaintiff's rights as set forth in its Complaint.

**DONE AND ORDERED** this ___ day of _____, 2012.

By: _____

**CIRCUIT COURT JUDGE**

CONFORMED COPY

FEB ___ 2012

DARYL E. TRAWICK
CIRCUIT COURT JUDGE

4

| DOE# | IP | Hit date (UTC) | Base32 Hash | Studio | Title | ISP |
|------|-----|-----|-----|-----|-----|-----|
| 1 | 174.140.107.92 | 1/31/2012 9:05 | 3B39460ABF5377A5830F532935B590D40086B834 | Malibu Media | Girls Night Out | ATLANTIC BROADBAND |
| 2 | 174.140.99.242 | 1/11/2012 21:32 | 21741570F13E710FB3306C04BC00F84274B0C9C0 | Raw Films, Ltd. | Bare Instinct | ATLANTIC BROADBAND |
| 3 | 204.195.161.171 | 1/31/2012 16:29 | DCC3BE8B25C3873AEF74A46EE0F62EB0DCFB0143 | Raw Films, Ltd. | Eurocreme Library #2 | ATLANTIC BROADBAND |
| 4 | 207.244.166.83 | 2/1/2012 22:30 | FDA166688F0C01B464E716460F22A96E7D40A27C | Malibu Media | Veronika Coming Home | Atlantic Broadband |
| 5 | 207.255.204.51 | 12/6/2011 0:59 | D0DE9062102977D136A7D055953D5D57A088C1E4 | Raw Films, Ltd. | Bareback Street Gang | ATLANTIC BROADBAND |
| 6 | 207.255.216.179 | 1/7/2012 1:24 | EFAB0E91538B8BB08E6E234D73401C0B4BE0081A | Malibu Media | Angel Seaside Romp | Atlantic Broadband |
| 7 | 207.255.228.145 | 2/3/2012 10:46 | F70B4A483A0011DCBFF8FA11AB1B44DE60AF3DB4 | Raw Films, Ltd. | Tooled Up Twinks | Atlantic Broadband |
| 8 | 207.255.36.216 | 12/17/2011 3:42 | D0DE9062102977D136A7D055953D5D57A088C1E4 | Raw Films, Ltd. | Bareback Street Gang | ATLANTIC BROADBAND |
| 9 | 207.255.50.240 | 2/2/2012 0:11 | FDA166688F0C01B464E716460F22A96E7D40A27C | Malibu Media | Veronika Coming Home | ATLANTIC BROADBAND |
| 10 | 24.145.73.20 | 2/2/2012 5:09 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Atlantic Broadband |
| 11 | 24.145.77.25 | 1/29/2012 1:32 | 357E724625B38760F17E283FAB0D509338BA6D1F | Malibu Media | Angel Seaside Romp | Atlantic Broadband |
| 12 | 69.84.116.130 | 11/22/2011 2:45 | E08C7D67052512D7D1CF4AC1EC3468E7D9B266BE | Malibu Media | Tiffany Teenagers in Love | ATLANTIC BROADBAND |
| 13 | 69.84.118.92 | 2/5/2012 7:33 | FDA166688F0C01B464E716460F22A96E7D40A27C | Malibu Media | Veronika Coming Home | ATLANTIC BROADBAND |
| 14 | 69.84.123.220 | 1/17/2012 5:35 | 35813ECED30B923A57A5336F35BE686E3488F409 | Malibu Media | Leila And Anneli Menage A Trois | ATLANTIC BROADBAND |
| 15 | 72.28.170.245 | 12/15/2011 5:05 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | ATLANTIC BROADBAND |
| 16 | 72.28.218.1 | 1/22/2012 6:23 | D0DE9062102977D136A7D055953D5D57A088C1E4 | Raw Films, Ltd. | Bareback Street Gang | ATLANTIC BROADBAND |
| 17 | 72.28.226.115 | 1/5/2012 3:12 | AF4FEA9577B0B1C6C617B7CD3C048BB0283C2448 | Malibu Media | Rich Girl Part #2 | ATLANTIC BROADBAND |
| 18 | 72.28.228.253 | 2/3/2012 5:35 | BE309EAAEA62390FF5E35F4B018E7D1C89C51A30 | Malibu Media | X-Art Siterip #14 | ATLANTIC BROADBAND |
| 19 | 72.28.232.125 | 2/4/2012 2:34 | 3AFAB51555954FEAD187E8A598B769801D758FF7 | Malibu Media | Leila And Anneli Menage A Trois | Atlantic Broadband |
| 20 | 72.45.8.131 | 2/4/2012 14:41 | 08987B0E347D381B9C1A1CD524B1BBFFA8CD06FF | Malibu Media | Leila Last Night | ATLANTIC BROADBAND |
| 21 | 24.143.104.174 | 11/23/2011 22:56 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Broadstripe |
| 22 | 24.143.65.76 | 12/8/2011 0:51 | 59448198C43090645093E37289900D8EBB4D4D04 | Malibu Media | Veronica Wet Orgasm | Broadstripe |
| 23 | 24.143.85.146 | 12/6/2011 16:08 | 1A71646501E03AEC5DBA6E59AFE141A208DA4D23 | Malibu Media | X-Art Siterip #24 | Broadstripe |
| 24 | 24.143.90.65 | 1/14/2012 12:06 | 5BAAC90BABA744EB25F86F9E2971E2017298C1F9 | Malibu Media | Leila And Anneli Menage A Trois | Broadstripe |
| 25 | 24.35.50.222 | 1/23/2012 21:24 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Broadstripe |
| 26 | 24.56.230.83 | 12/3/2011 21:02 | E1E51A271218C651816335477A9549E579C41F51 | Malibu Media | Veronica Wet Orgasm | Broadstripe |

| DOE# | IP | Hit date (UTC) | Base32 Hash | Studio | Title | ISP |
|------|-----|------|-------------|--------|-------|-----|
| 27 | 24.56.235.22 | 1/21/2012 5:33 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Broadstripe |
| 28 | 66.235.46.63 | 1/27/2012 4:25 | 8258A90B2F23EF73A08BB212463E81C52F467658 | Malibu Media | Angel Seaside Romp | Broadstripe |
| 29 | 184.80.3.126 | 2/5/2012 20:23 | 0C904FD277BFE2615D8DFD4952E9452CB7426200 | Raw Films, Ltd. | Bareback Frat Pack | Cavalier Telephone |
| 30 | 184.80.4.2 | 1/16/2012 7:41 | C3A458A999374EAA9A2E4AFB476B439E456ECA07 | Malibu Media | Leila And Anneli Menage A Trois | Cavalier Telephone |
| 31 | 66.16.112.121 | 1/12/2012 21:56 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Cavalier Telephone |
| 32 | 98.141.38.24 | 1/29/2012 18:02 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Cavalier Telephone |
| 33 | 206.125.52.63 | 1/15/2012 5:21 | C3A458A999374EAA9A2E4AFB476B439E456ECA07 | Malibu Media | Leila And Anneli Menage A Trois | Hotwire Communications |
| 34 | 24.238.22.207 | 2/6/2012 17:37 | 213B431CD6398B44DD507A042E9223253FEC5462 | Malibu Media | Veronika Coming Home | Hotwire Communications |
| 35 | 67.205.241.239 | 2/9/2012 2:44 | FFF24BD9C0F76FD0B5683B06F5124ECA6C1789A7 | Malibu Media | Tiffany Sex With A Supermodel | Hotwire Communications |
| 36 | 72.13.133.239 | 2/8/2012 9:06 | 08987B0E347D381B9C1A1CD524B1BBFFA8CD06FF | Malibu Media | Leila Last Night | Hotwire Communications |
| 37 | 74.129.109.24 | 1/2/2012 6:00 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Insight Communications Company |
| 38 | 74.129.162.84 | 12/28/2011 19:06 | AF4FEA9577B0B1C6C617B7CD3C048BB0283C2448 | Malibu Media | Rich Girl Part #2 | Insight Communications Company |
| 39 | 74.130.112.222 | 1/28/2012 0:19 | 436AF7242D6E3C9BD85BF540EA48836ACB13CD20 | Malibu Media | X-Art Siterip #19 | Insight Communications Company |
| 40 | 74.130.114.77 | 12/31/2011 4:42 | 1A71646501E03AEC5DBA6E59AFE141A208DA4D23 | Malibu Media | X-Art Siterip #24 | Insight Communications Company |
| 41 | 74.130.183.217 | 1/5/2012 4:09 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Insight Communications Company |
| 42 | 74.130.234.24 | 2/4/2012 13:34 | 08987B0E347D381B9C1A1CD524B1BBFFA8CD06FF | Malibu Media | Leila Last Night | Insight Communications Company |
| 43 | 74.130.36.85 | 1/5/2012 0:05 | B42EA198025C67799C196CB3BB7DF171C9B78103 | Malibu Media | Angel Journey To The East | Insight Communications Company |
| 44 | 74.131.185.88 | 12/22/2011 22:13 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Insight Communications Company |
| 45 | 74.131.187.150 | 1/14/2012 14:47 | 35813ECED30B923A57A5336F35BE686E3488F409 | Malibu Media | Leila And Anneli Menage A Trois | Insight Communications Company |
| 46 | 74.131.196.130 | 1/31/2012 2:47 | EFAB0E91538B8BB08E6E234D73401C0B4BE0081A | Malibu Media | Angel Seaside Romp | Insight Communications Company |
| 47 | 74.131.199.63 | 2/5/2012 1:57 | 08987B0E347D381B9C1A1CD524B1BBFFA8CD06FF | Malibu Media | Leila Last Night | Insight Communications Company |

Exhibit A to Order on Plaintiff's Motion for Internet Service Providers To Disclose Identifying Information of Unknown Doe Defendants, Dated February 15, 2012

| DOE# | IP | Hit date (UTC) | Base32 Hash | Studio | Title | ISP |
|------|-----|------|------|--------|-------|-----|
| 48 | 74.131.208.225 | 2/7/2012 1:01 | 08987B0E347D381B9C1A1CD524B1BBFFA8CD06FF | Malibu Media | Leila Last Night | Insight Communications Company |
| 49 | 74.131.241.27 | 1/7/2012 14:08 | 9F9DC5FE1EABB3825B39C5D245EE59F0E116F1BB | Malibu Media | Anneli Dream Girl | Insight Communications Company |
| 50 | 74.131.243.54 | 1/19/2012 20:23 | 35813ECED30B923A57A5336F35BE686E3488F409 | Malibu Media | Leila And Anneli Menage A Trois | Insight Communications Company |
| 51 | 74.131.36.190 | 12/12/2011 12:57 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Insight Communications Company |
| 52 | 74.132.144.110 | 1/28/2012 12:31 | FDA166688F0C01B464E716460F22A96E7D40A27C | Malibu Media | Veronika Coming Home | Insight Communications Company |
| 53 | 74.132.31.81 | 1/16/2012 1:14 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Insight Communications Company |
| 54 | 74.133.0.162 | 1/25/2012 22:56 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Insight Communications Company |
| 55 | 74.133.178.0 | 1/24/2012 20:42 | 9DDB516EC689B35CC25C04D2EFB86D132AF196CD | Malibu Media | Girls Night Out | Insight Communications Company |
| 56 | 74.134.102.214 | 2/5/2012 22:11 | 8BB286DEE762FBEA6ED7A554260FC0AC16BC776C | Malibu Media | Poolside Striptease | Insight Communications Company |
| 57 | 74.134.86.223 | 12/29/2011 20:01 | 5C30F05B0EF0F99BBF43E716A0EB53D31C179D7F | Malibu Media | MaryJane Young Love | Insight Communications Company |
| 58 | 74.136.208.207 | 12/24/2011 8:40 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Insight Communications Company |
| 59 | 74.136.32.206 | 1/1/2012 2:49 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Insight Communications Company |
| 60 | 74.136.82.74 | 2/6/2012 1:11 | 6205476B1CF9507CD873C683EA3DB9FB47BDC881 | Malibu Media | Silvie Centerfold | Insight Communications Company |
| 61 | 74.137.106.9 | 12/25/2011 9:02 | 4EB414F1AE9EAFF41C43915D35911716CF907B63 | Raw Films, Ltd. | Eurocreme Library #1 | Insight Communications Company |
| 62 | 74.137.210.97 | 12/30/2011 14:42 | EEB4750B74E90B13BE8D9FE942BCC610C4E01534 | Malibu Media | X-Art Siterip #31 | Insight Communications Company |
| 63 | 74.138.134.72 | 1/29/2012 11:20 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Insight Communications Company |
| 64 | 74.138.161.16 | 1/29/2012 0:07 | 3B39460ABF5377A5830F532935B590D40086B834 | Malibu Media | Girls Night Out | Insight Communications Company |
| 65 | 74.138.17.49 | 11/27/2011 20:48 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Insight Communications Company |
| 66 | 74.138.20.19 | 12/6/2011 14:30 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Insight Communications Company |
| 67 | 74.138.22.137 | 12/7/2011 11:41 | AF4FEA9577B0B1C6C617B7CD3C048BB0283C2448 | Malibu Media | Rich Girl Part #2 | Insight Communications Company |

Exhibit A to Order on Plaintiff's Motion for Internet Service Providers To Disclose Identifying Information of Unknown Doe Defendants, Dated February 15, 2012

| DOE# | IP | Hit date (UTC) | Base32 Hash | Studio | Title | ISP |
|---|---|---|---|---|---|---|
| 68 | 74.138.246.191 | 2/6/2012 12:39 | 59448198C43090645093E37289900D8EBB4D4D04 | Malibu Media | Veronica Wet Orgasm | Insight Communications Company |
| 69 | 74.138.44.6 | 1/16/2012 5:13 | F6B1478F2DAB75E664206F83DBC3F5CA0425F16E | Raw Films, Ltd. | Bareback Skate Mates | Insight Communications Company |
| 70 | 74.139.135.19 | 2/5/2012 21:26 | BE309EAAEA62390FF5E35F4B018E7D1C89C51A30 | Malibu Media | X-Art Siterip #14 | Insight Communications Company |
| 71 | 74.139.136.13 | 2/5/2012 7:07 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Insight Communications Company |
| 72 | 74.139.20.59 | 1/15/2012 7:41 | 59448198C43090645093E37289900D8EBB4D4D04 | Malibu Media | Veronica Wet Orgasm | Insight Communications Company |
| 73 | 74.139.93.106 | 12/26/2011 9:27 | 59448198C43090645093E37289900D8EBB4D4D04 | Malibu Media | Veronica Wet Orgasm | Insight Communications Company |
| 74 | 74.139.95.105 | 2/5/2012 15:04 | 08987B0E347D381B9C1A1CD524B1BBFFA8CD06FF | Malibu Media | Leila Last Night | Insight Communications Company |
| 75 | 74.140.133.177 | 12/18/2011 21:10 | 684CC8B918B613ECB9E9D46EE6B58F7EA39D4F8B | Malibu Media | Tiffany Teenagers In Love | Insight Communications Company |
| 76 | 74.140.148.108 | 1/17/2012 0:12 | 912C4BAEC89411BF65A968562AC8B7E7B3F1E9CB | Malibu Media | Leila And Anneli Menage A Trois | Insight Communications Company |
| 77 | 74.140.149.54 | 12/29/2011 7:03 | 3B39460ABF5377A5830F532935B590D40086B834 | Malibu Media | Girls Night Out | Insight Communications Company |
| 78 | 74.140.154.155 | 12/2/2011 4:48 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Insight Communications Company |
| 79 | 74.140.194.172 | 2/7/2012 11:00 | 4F3FF9E3442937E1306B25BC152C61BE6AFF6EDA | Malibu Media | Veronika Coming Home | Insight Communications Company |
| 80 | 74.141.107.127 | 1/16/2012 19:07 | 35813ECED30B923A57A5336F35BE686E3488F409 | Malibu Media | Leila And Anneli Menage A Trois | Insight Communications Company |
| 81 | 74.141.125.19 | 12/12/2011 12:01 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Insight Communications Company |
| 82 | 74.141.177.1 | 1/13/2012 3:45 | FC01E74752F043765B3629035E522D503CF8E975 | Malibu Media | Leila And Anneli Menage A Trois | Insight Communications Company |
| 83 | 74.141.210.39 | 1/13/2012 14:50 | 35813ECED30B923A57A5336F35BE686E3488F409 | Malibu Media | Leila And Anneli Menage A Trois | Insight Communications Company |
| 84 | 74.141.248.126 | 1/30/2012 17:30 | 213B431CD6398B44DD507A042E9223253FEC5462 | Malibu Media | Veronika Coming Home | Insight Communications Company |
| 85 | 74.141.32.233 | 1/17/2012 6:34 | C7F83512BA5E4C3FFECE934E98DE2EEBD8E730DD | Malibu Media | Leila And Anneli Menage A Trois | Insight Communications Company |

Exhibit A to Order on Plaintiff's Motion for Internet Service Providers To Disclose Identifying Information of Unknown Doe Defendants. Dated February 15, 2012

| DOE# | IP | Hit date (UTC) | Base32 Hash | Studio | Title | ISP |
|---|---|---|---|---|---|---|
| 86 | 74.142.210.42 | 2/6/2012 22:41 | 3B39460ABF5377A5830F532935B590D40086B834 | Malibu Media | Girls Night Out | Insight Communications Company |
| 87 | 74.143.126.114 | 1/8/2012 13:09 | F6B1478F2DAB75E664206F83DBC3F5CA0425F16E | Raw Films, Ltd. | Bareback Skate Mates | Insight Communications Company |
| 88 | 74.143.223.61 | 11/22/2011 5:28 | 4EB414F1AE9EAFF41C43915D35911716CF907B63 | Raw Films, Ltd. | Eurocreme Library #1 | Insight Communications Company |
| 89 | 74.143.248.188 | 12/21/2011 15:51 | F6B1478F2DAB75E664206F83DBC3F5CA0425F16E | Raw Films, Ltd. | Bareback Skate Mates | Insight Communications Company |
| 90 | 96.28.100.75 | 1/13/2012 14:29 | 59448198C43090645093E37289900D8EBB4D4D04 | Malibu Media | Veronica Wet Orgasm | Insight Communications Company |
| 91 | 96.28.15.224 | 1/24/2012 14:31 | 5C30F05B0EF0F99BBF43E716A0EB53D31C179D7F | Malibu Media | MaryJane Young Love | Insight Communications Company |
| 92 | 96.28.183.187 | 2/6/2012 16:28 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Insight Communications Company |
| 93 | 96.28.192.210 | 1/16/2012 6:36 | FC01E74752F043765B3629035E522D503CF8E975 | Malibu Media | Leila And Anneli Menage A Trois | Insight Communications Company |
| 94 | 96.28.39.211 | 12/24/2011 22:39 | 5C30F05B0EF0F99BBF43E716A0EB53D31C179D7F | Malibu Media | MaryJane Young Love | Insight Communications Company |
| 95 | 96.29.102.173 | 2/8/2012 3:08 | 08987B0E347D381B9C1A1CD524B1BBFFA8CD06FF | Malibu Media | Leila Last Night | Insight Communications Company |
| 96 | 96.29.128.243 | 1/16/2012 4:37 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Insight Communications Company |
| 97 | 96.29.170.196 | 1/11/2012 16:37 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Insight Communications Company |
| 98 | 96.29.171.228 | 2/9/2012 4:52 | F52F8FFC41C8145B5DFD0FB104EDCF5488DF192B | Malibu Media | X-Art Siterip #6 | Insight Communications Company |
| 99 | 96.29.214.226 | 1/28/2012 6:05 | 3B39460ABF5377A5830F532935B590D40086B834 | Malibu Media | Girls Night Out | Insight Communications Company |
| 100 | 96.29.69.75 | 1/28/2012 12:27 | C3A458A999374EAA9A2E4AFB476B439E456ECA07 | Malibu Media | Leila And Anneli Menage A Trois | Insight Communications Company |
| 101 | 96.29.89.17 | 1/6/2012 1:01 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Insight Communications Company |
| 102 | 67.219.82.18 | 1/30/2012 7:07 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | New Wave Communications |
| 103 | 76.11.135.11 | 2/1/2012 6:46 | 59448198C43090645093E37289900D8EBB4D4D04 | Malibu Media | Veronica Wet Orgasm | New Wave Communications |
| 104 | 76.11.217.131 | 12/10/2011 22:11 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | New Wave Communications |
| 105 | 146.115.131.60 | 1/18/2012 11:41 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | RCN Corporation |
| 106 | 146.115.26.74 | 2/5/2012 6:15 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | RCN Corporation |

Exhibit A to Order on Plaintiff's Motion for Internet Service Providers To Disclose Identifying Information of Unknown Doe Defendants, Dated February 15, 2012

| DOE# | IP | Hit date (UTC) | Base32 Hash | Studio | Title | ISP |
|---|---|---|---|---|---|---|
| 107 | 146.115.69.16 | 1/31/2012 14:22 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | RCN Corporation |
| 108 | 146.115.80.84 | 1/30/2012 22:48 | 8CBCD849F74505907734E59A088CB05BED744BEE | Malibu Media | Anneli Dream Girl | RCN Corporation |
| 109 | 146.115.83.6 | 2/7/2012 13:36 | C7F83512BA5E4C3FFECE934E98DE2EEBD8E730DD | Malibu Media | Leila And Anneli Menage A Trois | RCN Corporation |
| 110 | 205.178.112.70 | 1/21/2012 16:00 | AC3911D3F8C9B999D93812751A30816B312E6F5A | Malibu Media | Angel Seaside Romp | RCN Corporation |
| 111 | 205.178.115.238 | 1/19/2012 15:53 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | RCN Corporation |
| 112 | 205.178.119.146 | 2/4/2012 2:15 | 9D8330EFCA335220568A772B34D2764F90C0D106 | Malibu Media | X-Art Siterip #26 | RCN Corporation |
| 113 | 205.178.125.218 | 11/24/2011 5:40 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | RCN Corporation |
| 114 | 205.178.70.103 | 1/23/2012 16:19 | 6043A4B9339307C03D99E94BF8FA76D0CF1D1267 | Malibu Media | Poolside Striptease | RCN Corporation |
| 115 | 205.178.85.100 | 2/3/2012 21:23 | 3AFAB51555954FEAD187E8A598B769801D758FF7 | Malibu Media | Leila And Anneli Menage A Trois | RCN Corporation |
| 116 | 205.178.94.213 | 1/21/2012 23:11 | 6043A4B9339307C03D99E94BF8FA76D0CF1D1267 | Malibu Media | Poolside Striptease | RCN Corporation |
| 117 | 205.178.97.88 | 1/10/2012 11:15 | 7AF6FA815AED342678C921DD5F149C370DC3A09E | Malibu Media | Anneli Dream Girl | RCN Corporation |
| 118 | 207.172.117.2 | 1/21/2012 1:26 | 5BAAC90BABA744EB25F86F9E2971E2017298C1F9 | Malibu Media | Leila And Anneli Menage A Trois | RCN Corporation |
| 119 | 207.172.120.151 | 12/2/2011 0:13 | 4CDDD0985BFE8792D19A41F9AA5ECE3840E7A178 | Malibu Media | Kristen Girl Next Door | RCN Corporation |
| 120 | 207.172.162.242 | 1/28/2012 19:01 | 4F3FF9E3442937E1306B25BC152C61BE6AFF6EDA | Malibu Media | Veronika Coming Home | RCN Corporation |
| 121 | 207.172.163.155 | 1/16/2012 17:54 | 05FDEAAC4CFB03D2C9F36D7794F523AD34685E36 | Malibu Media | Poolside Striptease | RCN Corporation |
| 122 | 207.172.174.11 | 12/21/2011 20:42 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | RCN Corporation |
| 123 | 207.172.56.19 | 2/9/2012 0:47 | FDA166688F0C01B464E716460F22A96E7D40A27C | Malibu Media | Veronika Coming Home | RCN Corporation |
| 124 | 207.181.199.166 | 1/9/2012 22:04 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | RCN Corporation |
| 125 | 207.181.214.217 | 1/30/2012 6:12 | 3B39460ABF5377A5830F532935B590D40086B834 | Malibu Media | Girls Night Out | RCN Corporation |
| 126 | 207.181.214.240 | 12/4/2011 17:41 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | RCN Corporation |
| 127 | 207.181.216.91 | 1/31/2012 20:45 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | RCN Corporation |
| 128 | 207.181.227.104 | 2/3/2012 4:19 | 3B39460ABF5377A5830F532935B590D40086B834 | Malibu Media | Girls Night Out | RCN Corporation |
| 129 | 207.181.251.105 | 2/2/2012 0:26 | 4F3FF9E3442937E1306B25BC152C61BE6AFF6EDA | Malibu Media | Veronika Coming Home | RCN Corporation |
| 130 | 207.237.144.188 | 2/8/2012 12:08 | AF4FEA9577B0B1C6C617B7CD3C048BB0283C2448 | Malibu Media | Rich Girl Part #2 | RCN Corporation |
| 131 | 207.237.170.154 | 12/25/2011 17:53 | E08C7D67052512D7D1CF4AC1EC3468E7D9B266BE | Malibu Media | Tiffany Teenagers in Love | RCN Corporation |
| 132 | 207.237.177.8 | 1/12/2012 12:05 | AF4FEA9577B0B1C6C617B7CD3C048BB0283C2448 | Malibu Media | Rich Girl Part #2 | RCN Corporation |

Exhibit A to Order on Plaintiff's Motion for Internet Service Providers To Disclose Identifying Information of Unknown Doe Defendants, Dated February 15, 2012

| DOE# | IP | Hit date (UTC) | Base32 Hash | Studio | Title | ISP |
|------|-----|------|------|------|------|-----|
| 133 | 207.237.178.86 | 12/29/2011 7:51 | 3B39460ABF5377A5830F532935B590D40086B834 | Malibu Media | Girls Night Out | RCN Corporation |
| 134 | 207.237.18.114 | 2/8/2012 5:52 | F49603BE736B67ED60B6C3556D92B0C10F8695F4 | Malibu Media | Leila Last Night | RCN Corporation |
| 135 | 207.237.208.75 | 2/5/2012 23:24 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | RCN Corporation |
| 136 | 207.237.55.128 | 1/23/2012 7:49 | D0DE9062102977D136A7D055953D5D57A088C1E4 | Raw Films, Ltd. | Bareback Street Gang | RCN Corporation |
| 137 | 207.237.58.182 | 12/21/2011 15:22 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | RCN Corporation |
| 138 | 207.38.154.143 | 1/30/2012 21:22 | FDA166688F0C01B464E716460F22A96E7D40A27C | Malibu Media | Veronika Coming Home | RCN Corporation |
| 139 | 207.38.217.190 | 1/22/2012 19:16 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | RCN Corporation |
| 140 | 207.38.223.88 | 1/13/2012 2:25 | FC01E74752F043765B3629035E522D503CF8E975 | Malibu Media | Leila And Anneli Menage A Trois | RCN Corporation |
| 141 | 207.38.231.132 | 1/17/2012 2:36 | FFF24BD9C0F76FD0B5683B06F5124ECA6C1789A7 | Malibu Media | Tiffany Sex With A Supermodel | RCN Corporation |
| 142 | 207.38.233.226 | 1/17/2012 0:31 | 6043A4B9339307C03D99E94BF8FA76D0CF1D1267 | Malibu Media | Poolside Striptease | RCN Corporation |
| 143 | 207.38.236.95 | 1/23/2012 10:49 | 5C30F05B0EF0F99BBF43E716A0EB53D31C179D7F | Malibu Media | MaryJane Young Love | RCN Corporation |
| 144 | 209.6.150.17 | 2/4/2012 21:21 | 4F3FF9E3442937E1306B25BC152C61BE6AFF6EDA | Malibu Media | Veronika Coming Home | RCN Corporation |
| 145 | 209.6.164.181 | 2/2/2012 8:49 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | RCN Corporation |
| 146 | 209.6.187.32 | 2/3/2012 14:00 | 722526019BF980F7E55C48A1BE7F3023B227AA64 | Malibu Media | Silvie Centerfold | RCN Corporation |
| 147 | 209.6.35.24 | 12/28/2011 0:26 | FFF24BD9C0F76FD0B5683B06F5124ECA6C1789A7 | Malibu Media | Tiffany Sex With A Supermodel | RCN Corporation |
| 148 | 209.6.42.44 | 2/8/2012 22:51 | F70B4A483A0011DCBFF8FA11AB1B44DE60AF3DB4 | Raw Films, Ltd. | Tooled Up Twinks | RCN Corporation |
| 149 | 209.6.43.140 | 2/5/2012 4:20 | FDA166688F0C01B464E716460F22A96E7D40A27C | Malibu Media | Veronika Coming Home | RCN Corporation |
| 150 | 209.6.48.29 | 12/27/2011 8:58 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | RCN Corporation |
| 151 | 209.6.54.239 | 2/8/2012 1:13 | 4F3FF9E3442937E1306B25BC152C61BE6AFF6EDA | Malibu Media | Veronika Coming Home | RCN Corporation |
| 152 | 209.6.62.166 | 1/17/2012 23:57 | 0E4120A99581DFEE582AEA1C7D04026B06EAEC45 | Malibu Media | Poolside Striptease | RCN Corporation |
| 153 | 209.6.70.131 | 1/14/2012 5:11 | 3AFAB51555954FEAD187E8A598B769801D758FF7 | Malibu Media | Leila And Anneli Menage A Trois | RCN Corporation |
| 154 | 209.6.87.230 | 1/7/2012 14:46 | 85F013F86E00A310SED2649735B419726C74729A | Malibu Media | Angel Seaside Romp | RCN Corporation |
| 155 | 209.6.93.227 | 1/24/2012 3:27 | A7C1BE145D41C2AB53CA46B0C71C446FCAF14753 | Malibu Media | Anneli Dream Girl | RCN Corporation |
| 156 | 216.15.124.3 | 1/24/2012 12:51 | F39B6706127927A7F64A0286C3D077D1D9732C08 | Malibu Media | Angel Seaside Romp | RCN Corporation |
| 157 | 216.15.127.220 | 1/16/2012 0:26 | AF4FEA9577B0B1C6C617B7CD3C048BB0283C2448 | Malibu Media | Rich Girl Part #2 | RCN Corporation |
| 158 | 216.15.19.170 | 1/30/2012 16:58 | B42EA198025C67799C196CB3BB7DF171C9B78103 | Malibu Media | Angel Journey To The East | RCN Corporation |

| DOE# | IP | Hit date (UTC) | Base32 Hash | Studio | Title | ISP |
|------|-----|------|------------|--------|-------|-----|
| 159 | 216.15.2.226 | 1/20/2012 16:22 | C7F83512BA5E4C3FFECE934E98DE2EEBD8E730DD | Malibu Media | Leila And Anneli Menage A Trois | RCN Corporation |
| 160 | 216.15.26.13 | 1/27/2012 21:25 | 7AE244DF1D01586304027C12C7C010299830FEA0 | Malibu Media | Leila And Anneli Menage A Trois | RCN Corporation |
| 161 | 216.15.36.164 | 1/18/2012 22:16 | 6E4D0AA937E0745780A4C5A4DAE8A171444BBCC7 | Malibu Media | Angel Seaside Romp | RCN Corporation |
| 162 | 216.15.56.225 | 2/8/2012 16:07 | A2B241910AF054A2952F534471357539F786F52A | Malibu Media | Leila Last Night | RCN Corporation |
| 163 | 216.164.209.201 | 2/4/2012 19:10 | A2B241910AF054A2952F534471357539F786F52A | Malibu Media | Leila Last Night | RCN Corporation |
| 164 | 216.80.122.61 | 1/14/2012 18:49 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | RCN Corporation |
| 165 | 216.80.38.105 | 1/17/2012 3:20 | C7F83512BA5E4C3FFECE934E98DE2EEBD8E730DD | Malibu Media | Leila And Anneli Menage A Trois | RCN Corporation |
| 166 | 24.136.7.28 | 1/7/2012 15:20 | 0783AB961FFAA04135FAF13FDC21BF57AC9D103B | Malibu Media | Katka Cum Like Crazy | RCN Corporation |
| 167 | 24.148.21.135 | 2/8/2012 20:56 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | RCN Corporation |
| 168 | 24.148.59.214 | 1/23/2012 2:57 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | RCN Corporation |
| 169 | 24.148.79.37 | 1/13/2012 13:29 | D0DE9062102977D136A7D055953D5D57A088C1E4 | Raw Films, Ltd. | Bareback Street Gang | RCN Corporation |
| 170 | 64.121.104.55 | 2/6/2012 21:33 | E08C7D67052512D7D1CF4AC1EC3468E7D9B266BE | Malibu Media | Tiffany Teenagers in Love | RCN Corporation |
| 171 | 64.121.107.194 | 2/6/2012 22:46 | 59448198C43090645093E37289900D8EBB4D4D04 | Malibu Media | Veronica Wet Orgasm | RCN Corporation |
| 172 | 64.121.126.102 | 2/3/2012 20:17 | AF4FEA9577B0B1C6C617B7CD3C048BB0283C2448 | Malibu Media | Rich Girl Part #2 | RCN Corporation |
| 173 | 64.121.177.139 | 12/28/2011 12:49 | 5C30F05B0EF0F99BBF43E716A0EB53D31C179D7F | Malibu Media | MaryJane Young Love | RCN Corporation |
| 174 | 64.121.184.207 | 1/6/2012 12:11 | A7C1BE145D41C2AB53CA46B0C71C446FCAF14753 | Malibu Media | Anneli Dream Girl | RCN Corporation |
| 175 | 64.121.64.37 | 1/4/2012 12:35 | FFF24BD9C0F76FD0B5683B06F5124ECA6C1789A7 | Malibu Media | Tiffany Sex With A Supermodel | RCN Corporation |
| 176 | 66.44.21.140 | 2/6/2012 6:18 | 08987B0E347D381B9C1A1CD524B1BBFFA8CD06FF | Malibu Media | Leila Last Night | RCN Corporation |
| 177 | 66.44.35.251 | 1/13/2012 2:09 | 700D208C99395B0DE042B8A583922B7EF3E8452A | Malibu Media | Anneli Dream Girl | RCN Corporation |
| 178 | 66.44.48.115 | 2/8/2012 11:05 | 5C30F05B0EF0F99BBF43E716A0EB53D31C179D7F | Malibu Media | MaryJane Young Love | RCN Corporation |
| 179 | 66.44.49.139 | 1/15/2012 18:46 | 912C4BAEC89411BF65A968562AC8B7E7B3F1E9CB | Malibu Media | Leila And Anneli Menage A Trois | RCN Corporation |
| 180 | 66.44.6.235 | 1/21/2012 15:40 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | RCN Corporation |
| 181 | 66.44.63.108 | 12/16/2011 13:43 | E6294783973F73A65725A7646BD3040EFB35C790 | Malibu Media | Leila Sex on the Beach | RCN Corporation |
| 182 | 204.195.14.32 | 1/25/2012 13:43 | 6E4D0AA937E0745780A4C5A4DAE8A171444BBCC7 | Malibu Media | Angel Seaside Romp | Wave Broadband |
| 183 | 204.195.4.72 | 1/18/2012 21:30 | 5C30F05B0EF0F99BBF43E716A0EB53D31C179D7F | Malibu Media | MaryJane Young Love | Wave Broadband |

Exhibit A to Order on Plaintiff's Motion for Internet Service Providers To Disclose Identifying Information of Unknown Doe Defendants, Dated February 15, 2012

| DOE# | IP | Hit date (UTC) | Base32 Hash | Studio | Title | ISP |
|---|---|---|---|---|---|---|
| 184 | 204.195.40.37 | 12/17/2011 15:15 | AF4FEA9577B0B1C6C617B7CD3C048BB0283C2448 | Malibu Media | Rich Girl Part #2 | Wave Broadband |
| 185 | 204.195.70.43 | 1/9/2012 22:48 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Wave Broadband |
| 186 | 24.113.103.54 | 1/16/2012 2:12 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Wave Broadband |
| 187 | 24.113.142.46 | 1/25/2012 2:23 | 35813ECED30B923A57A5336F35BE686E3488F409 | Malibu Media | Leila And Anneli Menage A Trois | Wave Broadband |
| 188 | 24.113.146.241 | 2/1/2012 1:48 | 59448198C43090645093E37289900D8EBB4D4D04 | Malibu Media | Veronica Wet Orgasm | Wave Broadband |
| 189 | 24.113.163.231 | 12/17/2011 3:46 | D0DE9062102977D136A7D055953D5D57A088C1E4 | Raw Films, Ltd. | Bareback Street Gang | Wave Broadband |
| 190 | 24.113.187.83 | 1/6/2012 17:29 | 3B39460ABF5377A5830F532935B590D40086B834 | Malibu Media | Girls Night Out | Wave Broadband |
| 191 | 24.113.194.29 | 12/24/2011 22:43 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Wave Broadband |
| 192 | 24.113.197.214 | 1/26/2012 9:25 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Wave Broadband |
| 193 | 24.113.233.241 | 12/18/2011 0:18 | E1E51A271218C651816335477A9549E579C41F51 | Malibu Media | Veronica Wet Orgasm | Wave Broadband |
| 194 | 24.113.31.153 | 1/14/2012 12:25 | 509CEAA4CB8E57F00EB85669AEBE855327A6ECE3 | Malibu Media | X-Art Siterip #34 | Wave Broadband |
| 195 | 24.113.31.195 | 1/3/2012 0:52 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Wave Broadband |
| 196 | 24.113.68.172 | 1/15/2012 10:31 | 3019ADFFA959DF3102809D6835656687140D90C5 | Malibu Media | Anneli Dream Girl | Wave Broadband |
| 197 | 24.113.72.128 | 2/7/2012 6:17 | F6B1478F2DAB75E664206F83DBC3F5CA0425F16E | Raw Films, Ltd. | Bareback Skate Mates | Wave Broadband |
| 198 | 24.113.89.144 | 11/28/2011 18:15 | F6B1478F2DAB75E664206F83DBC3F5CA0425F16E | Raw Films, Ltd. | Bareback Skate Mates | Wave Broadband |
| 199 | 24.113.98.45 | 12/22/2011 9:39 | 4EB414F1AE9EAFF41C43915D35911716CF907B63 | Raw Films, Ltd. | Eurocreme Library #1 | Wave Broadband |
| 200 | 76.14.100.134 | 1/15/2012 0:22 | 35813ECED30B923A57A5336F35BE686E3488F409 | Malibu Media | Leila And Anneli Menage A Trois | Wave Broadband |
| 201 | 76.14.128.188 | 12/26/2011 18:09 | F6B1478F2DAB75E664206F83DBC3F5CA0425F16E | Raw Films, Ltd. | Bareback Skate Mates | Wave Broadband |
| 202 | 76.14.179.33 | 2/4/2012 9:14 | 9F9DC5FE1EABB3825B39C5D245EE59F0E116F1BB | Malibu Media | Anneli Dream Girl | Wave Broadband |
| 203 | 76.14.185.116 | 2/1/2012 13:02 | C7F83512BA5E4C3FFECE934E98DE2EEBD8E730DD | Malibu Media | Leila And Anneli Menage A Trois | Wave Broadband |
| 204 | 76.14.20.126 | 1/7/2012 0:14 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Wave Broadband |
| 205 | 76.14.218.154 | 12/21/2011 6:18 | 0C904FD277BFE2615D8DFD4952E9452CB7426200 | Raw Films, Ltd. | Bareback Frat Pack | Wave Broadband |
| 206 | 76.14.234.219 | 12/30/2011 3:41 | 59448198C43090645093E37289900D8EBB4D4D04 | Malibu Media | Veronica Wet Orgasm | Wave Broadband |
| 207 | 76.14.235.109 | 1/3/2012 5:24 | E085C265F4752FA9C310933561A7207FF8ED36A2 | Malibu Media | Carlie Beautiful Blowjob | Wave Broadband |
| 208 | 76.14.244.220 | 1/20/2012 3:29 | AF4FEA9577B0B1C6C617B7CD3C048BB0283C2448 | Malibu Media | Rich Girl Part #2 | Wave Broadband |
| 209 | 76.14.53.153 | 2/6/2012 19:43 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Wave Broadband |

Exhibit A to Order on Plaintiff's Motion for Internet Service Providers To Disclose Identifying Information of Unknown Doe Defendants, Dated February 15, 2012

| DOE# | IP | Hit date (UTC) | Base32 Hash | Studio | Title | ISP |
|------|-----|------|------------|--------|-------|-----|
| 210 | 76.14.65.64 | 12/12/2011 0:58 | F70B4A483A0011DCBFF8FA11AB1B44DE60AF3DB4 | Raw Films, Ltd. | Tooled Up Twinks | Wave Broadband |
| 211 | 76.14.68.99 | 2/7/2012 14:23 | 08987B0E347D381B9C1A1CD524B1BBFFA8CD06FF | Malibu Media | Leila Last Night | Wave Broadband |
| 212 | 76.14.69.153 | 2/4/2012 7:15 | BE309EAAEA62390FF5E35F4B018E7D1C89C51A30 | Malibu Media | X-Art Siterip #14 | Wave Broadband |
| 213 | 76.14.83.169 | 2/4/2012 5:55 | FDA166688F0C01B464E716460F22A96E7D40A27C | Malibu Media | Veronika Coming Home | Wave Broadband |
| 214 | 24.192.102.177 | 1/31/2012 0:46 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | WideOpenWest |
| 215 | 24.192.11.70 | 1/18/2012 7:31 | 8BB286DEE762FBEA6ED7A554260FC0AC16BC776C | Malibu Media | Poolside Striptease | WideOpenWest |
| 216 | 24.192.114.80 | 1/12/2012 17:09 | B42EA198025C67799C196CB3BB7DF171C9B78103 | Malibu Media | Angel Journey To The East | WideOpenWest |
| 217 | 24.192.12.131 | 1/3/2012 22:08 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | WideOpenWest |
| 218 | 24.192.121.169 | 2/4/2012 13:16 | 59448198C43090645093E37289900D8EBB4D4D04 | Malibu Media | Veronica Wet Orgasm | WideOpenWest |
| 219 | 24.192.157.235 | 2/7/2012 2:38 | A2B241910AF054A2952F534471357539F786F52A | Malibu Media | Leila Last Night | WideOpenWest |
| 220 | 24.192.222.122 | 12/13/2011 18:55 | E08C7D67052512D7D1CF4AC1EC3468E7D9B266BE | Malibu Media | Tiffany Teenagers in Love | WideOpenWest |
| 221 | 24.192.241.20 | 2/5/2012 21:11 | A2B241910AF054A2952F534471357539F786F52A | Malibu Media | Leila Last Night | WideOpenWest |
| 222 | 24.192.242.168 | 1/11/2012 6:06 | F6B1478F2DAB75E664206F83DBC3F5CA0425F16E | Raw Films, Ltd. | Bareback Skate Mates | WideOpenWest |
| 223 | 24.192.32.17 | 1/13/2012 19:05 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | WideOpenWest |
| 224 | 24.192.41.22 | 2/2/2012 1:32 | 0C904FD277BFE2615D8DFD4952E9452CB7426200 | Raw Films, Ltd. | Bareback Frat Pack | WideOpenWest |
| 225 | 50.4.40.61 | 2/9/2012 3:32 | 7AE244DF1D01586304027C12C7C010299830FEA0 | Malibu Media | Leila And Anneli Menage A Trois | WideOpenWest |
| 226 | 50.4.48.22 | 2/5/2012 11:33 | F49603BE736B67ED60B6C3556D92B0C10F8695F4 | Malibu Media | Leila Last Night | WideOpenWest |
| 227 | 50.4.60.78 | 1/15/2012 6:49 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | WideOpenWest |
| 228 | 50.4.99.38 | 2/9/2012 1:46 | FFF24BD9C0F76FD0B5683B06F5124ECA6C1789A7 | Malibu Media | Tiffany Sex With A Supermodel | WideOpenWest |
| 229 | 64.53.197.152 | 1/22/2012 15:35 | 35813ECED30B923A57A5336F35BE686E3488F409 | Malibu Media | Leila And Anneli Menage A Trois | WideOpenWest |
| 230 | 64.53.205.234 | 1/8/2012 4:44 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | WideOpenWest |
| 231 | 64.53.213.167 | 1/27/2012 22:11 | 213B431CD6398B44DD507A042E9223253FEC5462 | Malibu Media | Veronika Coming Home | WideOpenWest |
| 232 | 65.60.130.26 | 12/17/2011 7:24 | D0DE9062102977D136A7D055953D5D57A088C1E4 | Raw Films, Ltd. | Bareback Street Gang | WideOpenWest |
| 233 | 65.60.145.82 | 1/15/2012 16:26 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | WideOpenWest |
| 234 | 65.60.154.164 | 1/10/2012 11:13 | AC3911D3F8C9B999D93812751A30816B312E6F5A | Malibu Media | Angel Seaside Romp | WideOpenWest |
| 235 | 65.60.191.68 | 2/7/2012 23:51 | 6205476B1CF9507CD873C683EA3DB9FB47BDC881 | Malibu Media | Silvie Centerfold | WideOpenWest |
| 236 | 65.60.192.2 | 2/9/2012 6:31 | 08987B0E347D381B9C1A1CD524B1BBFFA8CD06FF | Malibu Media | Leila Last Night | WideOpenWest |

Exhibit A to Order on Plaintiff's Motion for Internet Service Providers To Disclose Identifying Information of Unknown Doe Defendants, Dated February 15, 2012

| DOE# | IP | Hit date (UTC) | Base32 Hash | Studio | Title | ISP |
|---|---|---|---|---|---|---|
| 237 | 67.149.106.160 | 2/6/2012 6:21 | AC3911D3F8C9B999D93812751A30816B312E6F5A | Malibu Media | Angel Seaside Romp | WideOpenWest |
| 238 | 67.149.111.125 | 1/18/2012 19:40 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | WideOpenWest |
| 239 | 67.149.161.237 | 2/3/2012 3:22 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | WideOpenWest |
| 240 | 67.149.22.167 | 1/3/2012 6:27 | 9F9DC5FE1EABB3825B39C5D245EE59F0E116F1BB | Malibu Media | Anneli Dream Girl | WideOpenWest |
| 241 | 67.149.247.91 | 12/7/2011 23:33 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | WideOpenWest |
| 242 | 67.149.62.246 | 12/3/2011 15:38 | 3B39460ABF5377A5830F532935B590D40086B834 | Malibu Media | Girls Night Out | WideOpenWest |
| 243 | 67.149.65.89 | 11/22/2011 5:11 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | WideOpenWest |
| 244 | 67.149.70.230 | 1/28/2012 20:50 | 4F3FF9E3442937E1306B25BC152C61BE6AFF6EDA | Malibu Media | Veronika Coming Home | WideOpenWest |
| 245 | 67.149.92.144 | 1/5/2012 11:45 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | WideOpenWest |
| 246 | 69.14.140.97 | 1/16/2012 13:23 | AC3911D3F8C9B999D93812751A30816B312E6F5A | Malibu Media | Angel Seaside Romp | WideOpenWest |
| 247 | 69.14.162.43 | 2/6/2012 16:47 | BE309EAAEA62390FF5E35F4B018E7D1C89C51A30 | Malibu Media | X-Art Siterip #14 | WideOpenWest |
| 248 | 69.14.178.37 | 1/17/2012 16:53 | 1A71646501E03AEC5DBA6E59AFE141A208DA4D23 | Malibu Media | X-Art Siterip #24 | WideOpenWest |
| 249 | 69.14.189.186 | 1/27/2012 19:19 | 4F3FF9E3442937E1306B25BC152C61BE6AFF6EDA | Malibu Media | Veronika Coming Home | WideOpenWest |
| 250 | 69.14.19.170 | 1/9/2012 2:30 | 3B39460ABF5377A5830F532935B590D40086B834 | Malibu Media | Girls Night Out | WideOpenWest |
| 251 | 69.14.193.129 | 12/29/2011 23:50 | F52F8FFC41C8145B5DFD0FB104EDCF5488DF192B | Malibu Media | X-Art Siterip #6 | WideOpenWest |
| 252 | 69.14.201.93 | 2/5/2012 1:51 | F6B1478F2DAB75E664206F83DBC3F5CA0425F16E | Raw Films, Ltd. | Bareback Skate Mates | WideOpenWest |
| 253 | 69.14.203.184 | 1/17/2012 6:36 | 3A9AE20EA59F7BA02D6E6A55225E5AFEDB3F539B | Malibu Media | Poolside Striptease | WideOpenWest |
| 254 | 69.14.216.105 | 1/12/2012 15:19 | AC3911D3F8C9B999D93812751A30816B312E6F5A | Malibu Media | Angel Seaside Romp | WideOpenWest |
| 255 | 69.14.23.88 | 1/14/2012 20:00 | C7F83512BA5E4C3FFECE934E98DE2EEBD8E730DD | Malibu Media | Leila And Anneli Menage A Trois | WideOpenWest |
| 256 | 69.14.232.213 | 2/7/2012 6:16 | AF4FEA9577B0B1C6C617B7CD3C048BB0283C2448 | Malibu Media | Rich Girl Part #2 | WideOpenWest |
| 257 | 69.14.24.139 | 1/25/2012 17:37 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | WideOpenWest |
| 258 | 69.14.48.44 | 1/16/2012 0:53 | 813E0D7AF30BD63B94D09309DC613177D75C480D | Malibu Media | Leila And Anneli Menage A Trois | WideOpenWest |
| 259 | 69.47.1.167 | 1/16/2012 11:53 | 3B39460ABF5377A5830F532935B590D40086B834 | Malibu Media | Girls Night Out | WideOpenWest |
| 260 | 69.47.131.150 | 1/16/2012 20:53 | 59448198C43090645093E37289900D8EBB4D4D04 | Malibu Media | Veronica Wet Orgasm | WideOpenWest |
| 261 | 69.47.157.114 | 12/9/2011 3:00 | FFF24BD9C0F76FD0B5683B06F5124ECA6C1789A7 | Malibu Media | Tiffany Sex With A Supermodel | WideOpenWest |
| 262 | 69.47.227.220 | 12/26/2011 20:51 | 4CDDD0985BFE8792D19A41F9AA5ECE3840E7A178 | Malibu Media | Kristen Girl Next Door | WideOpenWest |

Exhibit A to Order on Plaintiff's Motion for Internet Service Providers To Disclose Identifying Information of Unknown Doe Defendants, Dated February 15, 2012

| DOE# | IP | Hit date (UTC) | Base32 Hash | Studio | Title | ISP |
|---|---|---|---|---|---|---|
| 263 | 69.47.81.132 | 1/29/2012 1:40 | C7F83512BA5E4C3FFECE934E98DE2EEBD8E730DD | Malibu Media | Leila And Anneli Menage A Trois | WideOpenWest |
| 264 | 69.47.86.214 | 2/8/2012 11:35 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | WideOpenWest |
| 265 | 69.47.97.59 | 1/27/2012 7:53 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | WideOpenWest |
| 266 | 74.199.20.25 | 2/1/2012 3:22 | FDA166688F0C01B464E716460F22A96E7D40A27C | Malibu Media | Veronika Coming Home | WideOpenWest |
| 267 | 74.199.46.178 | 1/5/2012 1:24 | 9F9DC5FE1EABB3825B39C5D245EE59F0E116F1BB | Malibu Media | Anneli Dream Girl | WideOpenWest |
| 268 | 75.118.133.114 | 2/3/2012 9:14 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | WideOpenWest |
| 269 | 75.118.154.177 | 2/1/2012 15:59 | 9F9DC5FE1EABB3825B39C5D245EE59F0E116F1BB | Malibu Media | Anneli Dream Girl | WideOpenWest |
| 270 | 75.118.170.118 | 12/30/2011 18:07 | FFF24BD9C0F76FD0B5683B06F5124ECA6C1789A7 | Malibu Media | Tiffany Sex With A Supermodel | WideOpenWest |
| 271 | 75.118.27.156 | 1/21/2012 1:27 | 82DF9F30913A3A97FED329F42E17093CBD561B1A | Malibu Media | Girls Night Out | WideOpenWest |
| 272 | 75.118.28.117 | 1/29/2012 20:16 | 722526019BF980F7E55C48A1BE7F3023B227AA64 | Malibu Media | Silvie Centerfold | WideOpenWest |
| 273 | 75.118.47.200 | 2/9/2012 1:51 | 3B39460ABF5377A5830F532935B590D40086B834 | Malibu Media | Girls Night Out | WideOpenWest |
| 274 | 75.118.75.160 | 12/31/2011 0:48 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | WideOpenWest |
| 275 | 96.27.32.85 | 1/14/2012 5:44 | 35813ECED30B923A57A5336F35BE686E3488F409 | Malibu Media | Leila And Anneli Menage A Trois | WideOpenWest |
| 276 | 96.27.38.43 | 1/9/2012 21:04 | 21567C422821F6B6B28488003AB656B0573E080F | Malibu Media | Angel Journey To The East | WideOpenWest |
| 277 | 151.213.93.227 | 1/1/2012 14:19 | FFF24BD9C0F76FD0B5683B06F5124ECA6C1789A7 | Malibu Media | Tiffany Sex With A Supermodel | Windstream Communications |
| 278 | 162.40.194.166 | 1/18/2012 12:57 | 3B39460ABF5377A5830F532935B590D40086B834 | Malibu Media | Girls Night Out | Windstream Communications |
| 279 | 162.40.44.252 | 1/27/2012 21:47 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Windstream Communications |
| 280 | 166.82.230.121 | 1/23/2012 21:55 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Windstream Communications |
| 281 | 173.184.101.218 | 12/8/2011 23:33 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Windstream Communications |
| 282 | 173.184.152.54 | 1/20/2012 12:50 | 21567C422821F6B6B28488003AB656B0573E080F | Malibu Media | Angel Journey To The East | Windstream Communications |
| 283 | 173.184.33.77 | 12/13/2011 8:20 | 21741570F13E710FB3306C04BC00F84274B0C9C0 | Raw Films, Ltd. | Bare Instinct | Windstream Communications |
| 284 | 173.184.74.85 | 12/11/2011 22:36 | D0DE9062102977D136A7D055953D5D57A088C1E4 | Raw Films, Ltd. | Bareback Street Gang | Windstream Communications |
| 285 | 173.187.103.235 | 1/29/2012 16:35 | 5C30F05B0EF0F99BBF43E716A0EB53D31C179D7F | Malibu Media | MaryJane Young Love | Windstream Communications |
| 286 | 173.187.110.189 | 1/15/2012 17:14 | AF4FEA9577B0B1C6C617B7CD3C048BB0283C2448 | Malibu Media | Rich Girl Part #2 | Windstream Communications |
| 287 | 173.187.244.4 | 2/8/2012 1:33 | 213B431CD6398B44DD507A042E9223253FEC5462 | Malibu Media | Veronika Coming Home | Windstream Communications |
| 288 | 173.187.62.184 | 1/20/2012 2:34 | 9F9DC5FE1EABB3825B39C5D245EE59F0E116F1BB | Malibu Media | Anneli Dream Girl | Windstream Communications |
| 289 | 173.189.136.88 | 1/19/2012 14:14 | 367C3565E98ADF9B7FB20B8592AF4C8A978BDEB3 | Raw Films, Ltd. | Bare Desire | Windstream Communications |

Exhibit A to Order on Plaintiff's Motion for Internet Service Providers To Disclose Identifying Information of Unknown Doe Defendants, Dated February 15, 2012

| DOE# | IP | Hit date (UTC) | Base32 Hash | Studio | Title | ISP |
|---|---|---|---|---|---|---|
| 290 | 173.190.21.178 | 2/9/2012 7:29 | BE309EAAEA62390FF5E35F4B018E7D1C89C51A30 | Malibu Media | X-Art Siterip #14 | Windstream Communications |
| 291 | 173.190.71.207 | 11/18/2011 13:49 | D0DE9062102977D136A7D055953D5D57A088C1E4 | Raw Films, Ltd. | Bareback Street Gang | Windstream Communications |
| 292 | 173.191.108.159 | 12/11/2011 21:07 | AF4FEA9577B0B1C6C617B7CD3C048BB0283C2448 | Malibu Media | Rich Girl Part #2 | Windstream Communications |
| 293 | 173.191.155.131 | 12/23/2011 22:07 | D0DE9062102977D136A7D055953D5D57A088C1E4 | Raw Films, Ltd. | Bareback Street Gang | Windstream Communications |
| 294 | 173.191.30.122 | 1/29/2012 0:33 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Windstream Communications |
| 295 | 174.130.104.246 | 11/25/2011 23:52 | AF4FEA9577B0B1C6C617B7CD3C048BB0283C2448 | Malibu Media | Rich Girl Part #2 | Windstream Communications |
| 296 | 174.130.73.242 | 1/26/2012 21:19 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Windstream Communications |
| 297 | 174.130.85.184 | 1/3/2012 15:21 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Windstream Communications |
| 298 | 50.96.80.182 | 1/22/2012 16:28 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Windstream Communications |
| 299 | 50.96.83.47 | 1/5/2012 4:26 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Windstream Communications |
| 300 | 50.96.87.122 | 12/31/2011 21:48 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Windstream Communications |
| 301 | 67.140.171.106 | 1/18/2012 6:53 | DCC3BE8B25C3873AEF74A46EE0F62EB0DCFB0143 | Raw Films, Ltd. | Eurocreme Library #2 | Windstream Communications |
| 302 | 67.140.209.251 | 12/1/2011 9:32 | 59448198C43090645093E37289900D8EBB4D4D04 | Malibu Media | Veronica Wet Orgasm | Windstream Communications |
| 303 | 67.140.49.26 | 12/24/2011 6:11 | F70B4A483A0011DCBFF8FA11AB1B44DE60AF3DB4 | Raw Films, Ltd. | Tooled Up Twinks | Windstream Communications |
| 304 | 68.232.116.57 | 2/8/2012 5:52 | 05FDEAAC4CFB03D2C9F36D7794F523AD34685E36 | Malibu Media | Poolside Striptease | Windstream Communications |
| 305 | 69.66.247.139 | 1/31/2012 22:59 | 35813ECED30B923A57A5336F35BE686E3488F409 | Malibu Media | Leila And Anneli Menage A Trois | Windstream Communications |
| 306 | 69.66.68.25 | 1/21/2012 19:07 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Windstream Communications |
| 307 | 71.31.236.203 | 12/1/2011 2:49 | 4EB414F1AE9EAFF41C43915D35911716CF907B63 | Raw Films, Ltd. | Eurocreme Library #1 | Windstream Communications |
| 308 | 71.7.89.100 | 2/2/2012 17:11 | 9F9DC5FE1EAB83825B39C5D245EE59F0E116F1BB | Malibu Media | Anneli Dream Girl | Windstream Communications |
| 309 | 71.7.99.99 | 1/22/2012 10:21 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | Windstream Communications |
| 310 | 75.117.15.181 | 1/29/2012 16:03 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Windstream Communications |
| 311 | 75.117.16.58 | 12/31/2011 17:22 | D0DE9062102977D136A7D055953D5D57A088C1E4 | Raw Films, Ltd. | Bareback Street Gang | Windstream Communications |
| 312 | 75.117.61.121 | 1/25/2012 22:00 | D0DE9062102977D136A7D055953D5D57A088C1E4 | Raw Films, Ltd. | Bareback Street Gang | Windstream Communications |
| 313 | 75.117.61.228 | 2/4/2012 11:15 | 08987B0E347D381B9C1A1CD524B1BBFFA8CD06FF | Malibu Media | Leila Last Night | Windstream Communications |
| 314 | 75.88.142.52 | 1/17/2012 3:41 | 6ABA948B4009927C5B67E7FDE77C4500D62CA4E6 | Raw Films, Ltd. | Bareback Rentboys | Windstream Communications |
| 315 | 75.88.221.10 | 12/23/2011 16:27 | D0DE9062102977D136A7D055953D5D57A088C1E4 | Raw Films, Ltd. | Bareback Street Gang | Windstream Communications |
| 316 | 75.89.10.24 | 2/4/2012 14:56 | 08987B0E347D381B9C1A1CD524B1BBFFA8CD06FF | Malibu Media | Leila Last Night | Windstream Communications |
| 317 | 75.89.103.100 | 2/5/2012 19:32 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Windstream Communications |
| 318 | 75.89.28.173 | 11/27/2011 10:02 | E1E51A271218C651816335477A9549E579C41F51 | Malibu Media | Veronica Wet Orgasm | Windstream Communications |

Exhibit A to Order on Plaintiff's Motion for Internet Service Providers To Disclose Identifying Information of Unknown Doe Defendants, Dated February 15, 2012

| DOE# | IP | Hit date (UTC) | Base32 Hash | Studio | Title | ISP |
|------|-----|------|------|------|------|-----|
| 319 | 75.89.67.57 | 1/3/2012 4:10 | E08C7D67052512D7D1CF4AC1EC3468E7D9B266BE | Malibu Media | Tiffany Teenagers in Love | Windstream Communications |
| 320 | 75.89.72.217 | 1/3/2012 15:21 | 3B39460ABF5377A5830F532935B590D40086B834 | Malibu Media | Girls Night Out | Windstream Communications |
| 321 | 75.90.130.20 | 1/13/2012 5:36 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | Windstream Communications |
| 322 | 75.90.177.9 | 1/15/2012 7:38 | 4EB414F1AE9EAFF41C43915D35911716CF907B63 | Raw Films, Ltd. | Eurocreme Library #1 | Windstream Communications |
| 323 | 75.91.250.207 | 1/9/2012 4:26 | FFF24BD9C0F76FD0B5683B06F5124ECA6C1789A7 | Malibu Media | Tiffany Sex With A Supermodel | Windstream Communications |
| 324 | 98.16.208.5 | 1/21/2012 6:08 | 05FDEAAC4CFB03D2C9F36D7794F523AD34685E36 | Malibu Media | Poolside Striptease | Windstream Communications |
| 325 | 98.16.210.158 | 12/10/2011 14:01 | 59448198C43050645093E37289900D8EBB4D4D04 | Malibu Media | Veronica Wet Orgasm | Windstream Communications |
| 326 | 98.17.153.166 | 1/11/2012 18:36 | D4C5C440EBA7439F32A13AFEA57803528CAE548D | Raw Films, Ltd. | Tooled Up Twinks | Windstream Communications |
| 327 | 98.17.84.9 | 1/31/2012 6:35 | F70B4A483A0011DCBFF8FA11AB1B44DE60AF3DB4 | Raw Films, Ltd. | Tooled Up Twinks | Windstream Communications |
| 328 | 98.18.37.220 | 12/31/2011 22:22 | 509CEAA4CB8E57F00EB85669AEBE855327A6ECE3 | Malibu Media | X-Art Siterip #34 | Windstream Communications |
| 329 | 98.18.58.75 | 2/1/2012 4:08 | 98FBB7694A6ACF40A612F9844A3EC0896807ECDA | Malibu Media | Angel Journey To The East | Windstream Communications |
| 330 | 98.19.246.75 | 1/28/2012 8:24 | F70B4A483A0011DCBFF8FA11AB1B44DE60AF3DB4 | Raw Films, Ltd. | Tooled Up Twinks | Windstream Communications |
| 331 | 98.19.63.135 | 1/27/2012 21:58 | D0DE9062102977D136A7D055953D5D57A088C1E4 | Raw Films, Ltd. | Bareback Street Gang | Windstream Communications |
| 332 | 98.22.151.17 | 1/21/2012 8:39 | B42EA198025C67799C196CB3BB7DF171C9B78103 | Malibu Media | Angel Journey To The East | Windstream Communications |
| 333 | 98.23.0.173 | 12/29/2011 23:16 | E6294783973F73A65725A7646BD3040EFB35C790 | Malibu Media | Leila Sex on the Beach | Windstream Communications |
| 334 | 98.23.99.21 | 12/5/2011 9:21 | 3B39460ABF5377A5830F532935B590D40086B834 | Malibu Media | Girls Night Out | Windstream Communications |
| 335 | 216.156.189.226 | 1/29/2012 6:20 | 684CC8B918B613ECB9E9D46EE6B58F7EA39D4F8B | Malibu Media | Tiffany Teenagers In Love | XO Communications |
| 336 | 64.244.36.77 | 12/2/2011 22:55 | 367C3565E98ADF9B7FB20B8592AF4C8A978BDEB3 | Raw Films, Ltd. | Bare Desire | XO Communications |
| 337 | 64.244.39.243 | 11/30/2011 23:35 | 367C3565E98ADF9B7FB20B8592AF4C8A978BDEB3 | Raw Films, Ltd. | Bare Desire | XO Communications |
| 338 | 65.106.221.226 | 1/26/2012 17:42 | C7F83512BA5E4C3FFECE934E98DE2EEBD8E730DD | Malibu Media | Leila And Anneli Menage A Trois | XO COMMUNICATIONS |
| 339 | 65.106.88.234 | 1/21/2012 7:46 | D0DE9062102977D136A7D055953D5D57A088C1E4 | Raw Films, Ltd. | Bareback Street Gang | XO Communications |
| 340 | 66.236.170.26 | 1/25/2012 0:08 | B41638A57B2D315107C5ED12ED42434125A03E70 | Malibu Media | Leila And Anneli Menage A Trois | XO Communications |
| 341 | 66.239.60.202 | 1/30/2012 5:21 | E08C7D67052512D7D1CF4AC1EC3468E7D9B266BE | Malibu Media | Tiffany Teenagers in Love | XO Communications |
| 342 | 66.239.61.74 | 1/19/2012 4:32 | 5BAAC90BABA744EB25F86F9E2971E2017298C1F9 | Malibu Media | Leila And Anneli Menage A Trois | XO Communications |
| 343 | 66.239.63.81 | 2/8/2012 23:43 | 625659538761601BE56B75C3D1DF1053A7C8BB28 | Malibu Media | X-Art Siterip #2 | XO Communications |

Exhibit A to Order on Plaintiff's Motion for Internet Service Providers To Disclose Identifying Information of Unknown Doe Defendants, Dated February 15, 2012

| DOE# | IP | Hit date (UTC) | Base32 Hash | Studio | Title | ISP |
|------|-----|----------------|-------------|--------|-------|-----|
| 344 | 67.105.196.4 | 1/15/2012 13:26 | 35813ECED30B923A57A5336F35BE686E3488F409 | Malibu Media | Leila And Anneli Menage A Trois | XO COMMUNICATIONS |
| 345 | 67.107.9.24 | 12/31/2011 0:05 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | XO Communications |
| 346 | 67.111.244.246 | 12/19/2011 22:45 | 4CDDD0985BFE8792D19A41F9AA5ECE3840E7A178 | Malibu Media | Kristen Girl Next Door | XO Communications |
| 347 | 71.4.30.2 | 1/14/2012 21:18 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Malibu Media | X-Art Siterip #1 | XO Communications |

Page 1

1              UNITED STATES DISTRICT COURT

               SOUTHERN DISTRICT OF FLORIDA

2                   MIAMI DIVISION

3                      - - -

4    MALIBU MEDIA, LLC,      :  Civil Action Case

             Plaintiff,      :  No. 1:12-cv-22768-PAS

5                            :

          vs.                :

6                            :

     LEO PELIZZO,            :

7         Defendant.         :

8                      - - -

9            Wednesday, March 13, 2013

10                     - - -

11           Oral deposition of LAURIE M. MURPHY,

12   taken at the offices of Veritext National Court

13   Reporting Company, 44 East Court Street,

14   Doylestown, Pennsylvania, commencing at 3:33

15   p.m., before Jennifer S. Walker, a Federally

16   Approved Registered Professional Reporter and

17   Notary Public.

18

19

20

21

22

23

24

25

**EXHIBIT J**

Page 79

LAURIE M. MURPHY

1
2      A.     Yes.

3      Q.     Is there any way of tracking what

4   specific time Milton searched for in

5   associating that IP address with Mr. Pelizzo?

6      A.     I don't know.

7      Q.     Do you know what increments the

8   DHCP server records at?

9      A.     I do not.

10     Q.     Did you ever send out any

11  notification to Mr. Pelizzo that subscriber

12  information was being provided to Malibu?

13     A.     Initially, no.  After Hotwire

14  responded with the answers in Schedule A -- I'm

15  trying to think.  Oh.  Actually, before Hotwire

16  responded to the -- that subpoena, I sent a

17  notice -- I believe I sent a notice to

18  Mr. Pelizzo to give him time to object and

19  never heard anything, so Hotwire responded.

20     Q.     Do you have a copy of that

21  correspondence?

22     A.     Yes.

23     Q.     Do you know what the date on that

24  was?

25     A.     Not off the top of my head.

**Keith Lipscomb**

| | |
|---|---|
| **From:** | Keith Lipscomb |
| **Sent:** | Thursday, October 11, 2012 1:37 PM |
| **To:** | Francisco Ferreiro; Emilie Kennedy |
| **Cc:** | John Cyril Malloy III; Maritza Cabello; Keith Lipscomb |
| **Subject:** | RE: Malibu Media, LLC v. Leo Pelizzo; 5.872.12 |

Francisco and John,

Emilie Kennedy, an attorney here, called and left you a message last Friday.   That call was not returned.   And, you rejected my request for an enlargement – which I wanted to use so we could talk.

You both understand the value of IP and we have substantial evidence of infringement.   And, so at some level you will empathize with my client.   Contrary to what some believe, we do not want to push this case against a person who was not the downloader nor do we expect a non-infringer to settle.   We're looking for justice.   Toward that end, your client claims to have been out of the country at the time many of the infringements occurred.   Hotwire identified your client's IP address as being used during that time.   We need to get to the bottom of this issue.   As I see it, there are three possibilities: (a) Hotwire gave us bad information; (b) someone was stealing your client's internet; or (c) your client is lying.

Figuring this out as inexpensively and expeditiously as is possible is in both of our clients' best interests.   I would like to teleconference with you toward this end.   Specifically, I'd like to explain to you my initial case plan and see if we can agree to move slowly while I pursue it.

Let me know when and if you are available.

Thanks,
Keith

---

**From:** Francisco Ferreiro [mailto:FFerreiro@malloylaw.com]
**Sent:** Thursday, October 11, 2012 11:02 AM
**To:** Keith Lipscomb; Emilie Kennedy
**Cc:** John Cyril Malloy III; Maritza Cabello
**Subject:** Malibu Media, LLC v. Leo Pelizzo; 5.872.12

Dear Mr. Lipscomb:

Please note that the Summary of Evidence filed in the above-referenced matter indicates that "Plaintiff sought contact with Defendant's counsel to discuss the case before filing this response" [and that] "Defendant's counsel, however, did not answer Plaintiff's call or return its voicemail."   Please note that I have received no communications about "discussing the case."   Rather, I received a single email from an associate at your firm requesting consent to an extension of time to file a response.   I responded to this email, this same day, and noted that our client was – given the factual circumstances of this matter – unwilling to consent to any such extensions.   Our client has indicated that he received no correspondence from you – either at his address or via e-mail – prior to your filing the Complaint in this matter.

Kindest Regards,

Francisco J. Ferreiro
Malloy & Malloy, P.A.
fferreiro@malloylaw.com
2800 S.W. 3rd Avenue

1

**EXHIBIT L**

**Keith Lipscomb**

| | |
|---|---|
| **From:** | Keith Lipscomb |
| **Sent:** | Tuesday, October 23, 2012 11:59 AM |
| **To:** | Francisco Ferreiro; Emilie Kennedy |
| **Cc:** | Maritza Cabello; Keith Lipscomb |
| **Subject:** | RE: Malibu Media, LLC v. Leo Pelizzo; 5.872.12 |

Francisco,

As discussed, we have evidence that your client's IP address was used to commit 20 infringements. Further, we connected to your client's IP Address 398 times to record these infringements. Oddly, the infringements are continuing on the same IP Address which was previously assigned to your client. That does not make sense to us. Because, while not impossible, two people assigned the same IP address stealing the same movies would be an unusual coincidence. The infringement is substantial though. And, my clients want it to stop.

We discussed the internet resolving to your client's vacation home, and your client being out of town for the bulk of time during which the infringement occurred. Given that your client was out of town and that the infringement continues after your client was assigned a different IP address, it raises the possibility that there was a correlation error by your client's ISP, Hotwire. To the best of our knowledge, we have never had an ISP miscorrelate a subscriber -- but, in this instance we want to investigate. Toward that end, we plan to serve Hotwire with a subpoena duces tecum for deposition. Prior to doing so, we need to file a 26(f) report. In due course, I will prepare both documents and send them to you.

During our conversation, I urged you to advise your client not to spend money on this process. Presently, we do not intend to pursue this matter past the deposition of Hotwire unless we get confirmation from Hotwire that your client is the correct subscriber. And, thereafter we will only pursue it if we can explain why infringements occurred when he was out of town.

Best regards,
Keith

---

**From:** Francisco Ferreiro [mailto:FFerreiro@malloylaw.com]
**Sent:** Tuesday, October 23, 2012 11:09 AM
**To:** Keith Lipscomb; Emilie Kennedy
**Cc:** Maritza Cabello
**Subject:** RE: Malibu Media, LLC v. Leo Pelizzo; 5.872.12

Keith,

Don't think I've gotten your call. Let me know if you're still available.

Kindest Regards,

Francisco J. Ferreiro
Malloy & Malloy, P.A.
fferreiro@malloylaw.com
2800 S.W. 3rd Avenue
Miami, Florida 33129
Tel. (305) 858-8000
Fax.(305) 858-0008

# EXHIBIT M

**Crystal Sebastian**

| | |
|---|---|
| **From:** | Francisco Ferreiro [FFerreiro@malloylaw.com] |
| **Sent:** | Thursday, March 21, 2013 11:27 AM |
| **To:** | Keith Lipscomb |
| **Cc:** | Alejandra Albuerne; Crystal Sebastian; Maria Elena Chavarria; copyright; John Cyril Malloy III; Maritza Cabello |
| **Subject:** | RE: 1:12-cv-22768-PAS - Malibu Media v. Leo Pelizzo - Hotwire |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Dear Keith:

As you know, last week's deposition revealed a disconcerting number of holes in the "investigation" that led to our client being identified as the defendant in the above-referenced matter.  Specifically, Ms. Murphy testified (1) that Quantum of the Bay is provided with blocks of IP addresses which are then assigned to its 700+ unit owners; (2) that these addresses are kept in a "mixing pot" and may be re-assigned if an internet connection is not utilized for 24 hours; (3) that Hotwire obtains information about individual subscribers from the Quantum of the Bay property manager; (4) that Hotwire makes no effort to confirm the veracity of this information as "individual details are not important"; (5) that the internet port connection associated with an individual unit could be mislabeled; and (6) that Hotwire never made an effort to confirm that the port associated with Mr. Pelizzo's apartment was correctly identified prior to responding to the subpoena.  In addition to the foregoing, Ms. Murphy also testified that the IP search itself (1) was conducted by an employee who left the company for unknown reasons over six (6) months ago;  and (2) that no documentation is available to corroborate the IP address, date, and/or time inputted in the search query.

The foregoing, coupled with the fact that our client was in Venezuela for the vast majority of period that the alleged infringement occurred, raises serious questions about the evidentiary support relied upon in bringing your complaint. Given the highly embarrassing nature of these claims, it is unlikely that a court would look kindly upon these ambiguities if this action were to continue to move forward.  As we are dealing with some rather novel legal issues, these revelations also have the potential to negatively affect the number of other cases your client is currently pursuing.

As you might imagine, our client experienced severe distress and embarrassment as a result of your lawsuit.  Therefore, our client has been forced to incur significant legal fees in an effort to defend his name.   Consequently, our client's willingness to settle this matter would hinge upon your client's agreement to (1) dismiss this action with prejudice; (2) compensate our client for the legal fees he has incurred, presently in the range of $17,500 in connection with this action; and (3) file a statement with the court that our client was incorrectly identified as downloader of the infringing materials in question.

We believe your client should – given the unique circumstances involved -- find these settlement terms more than reasonable.  The foregoing is not a complete statement of settlement terms and, as such, is not an offer than can be accepted without negotiation of a full, written agreement.

Kindest Regards,


Francisco J. Ferreiro
Malloy & Malloy, P.A.
fferreiro@malloylaw.com
2800 S.W. 3rd Avenue
Miami, Florida 33129
Tel. (305) 858-8000
Fax.(305) 858-0008

# EXHIBIT N

**Crystal Sebastian**

| | |
|---|---|
| **From:** | Keith Lipscomb |
| **Sent:** | Thursday, April 11, 2013 12:21 PM |
| **To:** | Francisco Ferreiro; Crystal Sebastian |
| **Cc:** | Maritza Cabello; John Cyril Malloy III; Keith Lipscomb; Emilie Kennedy |
| **Subject:** | RE: Malibu Media v. Pelizzo |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Francisco,

I do not believe that your client is entitled to any attorneys' fees. We did not press this matter beyond the point where it was reasonable to do so. Indeed, we called you before you before you wrote the motion to dismiss. You could have told me your client's situation during at that time and avoided the necessity of writing a motion to dismiss in the first instance. Ultimately, that motion to dismiss, like all others like them, was denied. Thereafter, I advised you that I would likely dismiss your client after we took Hotwire's deposition. The person using the IP address Hotwire said was assigned to your client has habitually (over 500 times) infringed my client's copyrights. Spending money after that email was done so in bad faith. As was plainly obvious, I was attempting to figure out the error (which is of a type we have never seen before.) Namely, it is the result of bad reporting by the building to Hotwire. Nevertheless, you continued to spend money on this matter, in my opinion, totally unnecessary. Regardless, I have asked several other IP attorneys in town how much they would charge to draft a motion to dismiss, a simple answer, attend a 4 hour deposition (where I did the bulk of the questioning) and a mediation. The range is between 7.5-13K. I hereby offer 13K. This offer is open for 1 day. If your client does not take it I will voluntarily dismiss the matter and argue that Mr. Pelizzo is not entitled to any attorneys' fees. Toward that end, be advised that Judge Seitz wrote an opinion abotu attorneys' fees and copyrights wherein she only awarded the *reasonable* fees incurred past the point of time where the plaintiff unreasonably pursed the claim. This is consistent with the law in the 11th Circuit.

On Monday, if the offer is not accepted, we will dismiss.

Best regards,
Keith

---

**From:** Francisco Ferreiro [FFerreiro@malloylaw.com]
**Sent:** Thursday, April 11, 2013 11:59 AM
**To:** Keith Lipscomb; Crystal Sebastian
**Cc:** Maritza Cabello; John Cyril Malloy III
**Subject:** RE: Malibu Media v. Pelizzo

Keith:

As you know, earlier this month you sent our client a series of discovery requests. Similarly, we will need to move forward with preparing our own discovery requests if you intend to move forward with this action. Accordingly, in order to determine how to proceed, please advise if you have come to a decision regarding our settlement proposal or, alternatively, if you intend to dismiss this action.

Kindest Regards,

Francisco J. Ferreiro

# EXHIBIT O

**Crystal Sebastian**

| | |
|---|---|
| **From:** | Francisco Ferreiro [FFerreiro@malloylaw.com] |
| **Sent:** | Thursday, April 11, 2013 2:36 PM |
| **To:** | Keith Lipscomb; Crystal Sebastian |
| **Cc:** | Maritza Cabello; John Cyril Malloy III; Emilie Kennedy |
| **Subject:** | RE: Malibu Media v. Pelizzo |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Dear Keith:

Mr. Pelizzo is unwilling to forego the full reimbursement of fees and costs he has incurred in connection with defending this wrongful action.

Kindest Regards,

Francisco J. Ferreiro
Malloy & Malloy, P.A.
fferreiro@malloylaw.com
2800 S.W. 3rd Avenue
Miami, Florida 33129
Tel. (305) 858-8000
Fax.(305) 858-0008



Patent, Trademark & Copyright Law



2800 S.W. Third Ave.  *"Since 1959"*
Historic Coral Way
Miami, Florida 33129
Tel. (305) 858-8000
Fax. (305) 858-0008
www.malloylaw.com

**Twitter:** http://Twitter.com/FJFerreiro
**IP Blog:** http://MalloyLaw.com/blog

NOTICE: This transmission contains CONFIDENTIAL INFORMATION which also may be LEGALLY PRIVILEGED. It is intended only for the use of the Addressee(s). If you are not the Addressee or the employee or agent responsible for delivering it to the Addressee, you are hereby notified that any dissemination or copying of this transmission may be strictly prohibited. If you have received this transmission in error, please immediately destroy the original and any attachments, without reading, saving, or printing them, and notify us by replying to fferreiro@malloylaw.com.

**From:** Keith Lipscomb [mailto:KLipscomb@LEBFIRM.COM]
**Sent:** Thursday, April 11, 2013 12:43 PM
**To:** Francisco Ferreiro; Crystal Sebastian
**Cc:** Maritza Cabello; John Cyril Malloy III; Emilie Kennedy; Keith Lipscomb
**Subject:** RE: Malibu Media v. Pelizzo

# EXHIBIT P

**Crystal Sebastian**

| | |
|---|---|
| **From:** | Francisco Ferreiro [FFerreiro@malloylaw.com] |
| **Sent:** | Monday, April 08, 2013 4:37 PM |
| **To:** | Keith Lipscomb |
| **Cc:** | John Cyril Malloy III; copyright; Crystal Sebastian |
| **Subject:** | RE: Malibu Media v. Pelizzo |
| **Attachments:** | Stipulation of Dismissal.doc |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Keith:

Initially, thank you for agreeing to provide our client additional time to respond to your settlement proposal offering $5,000 toward reimbursement of our client's fees and costs, along with a dismissal with prejudice containing an exculpatory statement.

After taking time to consider this offer, Mr. Pelizzo has communicated that he is unwilling to forego the full reimbursement of fees and costs he has incurred in connection with defending this wrongful action.  These fees and costs now stand at $24,000 and, of course, will continue to grow, including with respect to any motion for fees and costs.  Moreover, continued pendency of this litigation will result in a judicial determination which will publicize the deficiencies of your pre-suit investigation, the results of discovery, and provide a basis upon which other defendants may rely in moving for similar dispositions and possible sanctions.

As a counter-offer, which will allow you to avoid this outcome, please forward your check in the amount of $24,000 made payable to "Malloy & Malloy PL Trust Account" and, upon clearance of the funds, we will execute the attached stipulation.

Kindest Regards,

Francisco J. Ferreiro
Malloy & Malloy, P.A.
fferreiro@malloylaw.com
2800 S.W. 3rd Avenue
Miami, Florida 33129
Tel. (305) 858-8000
Fax.(305) 858-0008





Patent, Trademark & Copyright Law

2800 S.W. Third Ave.   *"Since 1959"*
Historic  Coral Way
Miami, Florida 33129
Tel.  (305) 858-8000
Fax.  (305) 858-0008
www.malloylaw.com

**Twitter:**   http://Twitter.com/FJFerreiro

# EXHIBIT Q

**Crystal Sebastian**

| | |
|---|---|
| **From:** | Francisco Ferreiro [FFerreiro@malloylaw.com] |
| **Sent:** | Wednesday, April 17, 2013 11:47 AM |
| **To:** | Emilie Kennedy; Keith Lipscomb; Crystal Sebastian |
| **Cc:** | Maritza Cabello; John Cyril Malloy III |
| **Subject:** | RE: Malibu Media v. Pelizzo |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Emilie:

We won't stipulate to a dismissal absent agreement to the settlement terms that Keith previously rejected.

Kindest Regards,


Francisco J. Ferreiro
Malloy & Malloy, P.A.
fferreiro@malloylaw.com
2800 S.W. 3rd Avenue
Miami, Florida 33129
Tel. (305) 858-8000
Fax.(305) 858-0008





Patent, Trademark & Copyright Law

2800 S.W. Third Ave.   *"Since 1959"*
Historic  Coral Way
Miami, Florida 33129
Tel.   (305) 858-8000
Fax.  (305) 858-0008
www.malloylaw.com


**Twitter:**   http://Twitter.com/FJFerreiro
**IP Blog:**   http://MalloyLaw.com/blog

NOTICE: This transmission contains CONFIDENTIAL INFORMATION which also may be LEGALLY PRIVILEGED. It is intended only for the use of the Addressee(s). If you are not the Addressee or the employee or agent responsible for delivering it to the Addressee, you are hereby notified that any dissemination or copying of this transmission may be strictly prohibited. If you have received this transmission in error, please immediately destroy the original and any attachments, without reading, saving, or printing them, and notify us by replying to fferreiro@malloylaw.com.

**From:** Emilie Kennedy [mailto:EKennedy@lebfirm.com]
**Sent:** Wednesday, April 17, 2013 11:46 AM
**To:** Francisco Ferreiro; Keith Lipscomb; Crystal Sebastian
**Cc:** Maritza Cabello; John Cyril Malloy III
**Subject:** RE: Malibu Media v. Pelizzo

# EXHIBIT R

# TAB 49

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Case No. 1:12-CV-22768-CIV-SEITZ/SIMONTON**

MALIBU MEDIA, LLC,                    )
                                      )
            Plaintiff,                )
                                      )
v.                                    )
                                      )
LEO PELIZZO,                          )
                                      )
            Defendant.                )
_____ )

<u>**REPLY IN SUPPORT OF DEFENDANT'S VERIFIED MOTION**</u>
<u>**FOR ATTORNEYS' FEES AND COSTS**</u>

Defendant Leo Pelizzo ("Defendant" or "Mr. Pelizzo"), by and through undersigned counsel, hereby files the following reply in support of Defendant's Verified Motion for Attorneys' Fees and Costs.

The circumstances surrounding Plaintiff's suit against Mr. Pelizzo raise a number of questions. These include (1) whether the Plaintiff was justified in filing suit against Mr. Pelizzo based <u>solely</u> upon an IP Address associated with a 700-unit condominium building; (2) whether the Plaintiff was justified in continuing to pursue that action seven (7) months <u>after</u> receiving evidence that Mr. Pelizzo was out of the country during the relevant infringement period; and (3) whether Mr. Pelizzo should be forced to pay the fees and costs that were incurred as a result of Plaintiff's filing and continued pursuit of its frivolous claims. While most people would find these to be the most relevant questions, Plaintiff's counsel concludes – instead -- that Mr. Pelizzo's entitlement to fees hinges solely on the question of whether "allowing the copyright owner to depose the ISP further [sic] the interest of the Copyright Act." [DE #47, p. 6]

Employing characteristically inscrutable logic, Plaintiff argues that he was promoting the Copyright Act's interests when he embarked, like a real-life Inspector Clouseau, on a leisurely nine (9) month long investigation into why it was that he had sued the wrong person.  This thesis is presented within a revisionist narrative in which Plaintiff seamlessly interweaves fact and fiction; accordingly, in the interest of accuracy, Defendant offers the following corrections to the record:

## I.  THE IP MISCORRELATION.

### A.  The IP Miscorrelation Was Not An Isolated Incident.

On July 24, 2013, Plaintiff's counsel submitted a sworn statement as part of his response claiming this is "the first *and only* case where Malibu's counsel believes an ISP made a correlation error." [DE #47, p. 8 and corresponding Exhibit F, Declaration of M. Keith Lipscomb at ¶5].   Plaintiff attempts to bolster this claim and distance itself from Hotwire by citing Comcast's "absolutely certain[ty]" about its IP correlations.  Leaving aside the fact that Comcast had nothing to do with this proceeding, this was odd decision as Plaintiff had, two weeks earlier, acknowledged that it had made accusations against an innocent individual as a result ISP miscorrelation.  See Exhibit A (Declaration of David Kerr.)  Also, the ISP responsible for this miscorrelation was Comcast.

### B.  Plaintiff Could Have Prevented the IP Miscorrelation.

Given the reputational and financial harms that are inflicted by these "miscorrelations", the interests of justice would clearly be served by incentivizing behavior that would that would reduce their frequency.   As previously discussed, obtaining a MAC Address would have permitted Plaintiff to tie the infringing activity to a specific device.  Hotwire testified this information would have been provided if requested; Plaintiff, however, made no such request.

See *Deposition of Laurie M. Murphy*, P. 73, lns. 7-25; p.74 1-9.   Plaintiff also failed to request additional information after receiving <u>no</u> specifics from Hotwire regarding the date(s) and time(s) that Mr. Pelizzo's account was correlated to the IP Address.

It is also necessary to emphasize Plaintiff's subpoena duces tecum to Hotwire referenced a "hit date" that consisted of a single minute in a single day.   <u>See</u> <u>Exhibit B.</u>   Specifically, Plaintiff's requested identification of the subscriber associated with the infringing IP Address at 5:37p.m on February 6, 2012.   This "date" corresponds to only one (1) of the fourteen (14) infringing acts referenced in Plaintiff's Complaint.   Nevertheless, Plaintiff went ahead and filed action despite lacking any evidence whatsoever as to the infringement of thirteen (13) of works referenced in its Complaint.

Moreover, Mr. Pelizzo's misidentification might have been avoided if Plaintiff's request had properly targeted all the relevant "hit dates". Specifically, Hotwire's representative testified (1) that an IP correlation error could have resulted from human error; and (2) that the technician conducting the IP correlation was free to arbitrarily choose any time of day in targeting the search. <u>See</u> Murphy Deposition, P. 46, lns 7-29; P. 71, lns 4-20; P.78, lns 21-25, p. 79, ln 1. Assuming the misidentification occurred due to human error or failure to limit the IP search to the correct time, conducting an additional search for a separate hit date would have revealed an inconsistency.   Consequently, the misidentification might have been prevented had Plaintiff properly requested the searches that would have been necessary to support all of the claims made in its Complaint.

As noted above, Plaintiff's carelessness has now resulted in least two (2) IP miscorrelations. As Mr. Pelizzo knows first-hand, Plaintiff's tactics and decisions have the power to wreak havoc on an individual's finances and personal and business reputation.  Here,

Plaintiff's counsel hoped to obtain an easy default judgment by strategically filing suit against a foreign citizen that appeared to be unavailable based upon incomplete and ambiguous information.   Consequently, Defendant submits that the interests of justice would be furthered by granting Defendant's Motion and, thereby, (1) deterring copyright owners from hastily relying upon incomplete data and cursory investigations in filing suits against individuals; and (2) incentivizing copyright owners to request information capable of accurately identifying individuals associated with infringing activity.

## II. THE PARTIES' BEHAVIOR.

### A. Plaintiff's Willingness to Press Forward Against Innocent Parties

Plaintiff contends that "a reasonable and cost-conscious lawyer" would have called Plaintiff's counsel prior to filing a motion to dismiss and explained that "you've got the wrong guy." [DE #47, p.9]   A "reasonable and cost-conscious lawyer", however, would have been aware (1) that Plaintiff conducts its preliminary negotiations through non-attorney professional negotiators known to harass individuals at home, as well as at work; and (2) that Plaintiff habitually refuses to engage with subscribers maintaining their innocence.   Specifically, as shown in the attached declarations, an attorney attempting to initiate contact with Plaintiff's counsel is re-routed to a non-attorney negotiators employed by an "independent company that handle[s] Malibu Media's settlement communications." See Exhibit C, [Declaration of Morgan E. Pietz, at ¶18-23][1]   It would have been neither "reasonable" nor "cost-conscious" for the undersigned to spend time fruitlessly asserting Mr. Pelizzo's innocence to a negotiator (1) trained

---

[1] See Exhibit C, [Declaration of Christina E. Saunders at ¶4, Declaration of John A. Arsenault at ¶4

to maximize settlement payments; (2) authorized to engaged solely in verbal communications; and (3) not subject to rules governing professional conduct.[2]

Moreover, even if Plaintiff's counsel could have reached for a preliminary discussion, a prompt resolution would not have been reached. Plaintiff could have immediately filed a notice of dismissal upon receiving evidence that Mr. Pelizzo had been out of the country on February 6th and, therefore, away on the only "hit date" referenced in Hotwire's response. Instead, Plaintiff filed a response to Defendant's Motion accusing Mr. Pelizzo of downloading six (6) additional pornographic works[3] and went on to pursue the action for seven (7) additional months.

In a typographical error that could – at first glance—be mistaken for a rare moment of candor, Plaintiff's Response asserts that "Malibu has no desire to settle with innocent subscribers." [DE #47, P.7]. This truth behind this Freudian slip is demonstrated by the manner that Plaintiff reacts when confronted with such evidence. On June 28, 2012, Lindsey V. Maness, Jr. -- a 66-year old woman sued by the Plaintiff for allegedly downloading pornography-- attempted to provide the Plaintiff with evidence of her innocence. See Exhibit D, p.4 [Declaration of Lindsey V. Maness, Jr.] Her letter was ignored. Id. This has been an experience shared by other individuals that have offered the Plaintiff unfettered access to home networks and computers in an effort to prove their innocence.[4] Consequently, there is no reason to believe Plaintiff would have behaved differently if provided evidence of Mr. Pelizzo's innocence.

---

[2] These negotiators – who have been known to harass individuals at home, as well as work – would not be subject to rules governing communications with clients or confidentiality. See Exhibit C, Declaration of David S. Kerr at ¶8 and Declaration of John Does at ¶10
[3] See [DE #13]
[4] See Exhibit D, p. 1 [Declaration of Christina E. Saunders at ¶6-9, Declaration of John A. Arsenault at ¶6-9], Declaration of David S. Kerr at ¶5.]

**B.   Defendant Decision to File a 12(b)(6) Motion.**

The most important weapon in Plaintiff's arsenal is the embarrassing nature of its claims. By the time Mr. Pelizzo learned of the Plaintiff's claims, the Plaintiff had already filed its Complaint and the allegations made therein – as well as Mr. Pelizzo's identity – were already the subject of various internet blogs devoted to the subject of "copyright trolls."   Given the foregoing, Mr. Pelizzo was not interested in reaching a private settlement or paying money to the party wrongfully accused him of a crime.   Instead, Mr. Pelizzo wanted to publicly defend his reputation and – if possible – prevent this from happening to another individual in the future. For this reason, and due to the unique factual and legal issues involved, Defendant decided to respond to Plaintiff's Complaint by moving to dismiss.    Despite claiming that "scores of *identical* Rule 12(b)(6) have been *universally* rejected", Plaintiff fails to cite a single Rule 12(b)(6) opinion discussing the *identical* legal issues addressed in Defendant's Motion to Dismiss.    This is not surprising, as Plaintiff's suit was one of the first instances in an IP correlation led to the filing of an infringement suit against a named individual.   In light of the foregoing, Defendant's Motion was neither frivolous nor unreasonable.

**C.   Defendant Mounted a Reasonable Defense.**

Plaintiff's counsel knew – as early as October 2012-- that he had sued the wrong party. Nevertheless, rather than filing a notice of voluntary dismissal, Plaintiff moved forward with its action.   It was only following Hotwire's deposition – seven (7) months after the filing of this action --- that Plaintiff's counsel offered to dismiss this action.    This offer was made (1) contingent upon Mr. Pelizzo paying his own fees; and (2) with the understanding that Plaintiff would wait thirty-days (30) to dismiss, during which time it would attempt to locate the actual infringer.

6

Defendant responded to this offer by requesting that Plaintiff (1) file a public statement acknowledging Mr. Pelizzo's innocence; and (2) re-imburse Mr. Pelizzo for the fees and expenses incurred, which were estimated at $17,500.   Plaintiff's counsel did not respond with a counter-offer or relay a willingness to file the requested statement.   He reacted, instead, by serving "offensive discovery" and threatening to move forward until Mr. Pelizzo was left destitute.   Plaintiff's counsel now claims to have been "shocked" to learn that Mr. Pelizzo had – over the course of seven (7) months -- incurred around $17,500 in legal fees and expenses.   In fact, Plaintiff sheepishly explains his "regrettable emails" by claiming that the magnitude of these fees caused him to enter a dissociative state of rage for which he cannot be held responsible. Oddly, however, Plaintiff's has previously advised defendants that "the average cost of a copyright litigation *[sic]*is 600k through trial …[t]his is a relatively simple case but the fees will nevertheless be substantial and indubitably in the 6 figures." See Exhibit D, p. 2.

Plaintiff states that the undersigned was – on October 23, 2012 -- "urged" not to spend money in this proceeding.   This statement was made only days after the Plaintiff alleged, as part of its Response to Defendant's Motion to Dismiss, that Mr. Pelizzo had infringed six (6) additional works.   The statement was also strategically made right before Defendant's deadline to file its reply.   Nevertheless, as shown in the billing statements attached to Defendant's Motion for Fees, the undersigned made minimal billing entries between the filing of its reply and the Hotwire deposition.   Specifically, the total number of hours billed during this relevant period was: 2.5 hours for November 2012; 1.7 hours for December 2012; 1.8 hours for January 2012; and 3 hours for February 2012.   These time entries could have been mitigated had Plaintiff not

delayed in taking Hotwire's deposition.[5]  More obviously, they could have been mitigated if Plaintiff had dismissed its action upon learning of Mr. Pelizzo's innocence.

Plaintiff also makes a number of misrepresentations regarding the parties' mediation.  Apart from being improper, Plaintiff's characterization of the substance of the mediation discussions is inaccurate.  First, as evidenced by Plaintiff's "regrettable" emails, it was not at all apparent that Plaintiff desired to dismiss this action. As evidenced by the filing of Plaintiff's notice of dismissal after mediation, Plaintiff's counsel mistakenly believed he could dismiss this action without Mr. Pelizzo's consent or leave of court.  Accordingly, if Plaintiff wanted to dismiss this action, it would have filed this notice prior to the mediation conference.  Furthermore, contrary to Plaintiff's claims, the mediation was not exclusively devoted to the question of fees.  By way of example, as Plaintiff's counsel was insistent upon shifting blame for the correlation error to a third-party, much of the mediation was devoted to Mr. Pelizzo's entitlement to and the phrasing of a public statement regarding his innocence.

### D.  **Defendant's Fees were Reasonable**.

As previously discussed, the undersigned's hourly rate was reasonable in light of the undersigned's experience and expertise in intellectual property law.   Further, because Mr. Pelizzo does not speak English, the undersigned's fluency in Spanish was necessary to legal representation.  By way of example, this undersigned's fluency in Spanish proved indispensible during the mediation conference and helped minimized expenses by obviating the need to obtain a translator.  The total fees incurred by Mr. Pelizzo between August 23, 2012 and May 31, 2013

---

[5] Plaintiff now acknowledges that the infringement complained of in this action continued until at least January 2013 [DE #47, p. 8].  It must be noted, then, that Plaintiff made a decision to delay Hotwire's deposition until mid-March 2013 (which, perhaps coincidentally and perhaps not, coincided with the expiration of Hotwire's two (2) month retention policy for subscriber records on its DHCP server.)  As a result, by the time of the deposition, any records pertaining to this infringement were unavailable.

were $24,867.25.   See [DE # 45, Supplemental Affidavit of Francisco Ferreiro, ¶3 and corresponding Exhibit B.]   The fees incurred from May 31, 2013 and until the filing of Defendant's Motion for Fees were $6,816.61. An additional six (6) hours, at a rate of $215, were billed in connection with preparing this reply. See Thompson v. Pharmacy Corp. of Am., Inc., 334 F.3d 1242, 1244-46 (11th Cir. 2003)(noting that fees attributable to time spent litigating the issue of attorneys' fees are also fully compensable.) Given the foregoing, as well as the complexity and novelty of the issues involved, the fees associated with the undersigned's representation were more than reasonable.

IV.   **CONCLUSION**.

For the reasons discussed above, Defendant submits that Defendant should be awarded reasonable attorneys' fees and expenses incurred in defending this action, as well as any further award the Court deems appropriate.

Respectfully submitted,

Dated: August 5, 2013                    By: s/Francisco J. Ferreiro
       Miami, Florida                         Francisco J. Ferreiro
                                              Florida Bar No. 37,464
                                              fferreiro@malloylaw.com
                                              MALLOY & MALLOY, P.A.
                                              2800 S.W. Third Avenue
                                              Miami, Florida  33129
                                              Telephone (305) 858-8000
                                              Facsimile (305) 858-0008

                                              Attorneys for Defendants

## VERIFICATION OF COUNSEL

In accordance with Southern District of Florida Local Rule 7.3, I verify under penalty of perjury that the foregoing is true and correct. Executed on August 5, 2013.

s/ Francisco J. Ferreiro
Francisco J. Ferreiro
Florida Bar No. 37,464

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

s/ Francisco J. Ferreiro
Francisco J. Ferreiro
Florida Bar No. 37,464

10

## <u>SERVICE LIST</u>

**Case No. 1:12-CV-22768-CIV-SEITZ/SIMONTON**

M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229


*Counsel for Plaintiff*
Notices of Electronic Filing
Generated by CM/ECF

# TAB 50

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No.: 1:12-cv-22768-PAS |
| | ) | |
| v. | ) | |
| | ) | |
| LEO PELIZZO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY**

Plaintiff, Malibu Media, LLC ("Plaintiff"), by and through undersigned counsel hereby submits its Motion for Leave to File Sur-Reply to Defendant's, Leo Pelizzo ("Defendant"), Reply in Support of Defendant's Motion for Attorney's Fees and Costs [CM/ECF 49], and states:

1.      On July 1, 2013 Defendant filed its Motion for Attorney Fees and Costs [CM/ECF 41].

2.      Plaintiff's Response in opposition to Defendant's Motion, which identified several instances of unnecessary work and fraudulent billing by Defense counsel and asserted that awarding Defendant fees would not further the purposes of the Copyright Act, was filed on July 24, 2013.  *See* [CM/ECF 47].

3.      Defendant's Reply was filed on August 5, 2013.  *See* [CM/ECF 49]

4.      In Defendant's Reply, instead of fully addressing Plaintiff's arguments regarding his counsel's overbilling, Defendant introduces new theories and arguments, as well as multiple declarations by third-party counsel that attack Plaintiff and undersigned.

5.      Plaintiff hereby respectfully requests this Court grant its Motion for Leave to File Sur-Reply so that Plaintiff may properly explain:

- Defendant improperly characterized the Colorado correlation by Comcast as a look-up failure when Comcast had correctly identified the defendant.  Further, neither undersigned nor Plaintiff was aware of this particular Comcast correlation.

1

- Requesting that Hotwire correlate multiple dates of infringement would not have cured the error identifying Defendant as the owner of the infringing IP address.

- Defendant's attacks on undersigned and Plaintiff's character do not justify unreasonable billing and awarding Defendant fees would not further the purposes of the Copyright Act.

- Third-party counsel that provided declarations also engage in improper litigation tactics and are biased against Plaintiff and undersigned.

6.      Defendant's reply in further support underscores the need for a rule that incentivizes civility and rationality.  Indeed, Defendant's reply is based predominately on ad hominem attacks and false and irrelevant facts.  Defendant's purpose is to justify his gross overbilling by painting Plaintiff to be in the wrong.

7.      Plaintiff should be granted leave to file a sur-reply in order for the Court to have "a full understanding of the arguments of each party." *Innovative Health & Wellness, LLC v. Geico Gen. Ins. Co.*, 08-60796-CIV, 2008 WL 3910979 (S.D. Fla. Aug. 25, 2008).  Indeed, without doing so, Defendant's wrongful characterizations that Plaintiff misrepresented facts to this Court will continue without correction.

8.      Granting leave is also necessary "to alleviate any potential prejudice to the Plaintiff." *Shenandoah Chiropractic, P.A. v. Nat'l Specialty Ins. Co.*, 526 F. Supp. 2d 1283, 1286 (S.D. Fla. 2007).  Further, leave "may be granted when a party raises new issues in a reply." *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1327 (N.D. Ga. 2008); see also *Hammett v. Am. Bankers Ins. Co.*, 203 F.R.D. 690, 695 (S.D. Fla. 2001) (granting leave to file a sur-reply for new arguments and theories).  Here, granting leave is necessary for Plaintiff to correct Defendant's new factual errors and defend its character in order to avoid prejudice.

9.      Plaintiff respectfully submits that Defendant's grossly excessive and fraudulent overbilling cannot be justified on the basis that Plaintiff or undersigned are unreasonable. Indeed, in this case, the facts speak for themselves and Plaintiff told Defendant from the beginning not to spend any money and that he would be dismissed as soon as Plaintiff took the Hotwire deposition.   Plaintiff acted reasonably here.  Defendant attempts to bolster his position by relying on irrelevant declarations from biased, unreasonable and ideological third party counsel.

**WHEREFORE,** Plaintiff respectfully requests this Court grant the subject Motion and allow Plaintiff to file its sur-reply, which is attached hereto as Exhibit A.

Dated: August 13, 2013

Respectfully submitted,

By: /s/ *M. Keith Lipscomb*
M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd., Suite 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ *M. Keith Lipscomb*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No.: <u>1:12-cv-22768-PAS</u> |
| | ) | |
| v. | ) | |
| | ) | |
| LEO PELIZZO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>PLAINTIFF'S SUR-REPLY IN FURTHER SUPPORT OF ITS OPPOSITION TO</u>**
**<u>DEFENDANT'S MOTION FOR ATTORNEYS' FEES</u>**

# EXHIBIT A

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................................... 1

II.    ARGUMENT ............................................................................................................ 1

    A.  Defendant's Premise That Its Overbilling Is Justified Does Not Further the Interests of the Copyright Act ................................................................................. 1

        1.  Plaintiff Could Not Have Known Hotwire Was Going to Correlate Incorrectly ... 1

        2.  Defendant Relies on *Ad Hominem* Attacks to Support His Counsel's Overbilling ................................................................................................................... 1

        3.  Plaintiff Did not File Suit Against Defendant Because He is a Foreign Citizen ... 2

        4.  Defendant's Logic Is Inconsistent with the Copyright Act ................................... 2

        5.  Based Upon the Subject Matter Plaintiff Acknowledges Heightened Scrutiny by the Courts .......................................................................................................... 3

        6.  Courts Should Not Allow Defendants to Act Unreasonably Merely Because There is a Possibility That a Plaintiff May Attempt to Exert Unfair Leverage On Them ............................................................................................................. 4

    B.  The Comcast Colorado Lookup Correctly Identified the Defendant ............................ 4

        1.  The Comcast Colorado Response was not a Lookup Error ................................... 4

    C.  Providing Hotwire with other Dates and Times of Infringement Would Not Have Changed its Response ........................................................................................ 5

    D.  Providing Hotwire With Defendant's MAC Address Would Not Have Correctly Identified the Defendant .................................................................................. 6

    E.  The Third Party Affidavits are from the Worst Offenders of Defense Counsel Abusive Litigation Tactics ............................................................................................ 6

        1.  Mr. Kerr Has a Grudge Against Undersigned Because Undersigned Filed a Bar Complaint Against Mr. Kerr ......................................................................... 6

        2.  This Court Should Not Consider the Declaration of Christine Saunders and John Arsenault ........................................................................................................ 8

        3.  This Court Should Not Consider the Declaration of Morgan Pietz ...................... 8

        4.  This Court Should Not Consider the Declaration of an Anonymous John Doe .... 9

        5.  These Defense Counsel Should Not Be Encouraged .............................................. 9

III.    CONCLUSION ..................................................................................................... 10

## **TABLE OF AUTHORITIES**

### Cases

*Malibu Media v. John Doe*, 13-cv-00350 at CM/ECF 21 (D. Md. April 23, 2013). ................................. 8

*Malibu Media, LLC v. Doe*, 13-21579-CIV, 2013 WL 2950593 (S.D. Fla. June 14, 2013)........................ 3

*Malibu Media, LLC v. Doe*, 8:13-CV-857-T-35TGW, 2013 WL 1620366 (M.D. Fla. Apr. 15, 2013) ..... 3

*Malibu Media, LLC v. Doe*, CIV. JKB-13-512, 2013 WL 3732780 (D. Md. July 12, 2013).................... 3

*Malibu Media, LLC v. Does 3, 9, 16, 17*, 2013 WL 1461635, at FN 11 (D. Colo. Feb. 12, 2013)............ 8

*Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 174.51.234.104*, No. 13-CV-00307-WYD-MEH, 2013 WL 3753436 (D. Colo. July 14, 2013)................................................................... 9

*Malibu Media, LLC v. Maness*, No. 12-CV-01873-RBJ-MEH, 2012 WL 7848837 (D. Colo. Dec. 4, 2012) ................................................................................................................................................... 7

*Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F. 2d 852 (5th Cir. 1979)................................ 2

*Sony v. Tennenbaum*, 2011 WL 4133920 at * 11 (1st Cir. 2011) ................................................................. 3

## I.   <u>INTRODUCTION</u>

Plaintiff submits the following sur-reply in order to specifically address that: (a) Defendant's attacks on undersigned and Plaintiff's character do not justify gross overbilling and unnecessary work; (b) Comcast correctly correlated the subscriber to the IP address in Colorado, Defendant incorrectly stated the facts; (c) neither providing Hotwire with multiple dates of infringement nor requesting the MAC address would have prevented the Hotwire error; (d) the attorneys that have provided declarations seeking to discredit Plaintiff and undersigned are biased and engage in abusive or unreasonable litigation tactics designed to frustrate Plaintiff's ability to protect its copyrights.

## II.   <u>ARGUMENT</u>

### A.   **Defendant's Premise That Its Overbilling Is Justified Does Not Further the Interests of the Copyright Act**

#### 1.   <u>Plaintiff Could Not Have Known Hotwire Was Going to Correlate Incorrectly</u>

Defendant's argument that Plaintiff should have known Hotwire's correlation was inaccurate is unsupported by the facts.  This is the first and only correlation error that has ever occurred.  Further, Defendant's assertion that Plaintiff should have deposed Hotwire sooner should ring hollow, because Plaintiff deposed Hotwire the very first time Plaintiff ever questioned the correlation.  The entire purpose of deposing Hotwire was to ascertain how the mistake happened.  This knowledge furthers the interests of the Copyright Act.

#### 2.   <u>Defendant Relies on *Ad Hominem* Attacks to Support His Counsel's Overbilling</u>

Defendant next argues that he was justified in unreasonably overbilling his client and overworking this matter because Plaintiff and undersigned are unreasonable.  This too is belied by the facts of this case.  Further, implicit in his argument is the acknowledgement that his actions were unreasonable.

Defense counsel's *ad hominem* attacks against undersigned are particularly offensive because undersigned has had a case against defense counsel's law firm before which was litigated amicably and all parties acted reasonably.  Further, Lipscomb Eisenberg and Baker, PL is an AV rated law firm which focuses on Intellectual Property in Miami and undersigned has never given adverse counsel any reason to believe that he has to overwork files to reach a reasonable resolution with undersigned.  It's particularly frustrating that Defense counsel

litigates this way because that is not the way undersigned or Plaintiff desires to litigate cases, nor do undersigned or Plaintiff desire to exchange an offensive *ad hominem* attack in this or any other litigation.

### 3.   Plaintiff Did not File Suit Against Defendant Because He is a Foreign Citizen

Defendant attempts to impute an improper motive on Plaintiff by stating: "Plaintiff's counsel hoped to obtain an easy default judgment by strategically filing suit against a foreign citizen that appeared to be unavailable based upon incomplete and ambiguous information." CM/ECF 49 at *4.  This statement is akin to speculation which is not proper.  *See Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931 (7th Cir. 2003) ("The sanctions order thus appears to rest on nothing more solid than the judge's speculation that Reed is an extortionist.  The speculation is too thin to sustain that order.")  It is also offensive and absurd.  When Plaintiff brought this action the infringement from the IP address was ongoing. The accusation that Plaintiff targeted Defendant because he is from a foreign country is unjustified when it appeared as if Defendant was in the country, illegally infringing Plaintiff's movies.

### 4.   Defendant's Logic Is Inconsistent with the Copyright Act

Defendant's attempt to justify his performance of unnecessary work and his gross overbilling relies on two thinly veiled and related *ad hominem* attacks which essentially assert: (a) Plaintiff is suing to enforce copyrights covering adult sexual content; since some members of society are embarrassed by sex, Plaintiff must be suing to embarrass Defendants (*see generally*, CM/ECF 49 at *5); and (b) anyone who sues a peer-to-peer infringer based on an IP Address (which does not equal a person) is a bad person because they may be suing the wrong person (*see generally, Id.* at p. *4-5).   The attacks are related insofar as the prejudices associated with sex are intended to heighten the concern associated with protecting innocent subscribers.

Argument (a) is: (1) intended to appeal to prejudices associated with sex, and (2) an obviously false syllogism.  First, the Court should resist the temptation to rule based upon prejudices associated with the sexual content of the copyrighted works.  Indeed, adult content is copyrightable and should not be treated any differently than other types of work.  *See Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F. 2d 852 (5th Cir. 1979) (emphasizing that pornography is copyrightable and that owners of the copyrights covering pornographic works should be afforded the same rights under the Copyright Act as anyone else.)  Second, the false

syllogism in argument (a) ignores the possibility (and here the reality) that Plaintiff is suing to enforce its statutory rights and that any embarrassment is simply an unintended by-product.

Argument (b) was expressly rejected by Congress. Indeed, through the Digital Theft Deterrence and Copyright Damages Improvement Act of 1999 "Congress . . . amended the Coipyright Act . . . to increase the minimum and maximum awards available under § 504." *Sony v. Tennenbaum,* 2011 WL 4133920 at * 11 (1st Cir. 2011). At that time, Congress found on-line piracy resulted in "lost U.S. jobs, lost wages, lower tax revenue, and higher prices for honest purchasers." *See* CM/ECF 47-19 at *3. Further, as the former Register of Copyrights said, "for many people, the best form of education about copyright in the internet world is the threat of litigation."[1] Accordingly, suing peer-to-peer infringers does not make someone a bad person. Instead, it furthers the interest of the Copyright Act and our country because it helps fight the problem of "lost U.S. jobs, lost wages, lower tax revenue, and higher prices for honest purchasers." And, the only way to sue for peer-to-peer infringement is to sue the subscriber who is the most likely infringer.

     5.  <u>Based Upon the Subject Matter Plaintiff Acknowledges Heightened Scrutiny by the Courts</u>

Given the subject matter of Plaintiff's works, Plaintiff acknowledges that less scrupulous attorneys may take advantage and insert undue pressure on defendants. Accordingly, Plaintiff has acquiesced in a number of reasonable measures imposed by judges to lessen the potential for unfair litigation tactics. *See e.g. Malibu Media, LLC v. Doe*, 13-21579-CIV, 2013 WL 2950593 (S.D. Fla. June 14, 2013) (providing for a protective order for the defendant); *Malibu Media, LLC v. Doe*, 8:13-CV-857-T-35TGW, 2013 WL 1620366 (M.D. Fla. Apr. 15, 2013) (ordering that undersigned must inform defendant of his or her right to legal counsel and notifying defendant that anything provided by the John Doe can and likely will be used against him or her, among other restrictions); *Malibu Media, LLC v. Doe*, CIV. JKB-13-512, 2013 WL 3732780 (D. Md. July 12, 2013) (prohibiting any settlement communications without leave of court).

---

[1] *See* http://www.copyright.gov/docs/regstat090903.html

Significantly, however, unless and until a court finds in a specific case that Plaintiff has used that leverage to perform a bad act, it should not base its decision on the mere potential that Plaintiff could have done it.

6. Courts Should Not Allow Defendants to Act Unreasonably Merely Because There is a Possibility That a Plaintiff May Attempt to Exert Unfair Leverage On Them

Defendant argues that because he assumed that Plaintiff would act unreasonably, he was justified in turn to react unreasonably, despite Plaintiff's behavior having been reasonable. This argument puts the cart before the horse. Now, Defendant resorts to *ad hominem* attacks to justify the overbilling. The Court should align the interests of the court system, the Copyright Act, and the copyright holder against Defendant's false assumptions and rule based on the merits of the case. Regardless of the content of the suit, or the outrage of Defendant, all counsel should be required to act reasonably in the proceedings. Indeed, in its Memorandum in Opposition to Defendant's Motion for Attorney's Fees, Plaintiff proposes a rule for attorney's fees in these cases that incentivizes cooperation between the parties. *See* CM/ECF 47 at *16, FN 11

**B. The Comcast Colorado Lookup Correctly Identified the Defendant**

The Hotwire misidentification is a onetime unique event that neither Plaintiff nor undersigned has ever experienced. Defendant's attempt to state otherwise was done in bad faith to bolster a request for an improper fee award.

1. The Comcast Colorado Response was not a Lookup Error

In a classic case of "gotcha" litigation, Defendant disingenuously states that he "offers the following corrections to the record". *See* CM/ECF 49 at *2. In doing so, Defendant refers to a case in the District Court of Colorado where Comcast recently provided Plaintiff's Colorado counsel, Jason Kotzker, with two names of defendants. One of the defendants was represented by Mr. Kerr. *See* Exhibit A, Declaration of Jason Kotzker at ¶ 2.

Comcast's response contained the name and information for defendants known as John Doe 16 and John Doe 22. *Id.* at ¶ 3. In that response, Comcast provided the name, IP address, date of infringement, phone number, and address of the defendants. *Id.* at ¶ 4. Comcast erroneously listed the same name for both defendants, but all other identifying information was correct. *Id.* at ¶ 5. When Mr. Kotzker emailed Mr. Kerr, the email contained the name of John Doe 16, and not John Doe 22, the defendant Mr. Kerr represented. *Id.* at ¶ 6. However, the

response contained the correct address and phone number for Mr. Kerr's client, and upon clarification with Comcast, it stated that Mr. Kerr's client (who received the subpoena notice and filed a motion to quash) was correctly identified as the defendant, but Comcast had failed to provide her name, instead listing John Doe 16's name twice. *Id*. at ¶ 7.

Defendant incorrectly states that "Plaintiff had, two weeks earlier, acknowledged that it had made accusations against an innocent individual as a result [sic] ISP miscorrelation." First, Mr. Kotzker had not informed Malibu Media or undersigned of the error because it was minor and inconsequential. *Id*. at ¶ 8. Second, the Comcast correlation did not result in accusations against an innocent individual but instead against a defendant in the case. *Id*. at ¶ 9. Indeed, Comcast was reporting the identities of two defendants that filed motions to quash, both of which were denied. *Id*. at ¶ 10. Comcast had correctly correlated the IP address to each individual, unlike the current case. *Id*. at ¶ 11.

### C. Providing Hotwire with other Dates and Times of Infringement Would Not Have Changed its Response

The IP address in this case was used to infringe Plaintiff's movies throughout the entire course of 2012. Providing Hotwire with the other dates and times of infringement would not have impacted its response because the same individual used that IP address at all times. Statistically, it is almost impossible that more than one person used that IP address to infringe Plaintiff's content.

To explain, Hotwire uses dynamic IP Addresses. In other words, Hotwire's computer program allows—but does not require—Hotwire to assign a subscriber a different IP Address if the subscriber has not used his or her internet for at least 24 consecutive hours. *See* Deposition of Laurie M. Murphy ("Hotwire Depo."), CM/ECF 38-1 at *33-3. During the full calendar year between July 1, 2012 and July 1, 2013, there were only 50 unique IP addresses that trace to Hotwire that infringed one or more of Plaintiff's works. *See* Fieser Decl., *Malibu Media v. Fitzpatrick*, 12-cv-22767-PAS, CM/ECF 25-3, at ¶ 27 and Exhibit 2. Hotwire has 65,000 subscribers in Florida. *See Id*. at Pl. Stat. Undisp. Mat. Facts, CM/ECF 25-1, at ¶ 7 and Exhibit E. Plaintiff does not know how many IP Addresses Hotwire has allocated to its 65,000 Florida subscribers. However, Plaintiff does know that Hotwire must have a sufficient number of IP Addresses for each of its Florida subscribers who are simultaneously using the Internet. Even if one were to assume that at peak times only 1 in 10 of Hotwire's subscribers were simultaneously using the Internet, that would mean that Hotwire has 6,500 IP Addresses to

distribute among its 65,000 Florida subscribers.   Since there were only 50 unique IP addresses that infringed, and Hotwire has at least 6,500 IP Addresses, the odds that the same IP address was used by two different infringers is: 50 divided by 6,500 = 0.00769).   In other words, 7 out of 1,000.

Here, the IP address never changed owners because it continuously downloaded Plaintiff's movies.  Therefore, the only reasonable explanation is that the ports in Defendant's building were mislabeled.  *See* CM/ECF 38-1 at 50:2.   Even if Plaintiff had provided Hotwire with different dates and times of infringement, each correlation would point to Defendant because Defendant's building reported Defendant as the owner of that IP address, without correctly verifying each apartment.

### D. Providing Hotwire With Defendant's MAC Address Would Not Have Correctly Identified the Defendant

Plaintiff did not request a MAC address from Hotwire because MAC addresses do not aid Plaintiff in identifying a defendant.  Indeed, MAC addresses identify the router of an IP address and can be changed by a defendant after the infringement occurred. Because of this ability to manipulate, MAC addresses cannot be relied upon to accurately correlate the source from which the infringement emanated.

Further, even if Plaintiff had requested the MAC address in this case, without inspecting Defendant's router to see if the MAC address matches, it is useless.  Plaintiff could not have inspected Defendant's router before filing suit because Defendant did not communicate with Plaintiff.  After Defendant informed Plaintiff it had been out of the country, any information regarding his MAC address was redundant.

### E. The Third Party Affidavits are from the Worst Offenders of Defense Counsel Abusive Litigation Tactics

Defendant supports his attacks on undersigned and Plaintiff with third party affidavits from the worst offenders of abusive litigation tactics.

#### 1. Mr. Kerr Has a Grudge Against Undersigned Because Undersigned Filed a Bar Complaint Against Mr. Kerr

Mr. Kerr is the only attorney that undersigned has ever filed a bar complaint against. *See* Exhibit B, Declaration of M. Keith Lipscomb at ¶ 2.   When undersigned first started representing copyright holders in BitTorrent copyright litigation, without provocation Mr. Kerr called undersigned.  *Id*. at ¶ 3.  Although he had no experience with undersigned, Mr. Kerr

immediately accused undersigned of being unethical. *Id*. at ¶ 4. Thereafter, Mr. Kerr called undersigned and berated a receptionist for several minutes. *Id*. at ¶ 5. At that time, upon information and belief, he was working with Bradford Patrick[2] and representing clients in Florida. *Id*. at ¶ 6. During his tirade against undersigned's receptionist he threatened to report undersigned to the Florida bar. *Id*. at ¶ 7. This violated Florida and Colorado's bar rules because he was attempting to gain an unfair advantage by threatening to file a bar complaint against undersigned. *Id*. at ¶ 8. In response, undersigned filed a bar complaint in Colorado. *Id*. at 9. Thereafter, Mr. Kerr sent undersigned an email stating that he would not represent any client in a peer-to-peer case against undersigned. *Id*. at 10. Ultimately, undersigned did not pursue the bar complaint because undersigned does not desire to litigate against Mr. Kerr or any other attorney by using the types of offensive tactics employed by Mr. Kerr. *Id*. at 11. Undersigned's full desire is to litigate the merits of the case and avoid unreasonable *ad hominems*. *Id*. at 12.

### a. Mr. Kerr Also Engages In Improper and Gross Overbilling

Ironically, Mr. Kerr has been admonished for the same conduct that Defense counsel engages in here. Specifically, in a published opinion, Judge Hegarty of the District Court of Colorado found Mr. Kerr sought attorney's fees against Plaintiff with "unclean hands". *See Malibu Media, LLC v. Maness*, No. 12-CV-01873-RBJ-MEH, 2012 WL 7848837 (D. Colo. Dec. 4, 2012). Mr. Kerr's unclean hands resulted from filing a frivolous motion to dismiss, the very behavior Defendant seeks to have Mr. Kerr justify.

> Defendant's decision to file a motion to dismiss after the District Court closed the case renders Defendant's hands unclean in this regard, as Defendant himself caused the unnecessary expenditure of judicial resources in filing a motion that he knew would be moot. Likewise, Defendant's assertion of a claim for relief under Rule 11 that is improper under both the text of the Rule and controlling Tenth Circuit precedent unreasonably multiplies the work of the Court and of Plaintiff.

*Malibu Media, LLC v. Maness*, No. 12-CV-01873-RBJ-MEH, 2012 WL 7848837 (D. Colo. Dec. 4, 2012).

---

[2] It is unclear why Defense counsel chose to include a random unrelated email between undersigned and Mr. Patrick in his Exhibits without any reference in his Reply.

      2.  <u>This Court Should Not Consider the Declaration of Christine Saunders and John Arsenault</u>

Undersigned has never had any contact with either of the above attorneys and therefore does not see how they could possibly have any impact on this case.  That being said, Plaintiff does not examine every laptop proffered to show innocence before the official discovery period because Plaintiff cannot verify whether it was the actual laptop owned by Defendant during the time of infringement.

The District Court of Colorado, where each of these *exact* affidavits was originally filed, found that Plaintiff's refusal to inspect laptops prior to the discovery period is reasonable given the time and expense involved with scanning electronic devices at the pre-discovery stage.

> Doe # 17 attaches affidavits from three attorneys who practice in this District and from two parties (one identified as "John Doe," but it is unclear whether it is Doe # 17) in which these individuals attest that, when offered the opportunity to investigate the parties' claimed innocence, Plaintiff is not interested in doing so. The Court does not doubt the description of these affiants' experiences, but the Court also has witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement. Moreover, while the Court encourages the Defendants' willingness and attempts to demonstrate their non-participation in the alleged conduct, the Court also recognizes the time and expense involved with scanning electronic devices for evidence of infringing activity, especially at the pre-discovery stage of litigation.

*Malibu Media, LLC v. Does 3, 9, 16, 17*, 2013 WL 1461635, at FN 11 (D. Colo. Feb. 12, 2013).

This issue is entirely irrelevant to the case at hand because there was never an issue as to whether Defendant's laptop contained infringing content.

      3.  <u>This Court Should Not Consider the Declaration of Morgan Pietz</u>

Mr. Pietz cannot credibly speculate as to undersigned's actions because undersigned has never directly spoken to Mr. Pietz.  Indeed, the only interaction undersigned ever had with Mr. Pietz was during a telephonic hearing in the District Court of Maryland where the Honorable Judge Titus and Judge Grimm sought different view points on how best, procedurally, to move forward with Malibu Media's lawsuits.  *See Malibu Media v. John Doe*, 13-cv-00350 at CM/ECF 21 (D. Md. April 23, 2013).  During that telephonic hearing Mr. Pietz was chastised for attempting to lecture Judge Titus and Judge Grimm on how to interpret the Federal Rules of Civil Procedure.  *Id*.

Further, Mr. Peitz has been criticized as "unreasonable" for some of the motions he has filed in Plaintiff's cases.  *See Malibu Media, LLC v. John Doe Subscriber Assigned IP Address*

*174.51.234.104*, No. 13-CV-00307-WYD-MEH, 2013 WL 3753436 (D. Colo. July 14, 2013) ("To suggest that Defendant's failure to participate in a process intended to discover his identity should be used as a basis for restricting the discovery is, at a minimum, unreasonable").

Here, defense counsel cites to Mr. Peitz's declaration to speculate that undersigned may have referred him to Plaintiff's agent, Elizabeth Jones, to handle the matter. At no point in time during this case did anyone on behalf of Plaintiff have contact with Defense counsel other than undersigned's firm. Mr. Pietz's declaration is irrelevant and has no bearing on this case.

Further, Mr. Pietz's actions epitomize the exact type of defense counsel behavior that this Court should dissuade in its ruling. Indeed, Mr. Pietz's declaration states that his first ever representation and contact with anyone involving Malibu Media was on June 13, 2012, when he contacted Malibu Media's California counsel, Leemore Kushner. *See* Pietz Declaration at ¶ 18. Amazingly, two days before ever contacting defense counsel, on June 11, 2013, Mr. Pietz took the time to register the following domain names: www.trolldefenselawyer.com and www.malibumedialawsuit.com. *See* Exhibit C.

### 4. This Court Should Not Consider the Declaration of an Anonymous John Doe

The declaration of the anonymous John Doe should not be considered in this case because it is hearsay and inadmissible. Indeed, the events that the John Doe describes took place over two years ago, long before Malibu Media ever filed a suit for copyright infringement, and is not relevant to any of the facts in this case. Malibu Media has stopped using any third party agents to negotiate settlements on all of its suits filed in 2013 and in this case only attorneys or undersigned's paralegals contacted adverse counsel. Further, out of all the people Malibu Media has ever sued, this is the first and only declaration undersigned has ever seen of this kind.

### 5. These Defense Counsel Should Not Be Encouraged

Instead of addressing the legal issues raised in Plaintiff's opposition, or the glaring defects in Defendant's bill, Defendant chose to involve the above attorneys and defendants in the litigation matter. Defendant justified his attorney's fee bill based on faulty logic and *ad hominem* attacks. This Court should not reward Defense counsel with their fees when they acted unreasonably. Doing so will only encourage the above attorneys, and countless others, to frustrate the litigation process and try to win, not on the merits, but through abusive litigation tactics and *ad hominem* attacks. This does not further the purpose of the Copyright Act.

### III.   <u>CONCLUSION</u>

For the reasons set forth above, as well as in Plaintiff's Memorandum in Opposition, awarding fees would not be consistent with the interests of the Copyright Act or equitable. Accordingly, Plaintiff respectfully requests that the Court deny Defendant's motion.

Dated: August 13, 2013

Respectfully submitted,

By: <u>/s/ *M. Keith Lipscomb*</u>
M. Keith Lipscomb (429554)
<u>klipscomb@lebfirm.com</u>
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd., Suite 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
*Attorneys for Plaintiff*

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 13, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: <u>/s/ *M. Keith Lipscomb*</u>

## DECLARATION OF JASON KOTZKER

**I, JASON KOTZKER, DO HEREBY DECLARE:**

1.      I am over the age of eighteen (18) and otherwise competent to make this declaration.  The facts stated in this declaration are based upon my personal knowledge.

2.      I am counsel to Malibu Media in Colorado and represent Malibu Media in *Malibu Media v. John Does 1-42*, 12-cv-01953 (D. Colo. July 27, 2012).  This is the same case referred to in Mr. Kerr's declaration.  *See* CM/ECF 49, Exhibit 1.

3.      On July 3, 2013, Comcast sent me a subpoena response containing the name and information for defendants known as John Doe 16 and John Doe 22.

4.      In that response, Comcast provided the name, IP address, date of infringement, phone number, and address of the defendants.

5.      Comcast erroneously listed John Doe 16's name for both defendants, but all other identifying information was correct.

6.      When I emailed Mr. Kerr, the email contained the name of John Doe 16, and not John Doe 22 that was represented by Mr. Kerr.

7.      However, the Comcast response contained the correct address and phone number for Mr. Kerr's client, and upon clarification with Comcast, it stated that Mr. Kerr's client (who received the subpoena notice and filed a motion to quash) was correctly identified as the defendant, but Comcast had failed to provide her name, instead listing John Doe 16's name twice.

8.      I did not inform Malibu Media of the error because I believed it was minor and inconsequential.  I did not inform Mr. Lipscomb of the error because he was not counsel to the

# EXHIBIT A

case and I did not believe it was a matter that rendered the attention of Malibu Media's other counsel.

9.      The Comcast correlation did not result in accusations against an innocent individual but instead against a defendant in the case.

10.     Indeed, Comcast was reporting the identities of two defendants that filed motions to quash, both of which were denied.

11.     Comcast confirmed that they correctly correlated the infringing IP address to the subscriber and owner of that IP address at the time of infringement.


**FURTHER DECLARANT SAYETH NAUGHT.**

<u>**DECLARATION**</u>

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 12th day of August 2013.

**JASON KOTZKER**

By:_____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No.: <u>1:12-cv-22768-PAS</u> |
| | ) | |
| v. | ) | |
| | ) | |
| LEO PELIZZO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>**DECLARATION OF M. KEITH LIPSCOMB, ESQ.**</u>

**I, M. KEITH LIPSCOMB, DO HEREBY DECLARE:**

1.      I am over the age of eighteen (18) and otherwise competent to make this declaration.  The facts stated in this declaration are based upon my personal knowledge.

2.      Mr. Kerr is the only attorney that I have ever filed a bar complaint against.

3.      When I first started representing copyright holders in BitTorrent copyright litigation, without provocation Mr. Kerr called me.

4.      Although he had never worked with me before, Mr. Kerr immediately accused me of being unethical.

5.      Thereafter, Mr. Kerr called my firm and berated a receptionist for several minutes.

6.      At that time, upon information and belief, he was working with Bradford Patrick and representing clients in Florida.

7.      During his tirade against my receptionist he threatened to report me to the Florida bar.

# EXHIBIT B

8.      This violated Florida and Colorado's bar rules because he was attempting to gain an unfair advantage by threatening to file a bar complaint against me.

9.      In response, I filed a bar complaint in Colorado.

10.      Thereafter, Mr. Kerr sent me an email stating that he would not represent any clients in a peer-to-peer case against me.

11.      Ultimately, I did not pursue the bar complaint because I do not desire to litigate against Mr. Kerr or any other attorney by using the types of offensive tactics employed by Mr. Kerr.

12.      My full desire is to litigate the merits of the case and avoid unreasonable *ad hominems*.

**FURTHER DECLARANT SAYETH NAUGHT.**

<u>**DECLARATION**</u>

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 12th day of August, 2013.


By:___*/s/ M. Keith Lipscomb*_____
            **M. KEITH LIPSCOMB, ESQ.**

2

Search Domain or keyword    GO  |  Login

 

| Domain Names | Web Hosting | Email Hosting | Website Tools | Domain Tools |
| --- | --- | --- | --- | --- |


AdChoices
**Get Your Website For Free**
GYBO.com/Flo…
Google Gives You Free Domain and Website. Bring Your Business Online
→

**Limits**: You are on page 2/60 of your hourly limit. Your IP (66.104.176.146) r-resolves to mail.lbbfirm.com (BK-NotOK)

# TROLLDEFENSELAWYER.COM

TROLLDEFENSELAWYER.COM : defense (en) lawyer (en) troll (en)


**Share Your Experience.**
Leave a comment about this Website ▾

| Nameserver Histroy | DNS record history |
| --- | --- |
| DB : 99 : Friday 3 August 2012 >>> **NOW** | 13-August-2012 |
| NS1.BLUEHOST.COM (1832584) | Web : 74.220.199.6 |
| NS2.BLUEHOST.COM (1832310) | Mail : 0 |

--------------------------
Whois on 05-September-2012
Refresh Data


Click here to remove whois data

$2.95 Domains at Go Daddy
 GoDaddy.com
Why Pay More? Compare Us! Find & Register Your .com Today.
→

--------------------------

Whois Server Version 2.0

AdChoices

--SI-VSCompRegistrars---


     Domain Name: TROLLDEFENSELAWYER.COM
     Registrar: fastdomain, inc.
     Whois Server: whois.fastdomain.com
     Referral URL: http://www.fastdomain.com
     Name Server: NS1.BLUEHOST.COM
     Name Server: NS2.BLUEHOST.COM
     Status: clientTransferProhibited
     Updated Date: 12-jun-2012
     Creation Date: 12-jun-2012
     Expiration Date: 12-jun-2013


>>> Last update of whois database: Wed, 05 Sep 2012 05:10:56 UTC <<<



--SI-VSNotice---



--SI-VSTerms---

# EXHIBIT C

```
--SI-BlueHost_Com_TERMS---


=-=-=-=

Registrar: FastDomain Inc.
Provider Name....: BlueHost.Com
Provider Whois...: whois.bluehost.com
Provider Homepage: http://www.bluehost.com/


Domain Name: TROLLDEFENSELAWYER.COM


    Created on..............: 2012-06-12 18:00:10 GMT
    Expires on..............: 2013-06-12 18:00:10 GMT
    Last modified on........: 2012-06-12 18:00:10 GMT


Registrant Info: (FAST-18453085)
    The Pietz Law Firm
    Morgan Pietz
    3770 Highland Ave., Ste. 206
    Manhattan Beach, California 90266
    United States
    Phone: +1.3104245557
    Fax..:
    Email:  mpietz@pietzlawfirm.com
    Last modified: 2012-06-12 18:00:10 GMT


Administrative Info: (FAST-18453085)
    The Pietz Law Firm
    Morgan Pietz
    3770 Highland Ave., Ste. 206
    Manhattan Beach, California 90266
    United States
    Phone: +1.3104245557
    Fax..:
    Email:  mpietz@pietzlawfirm.com
    Last modified: 2012-06-12 18:00:10 GMT


Technical Info: (FAST-12785240)
    Bluehost.com
    Bluehost Inc
    1958 South 950 East
    Provo, Utah 84606
    United States
    Phone: +1.8017659400
    Fax..: +1.8017651992
    Email:  whois@bluehost.com
    Last modified: 2012-06-11 18:50:50 GMT


Status: Locked


Domain servers in listed order:


    NS1.BLUEHOST.COM
    NS2.BLUEHOST.COM
    =-=-=-=
```

Need help with restoring your website? With bluehost you can get a 100GB domain account for ONLY $6.95 per mo

You also get a *FREE* DOMAIN REGISTRATION for one year when you host with http://www.bluehost.com/

---------------------------

| Commenter's name (Your Name) | |
| Comment Subject | |
| Comment Body | |

Submit

No comments yet.

Copyright POLO DOMAINS 2011.

Privacy Statement | Terms | Limits | Domain Generator | Domain Reseller | Cheap Domains


We speak your language.
SEE HOW
rackspace
the open cloud company

Search domain or keyword

GO  |  Login

| Domain Names | Web Hosting | Email Hosting | Website Tools | Domain Tools |

AdChoices

**$2.95 Domains at Go Daddy**

GoDaddy.com

Why Pay More? Compare Us! Find & Register Your .com Today.

➡

**Limits:** You are on page 3/60 of your hourly limit. Your IP (66.104.176.146) r-resolves to mail.lbbfirm.com (BK-NotOK)

# MALIBUMEDIALAWSUIT.COM

MALIBUMEDIALAWSUIT.COM : lawsuit (en) | Malibu (en) | media (en)

 **Share Your Experience.**
Leave a comment about this Website ▼

**Nameserver Histroy**

DB: 99 : Friday 3 August 2012 >>> **NOW**

NS1.BLUEHOST.COM (1832584)

NS2.BLUEHOST.COM (1832310)

**DNS record history**

15-August-2012

Web : 74.220.199.6

Mail : 0

---------------------------

Whois on 12-August-2012

Refresh Data

 Click here to remove whois data

---------------------------

**Get Your Website For Free**

 GYBO.com/Florida

Google Gives You Free Domain and Website. Bring Your Business Online

➡

Whois Server Version 2.0


--SI-VSCompRegistrars---


    Domain Name: MALIBUMEDIALAWSUIT.COM

    Registrar: fastdomain, inc.

    Whois Server: whois.fastdomain.com

    Referral URL: http://www.fastdomain.com

    Name Server: NS1.BLUEHOST.COM

    Name Server: NS2.BLUEHOST.COM

    Status: clientTransferProhibited

    Updated Date: 12-jun-2012

    Creation Date: 12-jun-2012

    Expiration Date: 12-jun-2013


>>> Last update of whois database: Sun, 12 Aug 2012 16:37:28 UTC <<<



--SI-VSNotice---



--SI-VSTerms---

AdChoices ▷

8/13/13   Case 1:12-cv-22768-PAS   Document 50-1   POLO DOMAINS - MALIBU MEDIA LAWSUIT.COM Domain Info   Entered on FLSD Docket 08/13/2013   Page 22 of 23

Case: 14-11795   Date Filed: 09/22/2014   Page: 172 of 188

```
=-=-=-=

Registrar: FastDomain Inc.
Provider Name....: BlueHost.Com
Provider Whois...: whois.bluehost.com
Provider Homepage: http://www.bluehost.com/

Domain Name: MALIBUMEDIALAWSUIT.COM

   Created on..............: 2012-06-12 18:00:12 GMT
   Expires on..............: 2013-06-12 18:00:13 GMT
   Last modified on........: 2012-06-12 18:00:13 GMT

Registrant Info: (FAST-18453095)
   The Pietz Law Firm
   Morgan Pietz
   3770 Highland Ave., Ste. 206
   Manhattan Beach, California 90266
   United States
   Phone: +1.3104245557
   Fax..:
   Email: mpietz@pietzlawfirm.com
   Last modified: 2012-06-12 18:00:12 GMT

Administrative Info: (FAST-18453095)
   The Pietz Law Firm
   Morgan Pietz
   3770 Highland Ave., Ste. 206
   Manhattan Beach, California 90266
   United States
   Phone: +1.3104245557
   Fax..:
   Email: mpietz@pietzlawfirm.com
   Last modified: 2012-06-12 18:00:12 GMT

Technical Info: (FAST-12785240)
   Bluehost.com
   Bluehost Inc
   1958 South 950 East
   Provo, Utah 84606
   United States
   Phone: +1.8017659400
   Fax..: +1.8017651992
   Email: whois@bluehost.com
   Last modified: 2012-06-11 18:50:50 GMT

Status: Locked

Domain servers in listed order:

   NS1.BLUEHOST.COM
   NS2.BLUEHOST.COM
   =-=-=-=

Now UNLIMITED Storage and UNLIMITED Bandwidth and Host UNLIMITED Domains on one account for ONLY $6.95 per mo
```

8/13/13 POLO DOMAINS – MALE WHISKYMILSU FLOW ... Domain ...

Case 1:12-cv-22768-PAS   Document 50-1   Entered on FLSD Docket 08/13/2013   Page 23 of 23
Case: 14-11795   Date Filed: 09/22/2014   Page: 173 of 188

*FREE WEBSITE HOSTING for a year* http://www.bluehost.com/

----------------------------

Commenter's name
(Your Name)

Comment Subject

Comment Body

[ Submit ]

No comments yet.

---

Copyright POLO DOMAINS 2011.
Privacy Statement | Terms | Limits | Domain Generator | Domain Reseller | Cheap Domains

# TAB 52

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No.: <u>1:12-cv-22768-PAS</u> |
| | ) | |
| v. | ) | |
| | ) | |
| LEO PELIZZO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>PLAINTIFF'S SUR-REPLY IN FURTHER SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES</u>

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 1

    A.  Defendant's Premise That Its Overbilling Is Justified Does Not Further the Interests of the Copyright Act ............................................................................. 1

        1.   Plaintiff Could Not Have Known Hotwire Was Going to Correlate Incorrectly .. 1

        2.   Defendant Relies on *Ad Hominem* Attacks to Support His Counsel's Overbilling ........................................................................................................... 1

        3.   Plaintiff Did not File Suit Against Defendant Because He is a Foreign Citizen ... 2

        4.   Defendant's Logic Is Inconsistent with the Copyright Act ................................. 2

        5.   Based Upon the Subject Matter Plaintiff Acknowledges Heightened Scrutiny by the Courts ........................................................................................................... 3

        6.   Courts Should Not Allow Defendants to Act Unreasonably Merely Because There is a Possibility That a Plaintiff May Attempt to Exert Unfair Leverage On Them ................................................................................................................... 4

    B.  The Comcast Colorado Lookup Correctly Identified the Defendant ........................... 4

        1.   The Comcast Colorado Response was not a Lookup Error ................................. 4

    C.  Providing Hotwire with other Dates and Times of Infringement Would Not Have Changed its Response ............................................................................................ 5

    D.  Providing Hotwire With Defendant's MAC Address Would Not Have Correctly Identified the Defendant ....................................................................................... 6

    E.  The Third Party Affidavits are from the Worst Offenders of Defense Counsel Abusive Litigation Tactics ................................................................................................... 6

        1.   Mr. Kerr Has a Grudge Against Undersigned Because Undersigned Filed a Bar Complaint Against Mr. Kerr ............................................................................... 6

        2.   This Court Should Not Consider the Declaration of Christine Saunders and John Arsenault ............................................................................................................ 8

        3.   This Court Should Not Consider the Declaration of Morgan Pietz ...................... 8

        4.   This Court Should Not Consider the Declaration of an Anonymous John Doe .... 9

        5.   These Defense Counsel Should Not Be Encouraged ........................................... 9

III.  CONCLUSION .................................................................................................. 10

## **TABLE OF AUTHORITIES**

### Cases

*Malibu Media v. John Doe*, 13-cv-00350 at CM/ECF 21 (D. Md. April 23, 2013)..................................... 8

*Malibu Media, LLC v. Doe*, 13-21579-CIV, 2013 WL 2950593 (S.D. Fla. June 14, 2013)...................... 3

*Malibu Media, LLC v. Doe*, 8:13-CV-857-T-35TGW, 2013 WL 1620366 (M.D. Fla. Apr. 15, 2013) ..... 3

*Malibu Media, LLC v. Doe*, CIV. JKB-13-512, 2013 WL 3732780 (D. Md. July 12, 2013) ................... 3

*Malibu Media, LLC v. Does 3, 9, 16, 17*, 2013 WL 1461635, at FN 11 (D. Colo. Feb. 12, 2013)............ 8

*Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 174.51.234.104*, No. 13-CV-00307-
    WYD-MEH, 2013 WL 3753436 (D. Colo. July 14, 2013)................................................................. 9

*Malibu Media, LLC v. Maness*, No. 12-CV-01873-RBJ-MEH, 2012 WL 7848837 (D. Colo. Dec. 4,
    2012)...................................................................................................................................................... 7

*Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F. 2d 852 (5th Cir. 1979) .............................. 2

*Sony v. Tennenbaum,* 2011 WL 4133920 at * 11 (1st Cir. 2011) ............................................................ 3

I.    **INTRODUCTION**

Plaintiff submits the following sur-reply in order to specifically address that: (a) Defendant's attacks on undersigned and Plaintiff's character do not justify gross overbilling and unnecessary work; (b) Comcast correctly correlated the subscriber to the IP address in Colorado, Defendant incorrectly stated the facts; (c) neither providing Hotwire with multiple dates of infringement nor requesting the MAC address would have prevented the Hotwire error; (d) the attorneys that have provided declarations seeking to discredit Plaintiff and undersigned are biased and engage in abusive or unreasonable litigation tactics designed to frustrate Plaintiff's ability to protect its copyrights.

II.    **ARGUMENT**

**A.  Defendant's Premise That Its Overbilling Is Justified Does Not Further the Interests of the Copyright Act**

1.   Plaintiff Could Not Have Known Hotwire Was Going to Correlate Incorrectly

Defendant's argument that Plaintiff should have known Hotwire's correlation was inaccurate is unsupported by the facts.  This is the first and only correlation error that has ever occurred.  Further, Defendant's assertion that Plaintiff should have deposed Hotwire sooner should ring hollow, because Plaintiff deposed Hotwire the very first time Plaintiff ever questioned the correlation.  The entire purpose of deposing Hotwire was to ascertain how the mistake happened.  This knowledge furthers the interests of the Copyright Act.

2.   Defendant Relies on *Ad Hominem* Attacks to Support His Counsel's Overbilling

Defendant next argues that he was justified in unreasonably overbilling his client and overworking this matter because Plaintiff and undersigned are unreasonable.  This too is belied by the facts of this case.  Further, implicit in his argument is the acknowledgement that his actions were unreasonable.

Defense counsel's *ad hominem* attacks against undersigned are particularly offensive because undersigned has had a case against defense counsel's law firm before which was litigated amicably and all parties acted reasonably.  Further, Lipscomb Eisenberg and Baker, PL is an AV rated law firm which focuses on Intellectual Property in Miami and undersigned has never given adverse counsel any reason to believe that he has to overwork files to reach a reasonable resolution with undersigned.  It's particularly frustrating that Defense counsel

litigates this way because that is not the way undersigned or Plaintiff desires to litigate cases, nor do undersigned or Plaintiff desire to exchange an offensive *ad hominem* attack in this or any other litigation.

### 3.   Plaintiff Did not File Suit Against Defendant Because He is a Foreign Citizen

Defendant attempts to impute an improper motive on Plaintiff by stating: "Plaintiff's counsel hoped to obtain an easy default judgment by strategically filing suit against a foreign citizen that appeared to be unavailable based upon incomplete and ambiguous information." CM/ECF 49 at *4.  This statement is akin to speculation which is not proper.  *See Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931 (7th Cir. 2003) ("The sanctions order thus appears to rest on nothing more solid than the judge's speculation that Reed is an extortionist.  The speculation is too thin to sustain that order.")  It is also offensive and absurd.  When Plaintiff brought this action the infringement from the IP address was ongoing. The accusation that Plaintiff targeted Defendant because he is from a foreign country is unjustified when it appeared as if Defendant was in the country, illegally infringing Plaintiff's movies.

### 4.   Defendant's Logic Is Inconsistent with the Copyright Act

Defendant's attempt to justify his performance of unnecessary work and his gross overbilling relies on two thinly veiled and related *ad hominem* attacks which essentially assert: (a) Plaintiff is suing to enforce copyrights covering adult sexual content; since some members of society are embarrassed by sex, Plaintiff must be suing to embarrass Defendants (*see generally*, CM/ECF 49 at *5); and (b) anyone who sues a peer-to-peer infringer based on an IP Address (which does not equal a person) is a bad person because they may be suing the wrong person (*see generally, Id.* at p. *4-5).   The attacks are related insofar as the prejudices associated with sex are intended to heighten the concern associated with protecting innocent subscribers.

Argument (a) is: (1) intended to appeal to prejudices associated with sex, and (2) an obviously false syllogism.  First, the Court should resist the temptation to rule based upon prejudices associated with the sexual content of the copyrighted works.  Indeed, adult content is copyrightable and should not be treated any differently than other types of work.  *See Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F. 2d 852 (5th Cir. 1979) (emphasizing that pornography is copyrightable and that owners of the copyrights covering pornographic works should be afforded the same rights under the Copyright Act as anyone else.)  Second, the false

syllogism in argument (a) ignores the possibility (and here the reality) that Plaintiff is suing to enforce its statutory rights and that any embarrassment is simply an unintended by-product.

Argument (b) was expressly rejected by Congress.  Indeed, through the Digital Theft Deterrence and Copyright Damages Improvement Act of 1999 "Congress . . . amended the Copyright Act . . . to increase the minimum and maximum awards available under § 504." *Sony v. Tennenbaum,* 2011 WL 4133920 at * 11 (1st Cir. 2011).   At that time, Congress found on-line piracy resulted in "lost U.S. jobs, lost wages, lower tax revenue, and higher prices for honest purchasers."  *See* CM/ECF 47-19 at *3.  Further, as the former Register of Copyrights said, "for many people, the best form of education about copyright in the internet world is the threat of litigation."[1]  Accordingly, suing peer-to-peer infringers does not make someone a bad person. Instead, it furthers the interest of the Copyright Act and our country because it helps fight the problem of "lost U.S. jobs, lost wages, lower tax revenue, and higher prices for honest purchasers."  And, the only way to sue for peer-to-peer infringement is to sue the subscriber who is the most likely infringer.

### 5. Based Upon the Subject Matter Plaintiff Acknowledges Heightened Scrutiny by the Courts

Given the subject matter of Plaintiff's works, Plaintiff acknowledges that less scrupulous attorneys may take advantage and insert undue pressure on defendants.  Accordingly, Plaintiff has acquiesced in a number of reasonable measures imposed by judges to lessen the potential for unfair litigation tactics.  *See e.g. Malibu Media, LLC v. Doe*, 13-21579-CIV, 2013 WL 2950593 (S.D. Fla. June 14, 2013) (providing for a protective order for the defendant); *Malibu Media, LLC v. Doe*, 8:13-CV-857-T-35TGW, 2013 WL 1620366 (M.D. Fla. Apr. 15, 2013) (ordering that undersigned must inform defendant of his or her right to legal counsel and notifying defendant that anything provided by the John Doe can and likely will be used against him or her, among other restrictions); *Malibu Media, LLC v. Doe*, CIV. JKB-13-512, 2013 WL 3732780 (D. Md. July 12, 2013) (prohibiting any settlement communications without leave of court).

---

[1] *See* http://www.copyright.gov/docs/regstat090903.html

Significantly, however, unless and until a court finds in a specific case that Plaintiff has used that leverage to perform a bad act, it should not base its decision on the mere potential that Plaintiff could have done it.

   6. <u>Courts Should Not Allow Defendants to Act Unreasonably Merely Because There is a Possibility That a Plaintiff May Attempt to Exert Unfair Leverage On Them</u>

Defendant argues that because he assumed that Plaintiff would act unreasonably, he was justified in turn to react unreasonably, despite Plaintiff's behavior having been reasonable. This argument puts the cart before the horse.   Now, Defendant resorts to *ad hominem* attacks to justify the overbilling.  The Court should align the interests of the court system, the Copyright Act, and the copyright holder against Defendant's false assumptions and rule based on the merits of the case.  Regardless of the content of the suit, or the outrage of Defendant, all counsel should be required to act reasonably in the proceedings.    Indeed, in its Memorandum in Opposition to Defendant's Motion for Attorney's Fees, Plaintiff proposes a rule for attorney's fees in these cases that incentivizes cooperation between the parties. *See* CM/ECF 47 at *16, FN 11

**B.  The Comcast Colorado Lookup Correctly Identified the Defendant**

The Hotwire misidentification is a onetime unique event that neither Plaintiff nor undersigned has ever experienced.  Defendant's attempt to state otherwise was done in bad faith to bolster a request for an improper fee award.

   1. <u>The Comcast Colorado Response was not a Lookup Error</u>

In a classic case of "gotcha" litigation, Defendant disingenuously states that he "offers the following corrections to the record". *See* CM/ECF 49 at *2.  In doing so, Defendant refers to a case in the District Court of Colorado where Comcast recently provided Plaintiff's Colorado counsel, Jason Kotzker, with two names of defendants.  One of the defendants was represented by Mr. Kerr. *See* Exhibit A, Declaration of Jason Kotzker at ¶ 2.

Comcast's response contained the name and information for defendants known as John Doe 16 and John Doe 22. *Id.* at ¶ 3.  In that response, Comcast provided the name, IP address, date of infringement, phone number, and address of the defendants. *Id.* at ¶ 4.    Comcast erroneously listed the same name for both defendants, but all other identifying information was correct. *Id.* at ¶ 5. When Mr. Kotzker emailed Mr. Kerr, the email contained the name of John Doe 16, and not John Doe 22, the defendant Mr. Kerr represented.    *Id.* at ¶ 6.  However, the

4

response contained the correct address and phone number for Mr. Kerr's client, and upon clarification with Comcast, it stated that Mr. Kerr's client (who received the subpoena notice and filed a motion to quash) was correctly identified as the defendant, but Comcast had failed to provide her name, instead listing John Doe 16's name twice. *Id.* at ¶ 7.

Defendant incorrectly states that "Plaintiff had, two weeks earlier, acknowledged that it had made accusations against an innocent individual as a result [sic] ISP miscorrelation." First, Mr. Kotzker had not informed Malibu Media or undersigned of the error because it was minor and inconsequential. *Id.* at ¶ 8. Second, the Comcast correlation did not result in accusations against an innocent individual but instead against a defendant in the case. *Id.* at ¶ 9. Indeed, Comcast was reporting the identities of two defendants that filed motions to quash, both of which were denied. *Id.* at ¶ 10. Comcast had correctly correlated the IP address to each individual, unlike the current case. *Id.* at ¶ 11.

### C. Providing Hotwire with other Dates and Times of Infringement Would Not Have Changed its Response

The IP address in this case was used to infringe Plaintiff's movies throughout the entire course of 2012. Providing Hotwire with the other dates and times of infringement would not have impacted its response because the same individual used that IP address at all times. Statistically, it is almost impossible that more than one person used that IP address to infringe Plaintiff's content.

To explain, Hotwire uses dynamic IP Addresses. In other words, Hotwire's computer program allows—but does not require—Hotwire to assign a subscriber a different IP Address if the subscriber has not used his or her internet for at least 24 consecutive hours. *See* Deposition of Laurie M. Murphy ("Hotwire Depo."), CM/ECF 38-1 at *33-3. During the full calendar year between July 1, 2012 and July 1, 2013, there were only 50 unique IP addresses that trace to Hotwire that infringed one or more of Plaintiff's works. *See* Fieser Decl., *Malibu Media v. Fitzpatrick*, 12-cv-22767-PAS, CM/ECF 25-3, at ¶ 27 and Exhibit 2. Hotwire has 65,000 subscribers in Florida. *See Id.* at Pl. Stat. Undisp. Mat. Facts, CM/ECF 25-1, at ¶ 7 and Exhibit E. Plaintiff does not know how many IP Addresses Hotwire has allocated to its 65,000 Florida subscribers. However, Plaintiff does know that Hotwire must have a sufficient number of IP Addresses for each of its Florida subscribers who are simultaneously using the Internet. Even if one were to assume that at peak times only 1 in 10 of Hotwire's subscribers were simultaneously using the Internet, that would mean that Hotwire has 6,500 IP Addresses to

distribute among its 65,000 Florida subscribers.   Since there were only 50 unique IP addresses that infringed, and Hotwire has at least 6,500 IP Addresses, the odds that the same IP address was used by two different infringers is: 50 divided by 6,500 = 0.00769).   In other words, 7 out of 1,000.

Here, the IP address never changed owners because it continuously downloaded Plaintiff's movies.   Therefore, the only reasonable explanation is that the ports in Defendant's building were mislabeled.   *See* CM/ECF 38-1 at 50:2.   Even if Plaintiff had provided Hotwire with different dates and times of infringement, each correlation would point to Defendant because Defendant's building reported Defendant as the owner of that IP address, without correctly verifying each apartment.

### D. Providing Hotwire With Defendant's MAC Address Would Not Have Correctly Identified the Defendant

Plaintiff did not request a MAC address from Hotwire because MAC addresses do not aid Plaintiff in identifying a defendant.   Indeed, MAC addresses identify the router of an IP address and can be changed by a defendant after the infringement occurred. Because of this ability to manipulate, MAC addresses cannot be relied upon to accurately correlate the source from which the infringement emanated.

Further, even if Plaintiff had requested the MAC address in this case, without inspecting Defendant's router to see if the MAC address matches, it is useless.   Plaintiff could not have inspected Defendant's router before filing suit because Defendant did not communicate with Plaintiff.   After Defendant informed Plaintiff it had been out of the country, any information regarding his MAC address was redundant.

### E. The Third Party Affidavits are from the Worst Offenders of Defense Counsel Abusive Litigation Tactics

Defendant supports his attacks on undersigned and Plaintiff with third party affidavits from the worst offenders of abusive litigation tactics.

1. Mr. Kerr Has a Grudge Against Undersigned Because Undersigned Filed a Bar Complaint Against Mr. Kerr

Mr. Kerr is the only attorney that undersigned has ever filed a bar complaint against. *See* Exhibit B, Declaration of M. Keith Lipscomb at ¶ 2.   When undersigned first started representing copyright holders in BitTorrent copyright litigation, without provocation Mr. Kerr called undersigned.   *Id.* at ¶ 3.   Although he had no experience with undersigned, Mr. Kerr

immediately accused undersigned of being unethical.  *Id*. at ¶ 4.  Thereafter, Mr. Kerr called undersigned and berated a receptionist for several minutes.  *Id*. at ¶ 5.  At that time, upon information and belief, he was working with Bradford Patrick[2] and representing clients in Florida.  *Id*. at ¶ 6.  During his tirade against undersigned's receptionist he threatened to report undersigned to the Florida bar.  *Id*. at ¶ 7.  This violated Florida and Colorado's bar rules because he was attempting to gain an unfair advantage by threatening to file a bar complaint against undersigned.  *Id*. at ¶ 8.  In response, undersigned filed a bar complaint in Colorado.  *Id*. at 9.  Thereafter, Mr. Kerr sent undersigned an email stating that he would not represent any client in a peer-to-peer case against undersigned.  *Id*. at 10.  Ultimately, undersigned did not pursue the bar complaint because undersigned does not desire to litigate against Mr. Kerr or any other attorney by using the types of offensive tactics employed by Mr. Kerr.  *Id*. at 11. Undersigned's full desire is to litigate the merits of the case and avoid unreasonable *ad hominems*.  *Id*. at 12.

### a.   Mr. Kerr Also Engages In Improper and Gross Overbilling

Ironically, Mr. Kerr has been admonished for the same conduct that Defense counsel engages in here.  Specifically, in a published opinion, Judge Hegarty of the District Court of Colorado found Mr. Kerr sought attorney's fees against Plaintiff with "unclean hands".  *See Malibu Media, LLC v. Maness*, No. 12-CV-01873-RBJ-MEH, 2012 WL 7848837 (D. Colo. Dec. 4, 2012).  Mr. Kerr's unclean hands resulted from filing a frivolous motion to dismiss, the very behavior Defendant seeks to have Mr. Kerr justify.

> Defendant's decision to file a motion to dismiss after the District Court closed the case renders Defendant's hands unclean in this regard, as Defendant himself caused the unnecessary expenditure of judicial resources in filing a motion that he knew would be moot. Likewise, Defendant's assertion of a claim for relief under Rule 11 that is improper under both the text of the Rule and controlling Tenth Circuit precedent unreasonably multiplies the work of the Court and of Plaintiff.

*Malibu Media, LLC v. Maness*, No. 12-CV-01873-RBJ-MEH, 2012 WL 7848837 (D. Colo. Dec. 4, 2012).

---

[2] It is unclear why Defense counsel chose to include a random unrelated email between undersigned and Mr. Patrick in his Exhibits without any reference in his Reply.

2.  <u>This Court Should Not Consider the Declaration of Christine Saunders and John Arsenault</u>

Undersigned has never had any contact with either of the above attorneys and therefore does not see how they could possibly have any impact on this case.  That being said, Plaintiff does not examine every laptop proffered to show innocence before the official discovery period because Plaintiff cannot verify whether it was the actual laptop owned by Defendant during the time of infringement.

The District Court of Colorado, where each of these *exact* affidavits was originally filed, found that Plaintiff's refusal to inspect laptops prior to the discovery period is reasonable given the time and expense involved with scanning electronic devices at the pre-discovery stage.

> Doe # 17 attaches affidavits from three attorneys who practice in this District and from two parties (one identified as "John Doe," but it is unclear whether it is Doe # 17) in which these individuals attest that, when offered the opportunity to investigate the parties' claimed innocence, Plaintiff is not interested in doing so. The Court does not doubt the description of these affiants' experiences, but the Court also has witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement. Moreover, while the Court encourages the Defendants' willingness and attempts to demonstrate their non-participation in the alleged conduct, the Court also recognizes the time and expense involved with scanning electronic devices for evidence of infringing activity, especially at the pre-discovery stage of litigation.

*Malibu Media, LLC v. Does 3, 9, 16, 17*, 2013 WL 1461635, at FN 11 (D. Colo. Feb. 12, 2013).

This issue is entirely irrelevant to the case at hand because there was never an issue as to whether Defendant's laptop contained infringing content.

3.  <u>This Court Should Not Consider the Declaration of Morgan Pietz</u>

Mr. Pietz cannot credibly speculate as to undersigned's actions because undersigned has never directly spoken to Mr. Pietz.  Indeed, the only interaction undersigned ever had with Mr. Pietz was during a telephonic hearing in the District Court of Maryland where the Honorable Judge Titus and Judge Grimm sought different view points on how best, procedurally, to move forward with Malibu Media's lawsuits.  *See Malibu Media v. John Doe*, 13-cv-00350 at CM/ECF 21 (D. Md. April 23, 2013).  During that telephonic hearing Mr. Pietz was chastised for attempting to lecture Judge Titus and Judge Grimm on how to interpret the Federal Rules of Civil Procedure.  *Id.*

Further, Mr. Peitz has been criticized as "unreasonable" for some of the motions he has filed in Plaintiff's cases.  *See Malibu Media, LLC v. John Doe Subscriber Assigned IP Address*

8

*174.51.234.104*, No. 13-CV-00307-WYD-MEH, 2013 WL 3753436 (D. Colo. July 14, 2013) ("To suggest that Defendant's failure to participate in a process intended to discover his identity should be used as a basis for restricting the discovery is, at a minimum, unreasonable").

 Here, defense counsel cites to Mr. Peitz's declaration to speculate that undersigned may have referred him to Plaintiff's agent, Elizabeth Jones, to handle the matter.  At no point in time during this case did anyone on behalf of Plaintiff have contact with Defense counsel other than undersigned's firm.  Mr. Pietz's declaration is irrelevant and has no bearing on this case.

Further, Mr. Pietz's actions epitomize the exact type of defense counsel behavior that this Court should dissuade in its ruling.  Indeed, Mr. Pietz's declaration states that his first ever representation and contact with anyone involving Malibu Media was on June 13, 2012, when he contacted Malibu Media's California counsel, Leemore Kushner.  *See* Pietz Declaration at ¶ 18.  Amazingly, two days before ever contacting defense counsel, on June 11, 2013, Mr. Pietz took the time to register the following domain names: www.trolldefenselawyer.com and www.malibumedialawsuit.com.  *See* Exhibit C.

### 4.   This Court Should Not Consider the Declaration of an Anonymous John Doe

The declaration of the anonymous John Doe should not be considered in this case because it is hearsay and inadmissible.  Indeed, the events that the John Doe describes took place over two years ago, long before Malibu Media ever filed a suit for copyright infringement, and is not relevant to any of the facts in this case.  Malibu Media has stopped using any third party agents to negotiate settlements on all of its suits filed in 2013 and in this case only attorneys or undersigned's paralegals contacted adverse counsel.  Further, out of all the people Malibu Media has ever sued, this is the first and only declaration undersigned has ever seen of this kind.

### 5.   These Defense Counsel Should Not Be Encouraged

Instead of addressing the legal issues raised in Plaintiff's opposition, or the glaring defects in Defendant's bill, Defendant chose to involve the above attorneys and defendants in the litigation matter.  Defendant justified his attorney's fee bill based on faulty logic and *ad hominem* attacks.  This Court should not reward Defense counsel with their fees when they acted unreasonably.  Doing so will only encourage the above attorneys, and countless others, to frustrate the litigation process and try to win, not on the merits, but through abusive litigation tactics and *ad hominem* attacks.  This does not further the purpose of the Copyright Act.

III.    **CONCLUSION**

For the reasons set forth above, as well as in Plaintiff's Memorandum in Opposition, awarding fees would not be consistent with the interests of the Copyright Act or equitable. Accordingly, Plaintiff respectfully requests that the Court deny Defendant's motion.

Dated: October 24, 2013

Respectfully submitted,

By: /s/ *M. Keith Lipscomb*
M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd., Suite 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ *M. Keith Lipscomb*

10

## CERTIFICATE OF SERVICE

This is to certify that I have this 22nd day of September, 2014 electronically filed Appellee's Supplemental Appendix with the Clerk of Court of the United States Court of Appeals for the Eleventh Circuit using the Electronic Case Filing system, which will automatically send e-mail notification of such filing to the below attorneys of record. Additionally, 2 copies of the foregoing are being sent via Three Day service to the Clerk of the Court and 1 copy via Three Day service to the following:

Francisco Ferreiro
John Cyril Malloy, III
Malloy & Malloy, PL
2800 SW 3rd Avenue
Miami, FL 33129-2317

By: /s/ *M. Keith Lipscomb*
M. Keith Lipscomb (429554)
Emilie Kennedy (92808)
LIPSCOMB EISENBERG &
BAKER, PL
2 South Biscayne Blvd., Suite 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
klipscomb@lebfirm.com
ekennedy@lebfirm.com

*Attorneys for Plaintiff/Appellee*